**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| EMMANUEL MACRON and BRIGITTE MACRON,<br><br>Plaintiffs,<br><br>v.<br><br>CANDACE OWENS,<br><br>Defendant. | Case No. ____________________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. In March 2024, Candace Owens, a right-wing podcaster, told the world she "would stake [her] entire professional reputation on the fact that Brigitte Macron [the First Lady of France] is in fact a man." Since then, Owens has used this false statement to promote her independent platform, gain notoriety, and make money. Owens disregarded all credible evidence disproving her claim in favor of platforming known conspiracy theorists and proven defamers. And rather than engage with President and Mrs. Macron's attempts to set the record straight, Owens mocked them and used them as additional fodder for her frenzied fan base.

2. Owens did not stop there. Retaliating against the Macrons for the "audacity" of sending her a retraction demand, Owens helmed an eight-part podcast series entitled *Becoming Brigitte* (the "Series") and accompanying X posts. Throughout the Series, Owens, acting personally and through her entities Candace Owens LLC and GeorgeTom, Inc., endorsed, repeated, and published a series of verifiably false and devastating lies about the Macrons, on which this Complaint is based. These outlandish, defamatory, and far-fetched fictions included that Mrs. Macron was born a man, stole another person's identity, and transitioned to become Brigitte; Mrs. Macron and President Macron are blood relatives committing incest; President

Macron was chosen to be the President of France as part of the CIA-operated MKUltra program or a similar mind-control program; and Mrs. Macron and President Macron are committing forgery, fraud, and abuses of power to conceal these secrets.

3. But Owens has taken it even further. Since the Macrons filed a defamation action against Owens in Delaware on July 23, 2025 (the "Delaware Action"), Owens has unequivocally doubled down. She has continued to use her podcast to expand her lies about the Macrons, sell merchandise making fun of the Macrons, and collect donations based on her "reporting" on the Macrons. Owens (with full knowledge of this lawsuit) launched a new season of *Becoming Brigitte* in September 2025, in which she makes absurd claims that Mrs. Macron (as Jean-Michel) participated in the Stanford Prison Experiment, which Owens claims is somehow linked to her later "transition." Owens has continued to repeat and republish her false claims on her podcast and X account, as well as expanding her audience by taking her smear campaign to other podcasts.

4. These claims are demonstrably false, and Owens knew they were false when she published them. Yet, she published them anyway. And the reason is clear: it is not the pursuit of truth, but the pursuit of fame. After being fired from The Daily Wire, Owens used these demonstrably false claims to promote her independent podcast, *Candace*. Owens' fan base has grown to 7.7 million followers on X and 6.1 million subscribers on YouTube. The most popular podcasts in the world have discussed her "investigation" into the Macrons' history. She launched a revamped website, CandaceOwens.com, fueled by her desire to make these specific false claims about the Macrons without adhering to content moderation policies.

5. Owens' campaign is also driven by animus. She targets the Macrons because of her disdain for Mrs. Macron's perceived sex and gender identity, for President Macron's perceived sexual orientation, and for what she perceives as the Macrons' connections to Jewish people. She

calls them “Mr. and Mr. Macron”; she calls Mrs. Macron “a dude,” “a creepy old man,” and “the first man of France”; she sells shirts asking “Emmanuel Macron, why are you gay”; and she casts President Macron as “a Rothschild’s creation” and ties Mrs. Macron’s supposed transition to a Jewish sect’s “theology.” To be clear, there is nothing shameful or defamatory about being a man, being transgender, or being gay. Owens’ statements are defamatory because they accuse the Macrons of lying to France and to the world, for decades, about who Mrs. Macron is—and of committing crimes to conceal that supposed lie.

6. This is nothing new for Owens. She has built a brand on provocation, not truth. Owens labels herself as an independent “investigative journalist” while routinely peddling misinformation under the guise of legitimate reporting. She has promoted a range of conspiracy theories, including anti-vaccine falsehoods, long-debunked antisemitic tropes such as blood libel, and Holocaust distortion—going so far as to dismiss the atrocities of Josef Mengele’s medical experiments as mere “propaganda.” Her content is not intended to inform but to inflame and attract attention through sensationalism and conspiracy theories.

7. Owens published the Series, subsequent episodes, and X posts with reckless disregard for the truth. Owens was repeatedly presented with credible, verifiable evidence disproving her claims—including documentation, public records, and direct outreach from the Macrons. Instead of correcting the record, she doubled down. At the time, Mrs. Macron had won French defamation claims against others who pushed these same baseless theories, underscoring both their falsity and defamatory sting. Owens knew this. Yet Owens, fully aware of the truth, has not only declined to retract her statements but has actively expanded on them.

8. These lies have caused tremendous damage to the Macrons. Defendant has subjected the Macrons to a campaign of global humiliation, turning their lives into fodder for

profit-driven lies. Owens has dissected their appearance, their marriage, their friends, their family, and their personal history—twisting it all into a grotesque narrative designed to inflame and degrade. The result is relentless bullying on a worldwide scale. Every time the Macrons leave their home, they do so knowing that countless people have heard, and many believe, these vile fabrications. It is invasive, dehumanizing, and deeply unjust.

9. Owens publicly encouraged the Macrons to file defamation claims against her. So they did. Owens promised her audience that she would see the lawsuit through discovery. Nevertheless, she asked the Delaware Superior Court to dismiss the claims against her in favor of the Macrons bringing their claims in Tennessee. Once again, the Macrons took Owens at her word. The Macrons bring this lawsuit so that Owens' false and defamatory claims can be tested through the very discovery she promised her audience.

10. Now, the Macrons seek relief through this Court to set the record straight, prevent further harm, and hold Owens accountable for her conduct.

## PARTIES AND RELEVANT NONPARTIES

11. Plaintiff Emmanuel Macron is a French citizen and domiciliary. President Macron has been the President of France since 2017. Prior to being elected, President Macron served as Minister of Economics, Industry, and Digital Affairs and Deputy Secretary-General to the President. President Macron married Brigitte Macron in 2007.

12. Plaintiff Brigitte Macron is a French citizen and domiciliary, the spouse of the current President of France, and a woman. She was born Brigitte Trogneux in Amiens, France, on April 13, 1953. She is the youngest of six children. She gave birth to three children from her first marriage to André-Louis Auzière. Mrs. Macron is a former teacher. In 2007, she married Emmanuel Macron.

13. Defendant Candace Owens is a citizen of the United States and a citizen and domiciliary of the State of Tennessee who resides in Nashville in Davidson County, Tennessee. Owens is considered a political commentator and is a self-described conservative. Owens hosts a podcast called *Candace*, which is published on Owens' X account by Candace Owens LLC, on CandaceOwens.com by GeorgeTom, Inc., and across various other platforms. Owens is a member and the sole manager of nonparty Candace Owens LLC. Owens maintains control of nonparty GeorgeTom, Inc. Owens resides in Nashville, Davidson County, Tennessee, which is located within this District.

14. Nonparty Candace Owens LLC is a limited liability company organized under the laws of the State of Delaware with its headquarters in Nashville, Tennessee. Candace Owens is the sole manager of Candace Owens LLC. The company manages Owens' Facebook and X accounts, and Owens oversees and directs all content published on her social media accounts. She disseminated her false and defamatory statements on X through Candace Owens LLC. Candace Owens LLC is a pass-through entity named after Owens, which is solely controlled and managed by her. It is the legal entity through which Owens operates and manages her social media accounts. Owens has primary control over the management of Candace Owens LLC.

15. Nonparty GeorgeTom, Inc. is a registered for-profit corporation organized under the laws of the State of Delaware, with its headquarters in Nashville, Tennessee. Owens made false and defamatory statements on her podcast, *Candace,* and published them on her website, CandaceOwens.com, which is operated by GeorgeTom, Inc. Owens oversees and directs all content that GeorgeTom, Inc. publishes on CandaceOwens.com. On information and belief, Owens is a shareholder, officer, and director of GeorgeTom, Inc., and she has primary control over the management of GeorgeTom, Inc.

16. Nonparty Jean-Michel Trogneux is the older brother of Brigitte Macron. Jean-Michel was born in Amiens, France, on February 11, 1945, and he still lives there today.

17. Nonparty Xavier Poussard is an investigative journalist and editor of *La Lettre de Xavier Poussard*. He was a part owner of *Faits et Documents*, a confidential newsletter that published false and defamatory claims regarding Plaintiffs similar to those stated by Defendant. Owens claims the writings by Xavier Poussard inspired her false and defamatory claims. Poussard is Owens' primary source.

18. Nonparty Natacha Rey was an investigative journalist who also spread the same false and defamatory claims about the Macrons. Rey originated the claims in France. As a result, Mrs. Macron prosecuted a libel case in France against both Natacha Rey and Amandine Roy. Rey was a key source for Owens and Poussard. Rey passed away on September 13, 2026.

19. Nonparty Amandine Roy is a self-proclaimed "spiritual medium" who interviewed Rey in 2021 for a since-deleted YouTube video. In 2021, in a four-hour interview, Roy and Rey broadcast false and defamatory claims regarding Mrs. Macron, which prompted her libel claim in France. Roy is a leading source for Owens and Poussard.

## JURISDICTION AND VENUE

20. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because it is a civil action between citizens of a foreign state and a citizen of a State of the United States, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs Emmanuel Macron and Brigitte Macron are citizens and subjects of the French Republic. Defendant Candace Owens is a citizen of the United States who is domiciled in the State of Tennessee.

21. This Court has general personal jurisdiction over Defendant Candace Owens because she is a resident of and domiciled in the State of Tennessee and is therefore at home in

this forum. This Court also has specific personal jurisdiction over Owens under Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-223, which extends to the full limits permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, because Owens researched, wrote, recorded, produced, and published the Series, subsequent episodes, and X posts from Tennessee, and directed that content to audiences in Tennessee and throughout the United States. The Macrons' claims arise directly out of that conduct. Exercising personal jurisdiction over Owens comports with traditional notions of fair play and substantial justice.

22. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant Candace Owens resides in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Macrons' claims occurred in this District, including Owens' creation, recording, production, and publication of the Series, subsequent episodes, and X posts from Nashville, Tennessee.

23. The Macrons originally named Owens as a defendant in the Delaware Action together with the two Delaware entities through which she published the statements at issue—Candace Owens LLC and GeorgeTom, Inc. Owens acted personally and through those entities in researching, writing, recording, producing, and publishing the Series, the subsequent episodes, and the X posts described below. The claims against Owens and the claims against her entities therefore arise out of the same transactions and occurrences and depend on the same evidence, the same witnesses, and the same legal questions.

24. Asserting all those claims in a single action was necessary to avoid splitting a single controversy between two forums, to promote judicial economy, and to avoid the risk of inconsistent judgments. Had the Macrons sued Candace Owens LLC and GeorgeTom, Inc. in Delaware while withholding their claims against Owens herself, they would have exposed

themselves to the objection that they had impermissibly split their claims. It is only because Owens insisted that the claims against her personally be litigated in Tennessee, and obtained a dismissal without prejudice on that basis, that the Macrons bring those claims here.

25. On October 27, 2026, Defendant Owens was dismissed without prejudice from the Delaware Action, which remains pending against her entities, Candace Owens LLC and GeorgeTom, Inc. Prior to that dismissal, Owens represented to the Delaware court in her Motion to Dismiss briefing that "the Macrons could re-file in Tennessee"[1]; that "no cognizable burden would be imposed on the Macrons were they forced to file in Tennessee"[2]; "if the Macrons choose to refile in Tennessee, they would suffer no risk of overlapping proceedings or duplicative burden"[3]; and "Plaintiffs would suffer no prejudice if they sued in Tennessee."[4] At oral argument on July 27, 2026, Owens' counsel stated that "[b]ecause Owens is not subject to jurisdiction here, any action against her . . . should be brought in Tennessee."[5]

26. Owens made the same point publicly, and repeatedly, on her X account. On March 16, 2026, while her motion was pending, Owens posted: "We moved to have it dismissed out of Delaware courts, arguing they should be forced to file in Tennessee . . ."[6]

27. On October 27, 2026, within hours of obtaining her dismissal, Owens announced it on X: "BREAKING NEWS: I was just personally dismissed from the Macron lawsuit filed against

---

[1] Defs.' Opening Br. in Supp. of Mot. to Dismiss & to Strike the First Am. Compl. at 35, *Macron v. Owens*, No. N25C-07-194 SKR (Del. Super. Ct. Oct. 30, 2025).
[2] *Id.* at 34.
[3] *Id.*
[4] Defs.' Reply Br. in Supp. of Mot. to Dismiss & to Strike the First Am. Compl. at 31, *Macron v. Owens*, No. N25C-07-194 SKR (Del. Super. Ct. Jan. 9, 2026).
[5] Tr. of Oral Arg. on Defs.' Mot. to Dismiss & to Strike at 54, *Macron v. Owens*, No. N25C-07-194 SKR (Del. Super. Ct. July 27, 2026).
[6] Candace Owens (@RealCandaceO), X (Mar. 16, 2026, 10:41 AM), https://x.com/RealCandaceO/status/2033554321816633592.

me in Delaware." Owens has therefore told this Court, the Delaware court, and her own audience of millions that Tennessee is where this case belongs. The Macrons have now filed it here.[7]

## FACTUAL ALLEGATIONS

***President Macron rose to power in France, embodying a modern, dynamic image of leadership that resonates with many citizens.***

28. President Macron was born on December 21, 1977, in Amiens, France, to Françoise Noguès, a physician, and Jean-Michel Macron, a neurologist. He attended La Providence, a Jesuit high school in Amiens, where he first met Brigitte Macron, a French and drama teacher. At the time, Mrs. Macron was an accomplished educator and mother of three.

29. On April 13, 1953, in Amiens, France, Mrs. Macron was born Brigitte Trogneux—a woman. She was the youngest of six children in a prominent chocolate-making family. Her birth announcement and a childhood family photo are below.


CARNET MONDAIN

Anne-Marie, Jean-Claude, Mary-vonne, Monique et Jean-Michel **TROGNEUX** ont la grande joie de vous annoncer la naissance de leur petite sœur **Brigitte.**
Amiens, 1, rue Delambre.



30. Mrs. Macron married her first husband, André-Louis Auzière, in 1974 when she was 21. They had three children: Laurence, Sébastien, and Tiphaine. Their wedding photo is below.

---

[7] Candace Owens (@RealCandaceO), X (Oct. 27, 2026, 6:13 PM), https://x.com/RealCandaceO/status/2115205265561674117.



31. Through the school's theater program, President Macron and Mrs. Macron formed an intellectual connection. At all times, the teacher-student relationship between Mrs. Macron and President Macron remained within the bounds of the law. But, when President Macron's parents became aware of his strong feelings for his teacher, they decided to transfer him to Lycée Henri-IV in Paris.

32. President Macron graduated from Sciences Po and the École Nationale d'Administration and began his career as a finance inspector at the French Ministry of Economy and Finance. Over the years, President Macron and Mrs. Macron kept in touch, and their love deepened. In 2006, Mrs. Macron divorced her first husband, and in 2007, she married President Macron.

33. In 2008, President Macron joined Rothschild & Cie Banque as an investment banker. His public service career resumed in 2012, when he joined President François Hollande's administration as Deputy Chief of Staff and Economic Advisor. In 2014, he was appointed Minister of the Economy. In 2016, he founded the centrist political movement En Marche! and, later that year, declared his candidacy for president.

34. Mrs. Macron was a key advisor to her husband's campaign. Following the first round of elections in April 2017, President Macron publicly credited Mrs. Macron for his success,

saying: "Without her, I wouldn't be me." He went on to win the presidency in May 2017. As First Lady, an official but unpaid role, Mrs. Macron represents France in diplomatic settings and supports initiatives related to education, health, disability, and child protection. Mrs. Macron is a strong, independent woman who has consistently forged her own path.

***Brigitte Macron is the target of a vicious conspiracy crafted by those threatened by her influence.***

35. Around March 2021, Natacha Rey—who described herself as an independent journalist—published on her now-deleted Facebook profile false and defamatory claims alleging that Mrs. Macron is a transgender woman perpetrating identity theft. In May 2021, Xavier Poussard began publishing a multi-issue series entitled "The Mystery of Brigitte Macron." That series recycled and expanded on numerous falsehoods, including the defamatory insinuations regarding Mrs. Macron's alleged biological sex—allegations later amplified and expanded on by Owens.

36. In September 2021, Rey collaborated with Poussard to co-author a publication in *Faits et Documents*, a fringe magazine reportedly influential within far-right circles in France. On December 10, 2021, Rey appeared on the YouTube channel of Amandine Roy, a self-described spiritual medium. In a four-hour interview, Rey reiterated the defamatory claims that Mrs. Macron was, in fact, born as a male named Jean-Michel Trogneux (which is the actual name of Mrs. Macron's brother) who stole the identity of Brigitte Trogneux. They also claimed that Mrs. Macron's first husband never existed and that she did not carry her three children.

37. In December 2021, the hashtag "#JeanMichelTrogneux" began trending on X,[8] with users citing the few public photos of Mrs. Macron from her youth and claiming that she often "hides her neck" as "proof" she is transgender.

38. In September 2024, a French court held that Rey and Roy defamed Mrs. Macron by falsely claiming that she was born Jean-Michel Trogneux, stole the identity of Brigitte Trogneux, and forged all documents related to her birth, marriage, divorce, and childbearing to conceal her actual sex. Jean-Michel participated in the trial. Rey and Roy were fined €500 and ordered to pay €8,000 to Mrs. Macron and €5,000 to her brother in civil damages.[9]

39. The Macrons hoped these proceedings would put the false claims to bed. But, as discussed below, Owens turned this flame into a fire.

***Owens is a far-right conspiracy theorist who thrives on making outrageous claims, prioritizing shock value and follower growth over truth or responsible discourse.***

40. Owens did not always espouse extreme right-wing ideals. In 2015, she started a marketing agency called Degree180. Degree180's website featured a blog that gained notoriety for publishing progressive, anti-conservative, and anti-Trump content—the exact opposite of her current views. That changed in 2016, when a website Owens launched to expose online harassers was condemned across the political spectrum. Owens attributed the widespread criticism and retaliation efforts to two progressives who had attempted to convince Owens to abandon the project. While Owens was being criticized by those who purportedly shared her beliefs, she

[8] At the time of the posts, X was known as "Twitter."

[9] An interim appellate court overturned the judgment on July 10, 2025, and the case is now on appeal to France's highest court, the Court of Cassation. Importantly, the appellate court did not overturn the judgment on the basis that the statements were true, but on other grounds. Mrs. Macron firmly believes that all the statements included in that proceeding are false and defamatory, and that the highest court will uphold her claims. The Court of Cassation proceedings are pending.

received support from prominent figures associated with the far-right. Owens later said, "I became conservative overnight." By 2017, she was attacking liberal ideology on her YouTube channel.

41. In August 2019, she married George Farmer, former CEO of Parler, a far-right social media platform, who is now involved in her businesses.

42. Owens also entered French far-right politics. In September 2019, she headlined the Convention de la Droite in Paris, organized by associates of Marion Maréchal, the niece of Marine Le Pen, President Macron's political adversary. There, she called President Macron a "weak" leader.

43. In 2021, Owens joined The Daily Wire, where she hosted her talk show, *Candace Owens*, until March 2024, when she left following public clashes with co-founder Ben Shapiro over her increasingly antisemitic rhetoric. After the October 7, 2023 Hamas attacks on Israel, her commentary escalated to overt antisemitic conspiracy theories. On her show, she alleged that secret Jewish "gangs" commit "horrific things" in Hollywood, and on social media, she repeated the long-debunked "blood libel" myth that Jewish people drink the blood of Christian children.

44. After leaving The Daily Wire, Owens became even more extreme. In June 2024, she independently relaunched her talk show under the name *Candace* on YouTube. In September 2024, she posted an interview with Kanye West, during which both claimed that Jewish people control the media. YouTube removed the video and suspended and demonetized her channel for violating hate speech policies. Despite this, Owens persisted in promoting conspiracy theories, including calling Nazi medical experimentation on Jewish people during the Holocaust "bizarre propaganda." These actions led the Australian government to deny her a visa in 2025, citing a risk that her presence could "incite discord" and concluding that "Australia's national interest is best served when Candace Owens is somewhere else." The same hostility toward Jewish people runs

through Owens' attacks on the Macrons: as alleged below, she has repeatedly cast President Macron as a creature of the Rothschilds, a prominent Jewish banking family, and tied Mrs. Macron's supposed transition to Jewish religious traditions.

45. As of November 2026, Owens has over 6.07 million YouTube subscribers and 7.7 million followers on X, and her videos have garnered millions of views.

***Owens repeats the outlandish claim that Brigitte Macron was born a man on The Daily Wire precisely because she knew its shock value would boost her visibility.***

46. In March 2024, just prior to her departure from The Daily Wire, Owens began promoting the false claim that Mrs. Macron was born a man. On March 11, 2024, Owens published an episode of her The Daily Wire podcast *Candace Owens* titled "INSANE. This Is The BIGGEST Political Scandal In Human History," which reported on the conspiracy theory. Owens was the first to bring this theory to the U.S. media and to a global audience. That same day, Defendant announced the video in an X post, repeating that it is "the biggest scandal that has ever happened in politics in human history":



47. Owens claimed she learned about this theory from a 2021 debunking story published by the Daily Mail.[10] Owens falsely claimed the article was recent, despite it being published more than three years earlier. Owens claimed "there was no debunking whatsoever." But that is false. The article included multiple photos of Mrs. Macron as a child and reported that separate journalists met both Mrs. Macron's brother, Jean-Michel, and Mrs. Macron's late ex-husband, André-Louis Auzière. Owens omitted these facts.

48. The next day, Owens posted on X that she "would stake [her] entire professional reputation on the fact that Brigitte Macron is in fact a man."


Candace Owens
@RealCandaceO
Subscribe

This episode is blowing up so I just want to say—After looking into this, I would stake my entire professional reputation on the fact that Brigitte Macron is in fact a man. Any journalist or publication that is trying to dismiss this plausibility is immediately identifiable as establishment. I have never seen anything like this in my life. The implications here are terrifying.

I do not intend to let up on this story and I am calling on other journalists to look into this explosive story and report accordingly.

Watch here: youtu.be/v81g1tldi4c?si...

#JeanMichelTrogneux

Last edited 11:08 AM · Mar 12, 2024 · 7.5M Views

49. On March 13, 2024, Owens released another episode of *Candace Owens* titled "Media Meltdown! France's First Lady Exposed," repeating and expanding on her false claims.

50. Owens could not keep her story straight. On March 21, 2024, on *The Breakfast Club* radio show, she said that the Macrons "tried to sell to the press a fake photo which got

---

[10] Paul Bracchi and Peter Allen, *The proof France's First Lady WASN'T born a man: The true story of Brigitte Macron's controversial background is revealed as wicked slur is spread by the French far-Right to damage the election hopes of her husband*, Daily Mail (Dec. 31, 2021, at 18:08 EDT), https://www.dailymail.co.uk/news/article-10359625/The-proof-Frances-Lady-WASNT-born-man.html.

debunked. It was actually Jean-Michel's daughter."[11] She has never repeated this claim because it is demonstrably false.

51. After Owens was dismissed from The Daily Wire on March 22, 2024, it removed Owens' March 11 and 13 episodes, but each remains available online on other platforms.

***Fired from The Daily Wire and faced with clear evidence debunking her claim, Owens continues to push the conspiracy—now from her own podcast.***

52. Even after her termination from The Daily Wire—reportedly due, in part, to her repeated dissemination of baseless conspiracy theories—Owens showed no sign of retracting or tempering her allegations. She continued promoting her preconceived narrative, undeterred by professional consequences or contradictory facts.

53. Defendant launched her independent podcast, titled *Candace*, on June 10, 2024. Knowing her false claims about the Macrons had caught fire in March, Owens seized the moment, republishing on X her false claims that Mrs. Macron was a man. Fueled by sensational claims, the show quickly gained attention, earning the second spot on Edison Research's list of top new podcasts for 2024.

---

[11] Video posted by The Breakfast Club (@BreakfastClubPower1051FM), YouTube, *Candace Owens On Black America, Congressional Puppets, Donald Trump, Kanye West, T.I. + More* (Mar. 21, 2024), https://www.youtube.com/watch?v=goIrzPIh8yA.




54. Each episode of *Candace* described in this Complaint—including each installment of the Series—was scripted, recorded, edited, and produced in advance or live, and then published by Owens as a permanent, fixed audio-visual recording on CandaceOwens.com, YouTube, Spotify, Apple Podcasts, and other platforms. Each episode remains available for on-demand replay, download, and redistribution, and each is accompanied by written titles, cover images, descriptions, and transcripts. Each episode is therefore libel, not transitory oral slander.

55. Owens' posts on X described in this Complaint are likewise fixed, written publications. Each consists of text, images, or recorded video published to Owens' X account, where it remains permanently available to the public for viewing, searching, reposting, and download. Each post is therefore libel, not transitory oral slander.

56. On June 12, 2024, Owens appeared on *Piers Morgan Uncensored* to push more false claims about the Macrons, which Morgan dismissed as absurd. The next day, she republished clips from the interview and repeated her false allegations on the June 13 episode of *Candace*.[12]

57. On June 17, 2024, Defendant released an episode titled, "So...Is Brigitte Macron A Man?" repeating the discredited allegations from her deleted Daily Wire episodes.[13] Owens opened by warning that the Macrons were "going to come for [her] life." She then falsely claimed that the Macrons had deployed the secret service to intimidate and detain journalists to hide Mrs. Macron's transition and identity theft. She linked these allegations to a baseless theory that the world is run by a gang of Satanic pedophiles masquerading as Jewish people.

58. Owens claimed there are no photos from the first 30 years of Mrs. Macron's life, but contradicted herself just moments later by admitting that photos of a young Mrs. Macron had been released; she just does not believe they are real. Defendant released another episode mentioning the conspiracy on June 26, 2024.[14] On July 1, 2024, Owens repeated her false claims in another episode.[15] On July 7, 2024, Owens presented these false claims on *The Jimmy Dore Show*.[16]

---

[12] Video posted by Candace Owens (@RealCandaceO), YouTube, *SMACKDOWN! Piers Morgan Tried To Ambush Me...*, Candace Ep. 4 (June 13, 2024), https://www.youtube.com/watch?v=yXyVzAn_EMo.

[13] Video posted by Candace Owens (@RealCandaceO), YouTube, *So...Is Brigitte Macron A Man?*, Candace Ep. 6 (June 17, 2024), https://www.youtube.com/watch?v=mXGUHYVUZZk.

[14] Video posted by Candace Owens (@RealCandaceO), YouTube, *Piers Morgan Caught LYING About Brigitte Macron*, Candace Ep. 13 (June 26, 2024), https://www.youtube.com/watch?v=sTXqHi0lOX8.

[15] Video posted by Candace Owens (@RealCandaceO), YouTube, *Why I Left This Religion*, Candace Ep. 16 (July 1, 2024), https://www.youtube.com/watch?v=8wlq-Q4YgtM&t=1s.

[16] Video posted by The Jimmy Dore Show (@therealjimmydoreshow), YouTube, *Candace Owens EXPLOSIVE Take On Macron's Wife Will Blow Your Mind!* (July 7, 2024), https://www.youtube.com/watch?v=81ec0BTdAd0.

59. Owens also sold merchandise promoting these claims. On July 8, 2024, Defendant posted a photo on X of herself in a t-shirt showcasing a fake *Time Magazine* “Man of the Year” cover featuring Mrs. Macron. The shirt sold out. The shirt’s premise was to ridicule Mrs. Macron’s perceived gender and sexuality for Owens’ profit.




60. Owens claimed the 2024 Olympic opening ceremony—a tribute to Greek mythology—was designed to “honor Brigitte Macron,” because she is transgender.[17]

61. She then falsely alleged that the Macrons are part of “a very small group of elite oligarchs who routinely practice homosexuality and pedophilia, believe in Baphomet, and worship a transgender deity”[18] that controls the world. The claim is baseless and inherently improbable,

---

[17] Candace: *The Olympics Exposed Brigitte Macron*, Candace Ep. 34 (Apple Podcasts, July 29, 2024), https://podcasts.apple.com/us/podcast/the-olympics-exposed-brigitte-macron-candace-ep-34/id1750591415?i=1000663732510.

[18] Baphomet is a Satanic figure depicted as a “winged hermaphrodite with a torch between his horns and a pentagram on his forehead.” James Morgan, *Decoding the symbols on Satan’s statue*, Aug. 1, 2015, https://www.bbc.com/news/magazine-33682878.

and it reveals the animus driving Owens' campaign: she equates perceived homosexuality and transgender identity with pedophilia and devil worship, and she aims those slurs at the Macrons.

62. Owens bolstered this claim by reposting on X a takedown of the Opening Ceremony and Mrs. Macron by Archbishop Viganò, who had just been excommunicated from the Catholic Church.[19] Owens posted on X that "Brigitte Macron is a transvestite," calling it a "demonic state secret" and falsely claiming that Mrs. Macron is a rapist.

63. Owens also published a post by Alex Jones, a notorious defamer, and repeated her false allegations.[20] Owens stated that "Brigitte Macron was born Jean-Michel Trogneux. He lived as a man for about 30 years before 'transitioning' to Brigitte. While he lived as a man he fathered 3 children."

64. Owens also brought on Andrew Tate—a self-proclaimed misogynist charged with rape and human trafficking.[21] She platformed Tate's claim that the French election was rigged like the 2020 U.S. election.[22] Owens juxtaposed that conspiracy theory with the Macrons, claiming the Macrons are "being blackmailed and they are being selected for these positions." She dismissed all critics by saying "the matrix" is targeting her for exposing the supposed homosexuality and pedophilia taking place in the world.

---

[19] Candace Owens (@RealCandaceO), X (July 29, 2024, at 09:17 ET), https://x.com/RealCandaceO/status/1817912361736392858.

[20] Candace Owens (@RealCandaceO), X (July 29, 2024, at 10:59 ET), https://x.com/RealCandaceO/status/1817937998652023085.

[21] Video posted by Candace Owens (@RealCandaceO), YouTube, *Andrew Tate x Candace Owens*, Candace Ep. 46 (Aug. 15, 2024), https://www.youtube.com/watch?v=iwOXLfVsieA.

[22] This fake news has also been debunked. *US Dominion, Inc. v. Fox News Network, LLC*, No. N21C-03-257 EMD, 2023 WL 2730567, at *21 (Del. Super. Ct. Mar. 31, 2023) ("The evidence developed in this civil proceeding demonstrates that is **CRYSTAL** clear that none of the Statements relating to Dominion about the 2020 election are true.") (emphasis in original).

65. On August 30, 2024, Owens interviewed Poussard, the publisher of the defamatory *Faits et Documents* series on Mrs. Macron.[23] Poussard became Owens' primary—possibly only—source for her future reporting. They agreed that the Macrons are perpetrating fraud regarding Mrs. Macron's identity and President Macron's political independence and integrity, and claimed that Mrs. Macron's nephew resembles President Macron and inferred that the Macrons' relationship was incestuous. Poussard directly accused Mrs. Macron of abuse of a minor, impersonation, and identity theft. Owens endorsed, adopted, and expanded on these claims, linking them to her theory of a network of satanic pedophiles.

***The Macrons flatly debunk the conspiracy in a retraction demand to Owens—but she mocks their response, ignores the facts, and doubles down with even more reckless claims.***

66. On December 3, 2024, the Macrons, through counsel, emailed Owens a detailed retraction demand. It explained the falsity of her statements with extensive evidence that Mrs. Macron was born a woman named Brigitte Trogneux; that she is not a blood relative of President Macron; and that no group was controlling or blackmailing the Macrons. Owens did not respond.

67. Owens ignored a December 18, 2024 follow-up email and the Macrons' January 8, 2025 outreach to her former counsel. Next, the Macrons attempted to personally serve the December Retraction Demand on January 9, 2025, but were first ignored, then blocked by Owens' counsel—who ultimately agreed to accept service by email.

68. The December Retraction Demand reminded Owens that the Daily Mail article she cited reported that the Courrier Picard, a daily newspaper in Amiens, published her birth

[23] Candace: *EXCLUSIVE: Meet the Journalist Who EXPOSED Brigitte Macron*, Candace Ep. 56 (Spotify Podcasts, Aug. 30, 2024), https://open.spotify.com/episode/5nn9gkM9XQ3W2RfTsoM2Kz?si=dZthIgVGTIqfShzdYw8UXg.

announcement, which states that Brigitte Trogneux was born on April 13, 1953, and that her siblings, "'Anne-Marie, Jean-Claude, Maryvonne, Monique and Jean-Michel Trogneux, have great joy in announcing the arrival of ***their little sister, Brigitte.***'"


CARNET MONDAIN

Anne-Marie, Jean-Claude, Maryvonne, Monique et Jean-Michel TROGNEUX ont la grande joie de vous annoncer la naissance de leur petite sœur **Brigitte.**
Amiens, 1, rue Delambre.

69. Owens knew this but deliberately omitted it from her Series because it contradicted her preconceived narrative—evidence of actual malice.

70. The December Retraction Demand also pointed Owens to other public childhood photos of Mrs. Macron, including one, also in the 2021 Daily Mail article, of her playing in a garden as a young girl. Owens never shared it with her viewers.





71. The December Retraction Demand reminded Owens that Mrs. Macron's marriage to André-Louis Auzière, and his existence, are well documented—not least by their three children, who acknowledge him as their father and bear his last name. Owens had falsely claimed that no public photos of him existed; the December Retraction Demand pointed her to one from the wedding. She has since found at least one more through Xavier Poussard.



72. Owens claimed the photo showed not Mr. Auzière and Mrs. Macron, but Jean-Louis Auzière and his first wife, Susan Spray. The December Retraction Demand reminded Owens that Jean-Louis debunked this claim, stating, "[w]hen André-Louis got married, I was 8 years older and I was working in Germany. There may be a slight family resemblance, but that's not to say that we are the same person."[24] Jean-Louis has testified in French court that the photo is not of him and won a defamation claim against Rey and Roy on that basis.

73. Confronted with this, Owens changed her theory in the Series, claiming that the bride was not Mrs. Macron, but another woman named Brigitte Trogneux, and that Mrs. Macron refused to verify the image. That claim is also false.

---

[24] Julien Lagarde, *Trogneux affair: in Normandy, a couple collateral victims of rumors surrounding Brigitte Macron*, Le Pays d'Auge (May 16, 2022, at 19:23 CEST), https://actu.fr/normandie/lisieux_14366/affaire-trogneux-en-normandie-un-couple-victime-collaterale-des-rumeurs-autour-de-brigitte-macron_50917623.html.

74. Owens falsely told her audience that no journalists could find Mr. Auzière. The December Retraction Demand reminded Owens that another Daily Mail article reported that "[r]eporters for several outlets, including the Mail, ***tracked André-Louis down to Lille several years ago***," but he declined to comment.[25]

75. The December Retraction Demand stated that Mr. Auzière died on December 24, 2019. His daughter Tiphaine said he was buried in "the strictest privacy," adding, "he must be respected." Owens had distorted these words into "a warning, a threat almost, not to look any further." In the Series, confronted with proof of his death and funeral, she recast the family's privacy as a plot to cover up wrongdoing.

76. The December Retraction Demand also informed Owens that Jean-Michel Trogneux is alive and well in Amiens, where L'Obs journalist Emmanuelle Anizon reported contact with him in September 2023, as the Daily Mail's 2024 debunking article noted.[26] Ms. Anizon wrote an entire book disproving the disinformation campaign surrounding Mrs. Macron.[27] ***Owens cites Ms. Anizon's book in the Series but fails to tell her viewers it disproves her central thesis.***

77. The December Retraction Demand provided links to public videos showing Jean-Michel at President Macron's 2017 and 2022 investitures, in the same frame as Mrs. Macron—conclusive evidence debunking Owens' claims:

---

[25] Guy Adams, *Revealed: Truth behind the conspiracy theory Brigitte Macron is really a MAN - as the Mail unmasks the woman being sued over the viral rumour*, Daily Mail (Mar. 22, 2024, at 22:12 EDT), https://www.dailymail.co.uk/femail/article-13228445/jolly-clairvoyant-viral-conspiracy-Macron-deny-wife-Brigitte-MAN.html.

[26] *Id.*

[27] Emmanuelle Anizon, *L'affaire Madame: Le jour où la Première dame est devenue un homme: anatomie d'une fake news* (2024).

***2017 Investiture*[28]**




***2022 Investiture*[29]**



78. The December Retraction Demand also cited Jean-Michel's defamation case against Rey and Roy—proof that he exists and is not Mrs. Macron. At the June 19, 2024 trial, his attorney presented his and Mrs. Macron's electoral cards showing that both had voted in the June 9, 2024 European Elections, in different towns. Owens has never told her audience these public facts.

---

[28] Video posted by BFMTV (@BFMTV), YouTube, *Live Passation de pourvoir Macron/Hollande – Edition Spéciale BFMTV* (May 14, 2017), https://www.youtube.com/watch?v=9tJPSCnIO_U.
[29] Élysée, *Cérémonie d'investiture du Président de la République* (YouTube, May 7, 2022), https://www.youtube.com/watch?v=uuaYB8tIaJk.

79. The December Retraction Demand explicitly stated that Mrs. Macron is the biological mother of her three children—proof that she was born a woman. Owens had claimed that Mrs. Macron fathered them with Brigitte Proba-Auzière, falsely described as the niece of Jean-Louis Auzière (the uncle of Mrs. Macron's late ex-husband), and that Jean-Louis forged the children's birth certificates. Owens did not repeat these claims in the Series but has never retracted them.

80. Owens also claimed that a photo describing Mrs. Macron as a thirty-six-year-old teacher named Brigitte Auzière showed the fictitious Brigitte Proba-Auzière, recklessly ignoring that the woman pictured had Mrs. Macron's name and occupation at the time and strikingly resembles her.




81. When Owens realized that claim could not be true, she dropped it without offering any alternative explanation. Any theory that Mrs. Macron is not the mother of her children recklessly disregards the striking resemblance between her and her daughters:



82. The December Retraction Demand also reminded Owens that the theory's originators, Rey and Roy, had been found guilty of defaming Jean-Louis and his wife, Catherine, and, on September 12, 2024, Mrs. Macron and Jean-Michel (a judgment later reversed and now before the Cour de cassation). Owens ignored all of this.

***Owens responds with ridicule and doubles down.***

83. On January 10, 2025, Owens posted on X that the Macrons had sent her a legal letter.[30] She claimed that "in mid-November, [she] made contact with a journalist claiming to have a trove of evidence . . . that the first lady of France lived as a man named Jean-Michel Trogneux . . . ." That journalist was Poussard, whom she had already met and interviewed. Owens said that "just 10 days after [their] initial correspondence," the Macrons sent her a legal letter—confirming that she saw and ignored their early-December outreach. She claimed the Macrons "demanded [she] not publicize" the letter, yet promised to publicize it herself. But she never did, because the 33-page December Retraction Demand conclusively debunked her claims.

84. Owens also falsely asserted that Tucker Carlson, a political commentator, was named in the December Retraction Demand, tagging him on X to draw attention.




[30] Candace Owens (@RealCandaceO), X (Jan. 10, 2025, at 15:29 ET), https://x.com/RealCandaceO/status/1877814980399030350.

85. In her January 10, 2025 episode of *Candace*, Owens claimed the Macrons tried to serve her personally to "intimidate" and "terrify" her.[31] She did not tell viewers that the Macrons resorted to personal service only after she ignored multiple emails. She also claimed the Macrons "strenuously requested" that she not publicize the letter and that it said "all over it" that it was not to be shared, when it bore only a standard first-page heading: "Confidential – Not For Publication Or Attribution."

86. Owens led her audience to believe that the Macrons refused to say whether Mrs. Macron was born a woman or to address Owens' other claims, knowing that the December Retraction Demand addressed and disproved each of them. She read cherry-picked portions but omitted the evidence against her claims. She claimed to have evidence disproving parts of it that she was "not going to tell you that today." She never presented it.

87. Owens falsely claimed that the timing of the December Retraction Demand showed "the communications of the journalist are being monitored," but admitted she had no evidence.

88. Owens blamed the Macrons for her content being removed from YouTube and vowed not to retract what she "deems to be the truth."

89. On January 11, 2025, Defendant posted on X that "all correspondence between our legal teams will be available for the public to read."[32] She has not kept this promise because the correspondence contradicts her claims. She also promised "strong evidence" that the first communion photo was not Mrs. Macron but never delivered it.

---

[31] Video posted by Candace Owens (@RealCandaceO), YouTube, *I Got A Legal Threat From A Sitting President…*, Candace Ep. 130 (Jan. 10, 2025), https://www.youtube.com/watch?v=tJtAUKgkqc0.

[32] Candace Owens (@RealCandaceO), X (Jan. 11, 2025, at 13:41 ET), https://x.com/RealCandaceO/status/1878150320762548707.

90. Owens also mocked the Macrons' attempt to correct the record, reposting and expanding on a post from Alexander Dugin, a far-right Russian philosopher, that depicted Mrs. Macron as a Neanderthal and wondered whether he, too, would be sent a retraction demand:




91. On January 11, 2025, Owens reposted on X the false assertion that the letter admitted that Mrs. Macron raped President Macron, though Owens knew the letter pointedly denied that the President was statutorily raped.



92. On January 12, 2025, Defendant reposted another such claim and agreed it "was indeed the most stunning admission from the letter." Owens repeated the claim in her January 13, 2025 episode, knowing it was false, to gain followers.

93. Other outlets reported Owens' response and incorrectly understood, as she intended, that the Macrons had not denied or provided evidence against her claims, including that they were lying about Mrs. Macron's biological sex.[33] Those outlets described Owens as doubling down on all her claims.

94. Prioritizing profit over truth, Owens mined the December Retraction Demand for content. On January 13, 2025, she posted on X that she was sharing her legal response to the Macrons—which she had not yet sent.[34] In her January 13, 2025 episode, she promised to upload her entire response to her Locals page but did not.[35]

---

[33] *Brigitte Macron was born a man: Candace Owens spreads crazy conspiracy theory about Emanuel Macron's wife*, Times of India (Jan. 13, 2025, at 20:09 IST), https://timesofindia.indiatimes.com/world/europe/brigitte-macron-was-born-a-man-candace-owens-spreads-crazy-conspiracy-theory-about-emanuel-macrons-wife/articleshowprint/117208515.cms; *French President Emmanuel Macron Says His Wife Does Not 'Owe' Candace Owens 'Proof' She Is and 'Always Has Been a Woman' in Stern Legal Letter*, OK! Magazine (Jan. 10, 2025, at 18:33 ET), https://okmagazine.com/p/emmanuel-macron-legal-letter-wife-doesnt-owe-candace-owens-proof-woman/; Jenel Treza Albuquerque, *Candace Owens says Emmanuel Macron sent her a legal letter after she met a journalist who claimed Brigitte Macron was "born a man,"* Soap Central (Jan. 12, 2025, at 18:54 ET), https://www.soapcentral.com/entertainment/news-candace-owens-says-emmanuel-macron-sent-legal-letter-met-journalist-claimed-brigitte-macron-born-man; *Candace Owens responds to Emmanuel Macron's legal threat after claiming his wife is transgender*, The Express Tribune (Jan. 11, 2025), https://tribune.com.pk/story/2521484/candace-owens-responds-to-emmanuel-macrons-legal-threat-after-claiming-his-wife-is-transgender; *President Emmanuel Macron and Wife Brigitte Send Candace Owens Legal Threat Over 'Gender' Report as Far-Right Pundit Laughs it Off —'You're Not Above Critique'*, Radar (Jan. 10, 2025, at 19:30 ET), https://radaronline.com/p/candace-owens-emmanuel-macron-brigitte-macron-transgender-allegations-letter-legal/.

[34] Candace Owens (@RealCandaceO), X (Jan. 13, 2025, at 15:24 ET), https://x.com/RealCandaceO/status/1878900942986432750.

[35] Video posted by Candace Owens (@RealCandaceO), YouTube, *I Respond To Mr. And Mr. Macron*, Candace Ep. 131 (Jan. 13, 2025), https://www.youtube.com/live/mQoVHeeynNA.

95. In that episode, Owens also falsely implied that the Macrons caused the death of a journalist investigating them, saying they have a "dark side" and "one by one, these independent journalists and researchers begin to suffer." Noting that "this is a true story," she said that Isabella Ferreira, while investigating the Macrons' relationship, "landed upon something bigger" and "two weeks later, this Isabella Ferreira is found dead." Owens called the official suicide ruling "almost impossible."

96. Owens repeated that the letter did not "deny that Brigitte is trans" or "explicitly state that Brigitte Macron was born a biological woman." This is false: the letter explicitly stated that the Macrons were not concealing Mrs. Macron's biological sex and that she was born Brigitte Trogneux, a woman.

97. Owens taunted the Macrons to "bring this lawsuit," saying, "I might even cover your legal expenses." Displaying her ill will, she stated, "I am disgusted by your relationship. You make me sick, Brigitte." In the same episode, titled "I Respond To Mr. And Mr. Macron," she called the Macrons "two grown men acting like big babies" and asked, "why does it matter if his wife is a dude?"—making plain that her attacks target Mrs. Macron's perceived gender identity and President Macron's perceived sexuality.[36]

98. On January 16, 2025—days after publicly referencing its contents—Owens sent her response to the Macrons' counsel. She did not retract her false statements or provide any evidence for them; she reaffirmed them and demanded that the Macrons reframe their denials as answers to 21 questions—an apparent publicity stunt. Owens then misled her audience by claiming that,

---

[36] Video posted by Candace Owens (@RealCandaceO), YouTube, *I Respond To Mr. And Mr. Macron*, Candace Ep. 131 (Jan. 13, 2025), at 1:05–4:09, 4:32–5:04, https://www.youtube.com/live/mQoVHeeynNA.

because she had posed these questions, the Macrons could never prove actual malice.[37] She did not disclose that the December Retraction Demand had already addressed their substance.

***Owens releases an eight-part series pushing the conspiracy, packed with false and defamatory claims she knows are blatantly false.***

99. On January 31, 2025, Owens premiered the Series. The Series began with an introductory episode, followed by six chapters, and concluded with an epilogue. Throughout the Series, Owens made the false and defamatory allegations that Mrs. Macron, born a man, stole another person's identity to become Brigitte; Mrs. Macron and President Macron are blood relatives involved in incest; President Macron was chosen to be the President of France as part of MKUltra or a similar mind-control program; and Mrs. Macron and President Macron are committing forgery, fraud, and abuses of power to cover up these "facts." These claims are demonstrably false, and Owens knew it when she published them. Owens accused the Macrons of deceiving the public about Mrs. Macron's identity for decades and committing crimes to hide that deception. Throughout the Series, Owens framed that accusation in terms that reveal her disdain for Mrs. Macron's perceived sex and gender identity and for President Macron's perceived sexual orientation, and she repeatedly tied the Macrons to the Rothschilds, a prominent Jewish banking family, and to antisemitic tropes.

---

[37] Video posted by Candace Owens (@RealCandaceO), YouTube, *OH SNAP! Justin Baldoni Is Now Suing Blake Lively and Ryan Reynolds PERSONALLY*, Candace Ep. 134 (Jan. 16, 2025), https://www.youtube.com/watch?v=gTiobOd9MAM.

***An Introduction***
***January 31, 2025***

100. The first installment, "An Introduction," premiered on January 31, 2025.[38] Owens announced it on X.[39] The episode is available on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, with transcripts on YouTube, Spotify, Apple Podcasts, and PodScribe.[40]




101. Before the Introduction premiered, Owens claimed that her website was attacked by a "state level actor" to prevent its publication.[41] She implied the Macrons were responsible and promised proof but never provided it.[42]

---

[38] Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *An Introduction*, Candace (Jan. 31, 2025), https://www.youtube.com/watch?v=FDOnxpViQxY&list=PLPW2eH9z9CUvJ0Iiv9AQqq2RVAWFFfNZR&index=8.

[39] Candace Owens (@RealCandaceO), X (Jan. 31, 2025, at 09:13 ET), https://x.com/RealCandaceO/status/1885330518352318558.

[40] Unless otherwise noted, each episode of the Series and of *Candace* described below was published, and transcribed, on the same platforms.

[41] Candace Owens (@RealCandaceO), X (Jan. 31, 2025, at 14:50 ET), https://x.com/RealCandaceO/status/1885415439611711857.

[42] Candace Owens (@RealCandaceO), X (Jan. 31, 2025, at 15:03 ET), https://x.com/RealCandaceO/status/1885418774561522036.

102. In the Introduction, Owens falsely implied that the Macrons are criminals surrounded by a criminal syndicate that helps conceal their secrets, including in these statements:

- . . . Brigitte Macron's alleged brother who [] I believe Brigitte Macron is . . .
- [T]here is this strange case of what happens to every journalist who tries to touch the story. First and foremost, uh, Isabella Ferreira. . . . People who began prodding into the story as an independent journalist happened upon some huge information pertaining to the relationship of Emmanuel Macron and Brigitte. . . . She was found dead floating in a river and her friends said that she didn't kill herself . . . .
- . . . We did up on security . . . after getting the letter from Macron and because of the things that we know about their network and, uh, things that are happening, like I said, to every journalist that has tried to get this out . . . .

103. Owens told viewers that the Macrons "are in fact lying to the public about Brigitte Macron's past identity." She said the Macrons are involved in "pedophilia, [] pederasty, [] incest, lies, and trying to thug people via courts." She said she hoped that "Brigitte [Macron] ordains himself so bold as to arrive into the great state of Tennessee with all of his perverted thoughts about little boys"—misgendering Mrs. Macron while accusing her of pedophilia.

104. Owens juxtaposed these claims with professed fears for her safety to imply, falsely, that the Macrons were involved in Ferreira's death and weaponize state institutions to silence critics. She added that "Brigitte Macron and Emmanuel Macron come from a circle, a syndicate of real power, old power, old money power." She claimed the media defamed her to protect "state criminals" such as the Macrons.

105. On February 3, 2025, the Macrons sent the February Retraction Demand, telling Owens that her insinuation about Ferreira's death was false and, again, that they had not committed any crimes and were not controlled or blackmailed by any secret group with evidence that Mrs. Macron was born a man. Owens never wrote back and instead doubled down on her knowingly false claims in the next episode.

106. The Macrons told Owens that her insinuation that they were involved in the death of Ferreira was entirely false. Again, they told Owens that they had not engaged in any criminal behavior. And again, they told Owens that there was no secret group controlling or blackmailing them with evidence of Mrs. Macron being born a man.

107. Owens never wrote back, instead replying in the next episode of the Series—further evidence that she prioritized publicity over truth—and again doubling down on her knowingly false claims.

***Episode 1: Gaslighting The Public***
***February 4, 2025***

108. On February 4, 2025, Owens released "Episode 1: Gaslighting The Public."[43] Owens announced it on X.[44]

109. Episode 1 was premised on Owens' false claims that the Macrons have manipulated and controlled the media, even resorting to outright lies and fraud, to conceal their pasts and the nature of their relationship. During Episode 1, Owens made the following specific false and defamatory claims:

- I literally told you that every journalist that tries to touch this story, something happens to. Okay. And it is a fact that Isabella Ferreira was working on the story, had messaged according to her friends saying that she had a bombshell about Emmanuel Macron and appreciate the French press has reported on this. And then she was found dead floating in a river, okay. Or a pond, whatever it was. And they, the public said that she had drowned and her friends said that she was not suicidal. And the public, the press said that she had maybe taken some pills. I don't remember.

- Like I said, every journalist that tries to get this out. Yes, that is not a lie. That is the truth. We have upped our security because, and we were responding to the chat, people saying, get yourself some good security. And of course, when you have people walking

---

[43] Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *Gaslighting The Public* | Ep 1 (Feb. 4, 2025), https://www.youtube.com/watch?v=xIbUXQ5c-oQ&list=PLPW2eH9z9CUvJ0Iiv9AQqq2RVAWFFfNZR&index=7.

[44] Candace Owens (@RealCandaceO), X (Feb. 4, 2025, at 15:58 ET), https://x.com/RealCandaceO/status/1886881989514375318.

around your property and you have young children and you understand the extent of the stakes that are in this, getting and upping on your security, that is my right.

- I believe Brigitte Macron was born a biological male, okay. And then transitioned into a female. That is my belief. I don't know how many times I can say it.

- . . . and you will never, ever, ever get me to transform my opinion that you were groomed by the person you eventually married in 2007, Brigitte Macron. I believe she's a man.

110. Responding to the February Retraction Demand, Owens opened Episode 1 by repeating her claims about Ferreira and her safety and adding that the Macrons are surrounded by criminals, pedophiles, and an "extraordinary syndicate" and hire employees who use "tactics of blackmail and coercion." These claims falsely imply criminal culpability; the Macrons were not involved in Ferreira's death and would never direct violence against Owens.

111. Owens again falsely claimed that the December Retraction Demand failed to address "whether or not Brigitte Macron was a man" and was "an admission that it is statutory rape"—a factually and legally false accusation of criminal conduct.

112. Owens also cited as evidence that Mrs. Macron is transgender that she is dressed by Nicolas Ghesquière of Louis Vuitton, whom Owens called "the main promoter of transgenderism and androgyny in the fashion world"—ignoring that many women wear Louis Vuitton.

113. Owens told the Macrons that no amount of evidence will "ever get [her] to transform [her] opinion" that President Macron was groomed by Mrs. Macron and that Mrs. Macron was born a man—belying her claim to be informing her audience. She closed Episode 1 by addressing the couple as "Mr. and Mr. Macron."

***Episode 2: An Inaccessible Past***
***February 5, 2025***

114. On February 5, 2025, Owens released "Episode 2: An Inaccessible Past."[45] Owens announced the episode on X.[46]

115. Episode 2 was premised on Owens' false claims that both President and Mrs. Macron have intentionally made it impossible for the media to uncover their pasts, thereby hiding the secrets of their identities and relationship. During Episode 2, Owens made the following specific false and defamatory claim:

> He turned to his wife to know what to answer about his sister. I don't know about how you guys are feeling right now, but I'm starting to get a little icky feeling. It's all starting to feel a bit, I don't know, incestuous to me . . .

116. Owens began Episode 2 by saying she "did not even cover all of the pedophile stories" in Mrs. Macron's past. Throughout Episode 2, Owens remained committed to her preconceived narrative that Mrs. Macron was born a man, interpreting all information as further confirmation. She again highlighted Mrs. Macron's clothing as evidence she transitioned, stating that she wore a lot of scarves as a teacher, and the only plausible explanation was that they were meant to hide signs of feminization surgery.

117. Citing Mrs. Macron's childhood family photo, Owens claimed that Mrs. Macron was not the child on the mother's lap but the boy to the left—her brother, Jean-Michel—and falsely asserted that until the photo's release, Jean-Michel was "completely unaccounted for."

---

[45] Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *An Inaccessible Past* | Ep 2 (Feb. 5, 2025), https://www.youtube.com/watch?v=PTHrK1QviaI&list=PLPW2eH9z9CUvJ0Iiv9AQqq2RVAWFFfNZR&index=6.

[46] Candace Owens (@RealCandaceO), X (Feb. 5, 2025, at 13:29 ET), https://x.com/RealCandaceO/status/1887207022883717284.

118. Owens also lied about Mrs. Macron's childhood photos. She said Virginie Linhart's documentary Brigitte Macron, un roman français contained only two photos when it contained more; presented a collage as "all the photos" in it while knowingly omitting many; and, confronted with contradictory evidence, dropped her claim that the first communion photo was "recolorized" but insisted it was not Mrs. Macron and falsely claimed that Mrs. Macron would not state she was in it.

119. Owens also began seeding her claim that President Macron is a product of MKUltra—a secret CIA mind-control program—or a similar program. She called his childhood "a black hole," suggested it may be tied to a clandestine government plot because his father was a psychiatrist and his mother a pediatrician, and cited the book *Chaos*, about MKUltra, as "relevant . . . learning about some government programs, which involved a lot of psychiatrists . . . it all just kind of fits in." This insinuation is demonstrably false—President Macron has not participated in and is not the product of any mind-control program—and Owens knew it.

120. Owens also introduced her false incest claim, saying of President Macron's demeanor in a media interaction, "It's all starting to feel a bit, I don't know, incestuous to me." She then showed a side-by-side image of President Macron and Mrs. Macron's "supposed to be nephew," Jean-Jacques, to imply that the Macrons are blood relatives. Owens knew this was false: the December Retraction Demand explicitly told her the Macrons are not blood relatives.

***Episode 3: One Coincidence Too Many***
***February 7, 2025***

121. On February 7, 2025, Owens premiered "Episode 3: One Coincidence Too Many."[47] Owens announced the episode on X.[48]

122. Episode 3 was premised on Owens' false claims that any coincidences in the Macrons' lives should be viewed as evidence in support of her theory. Among other things, Owens discussed President Macron's relationship with his grandmother, his parents' professions, and Mrs. Macron's first husband, André-Louis. During Episode 3, Owens made the following specific false and defamatory claims:

- We showed you this side by side of current President Emmanuel Macron and a person who was supposed to be Brigitte's nephew, his wife's nephew. But these two people who are not supposed to be in any way related look way too much alike.

- There is no conspiracy here. The MKUltra was real. The government was obsessed with all of these different programs. Really, the main point of them trying to condition the brain, trying to brainwash people, sometimes through isolation, which it sounds like Emmanuel Macron spent a ton of time isolated throughout his childhood. I mean, he's acknowledging that he lived through books, and his friends are acknowledging, or should be friends are acknowledging that he was kind of a loner and on his own. So they would experiment psychologically through isolation, through drugs, you know, LSD, drugging people to see if they could get them to commit crimes or to commit other acts unwittingly, essentially trying to establish a Manchurian candidate. . . . So we don't know just how global that program went. We don't know every element of that program. . . . And one element of that program was of course, sexual perversions, like committing a sexual assault in order to then establish how it impacts somebody's psyche. Truly evil stuff. Okay. Now earlier I told you that Macron's biological alleged biological parents you see here up on the screen had some interesting jobs just off the bat. His father, Jean-Michel Macron was a psychiatrist. And yes, of course we know for a fact that psychiatrists have done some evil things, some very evil things throughout the years.

---

[47] Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *One Coincidence Too Many* | Ep 3 (Feb. 7, 2025), https://www.youtube.com/watch?v=6Q3BNGd7htE&list=PLPW2eH9z9CUvJ0Iiv9AQqq2RVAWFFfNZR&index=5.

[48] Candace Owens (@RealCandaceO), X (Feb. 7, 2025, at 13:30 ET), https://x.com/RealCandaceO/status/1887932007713321053.

- What really happened to André-Louis, who was cremated very quickly, even though his daughter says he was buried? . . . What really happened to André-Louis? . . . Did he actually die? Did he escape with the assistance of the Élysée Palace? Did he try to escape, but the Élysée Palace intervened?

123. Owens opened Episode 3 by again showing the side-by-side photo of President Macron and Mrs. Macron's nephew, saying, "These two people who are not supposed to be in any way related look way too much alike," so that viewers would conclude the Macrons are blood relatives who committed incest—a claim she knew was false—to boost attention and profits.

124. She then questioned whether Mrs. Macron was the bride in her wedding photo with her late husband, André-Louis Auzière—despite acknowledging a marriage certificate confirming the wedding and listing Mrs. Macron's brother, Jean-Michel, as best man. She falsely claimed Mrs. Macron had refused to confirm she was the bride, though the December Retraction Demand explicitly identified the bride as Mrs. Macron and cited the photo as one of many documenting her life as a woman.

125. Owens also called the timing of André-Louis Auzière's death "remarkably convenient" and asked whether he was cremated too quickly. "Did he actually die?" she asked. "Did he escape with the assistance of the Élysée Palace?"

126. Owens stressed that President Macron's grandmother died on April 13, also Mrs. Macron's birthday and the start date of MKUltra. She alleged that President Macron was isolated as a child to become a "Manchurian candidate" in a program that included "sexual perversions" such as assault to "impact somebody's psyche."

127. Owens cast President Macron's parents' professions as suspicious: "We know for a fact that psychiatrists have done some evil things." She also invoked Jeffrey Epstein: "There is an Epstein connection in this story. . . . It is all connected."

128. Owens twisted the work of President Macron's mother, Dr. Françoise Noguès, with intersex patients into supposed proof that the family was versed in identity "transformation" and part of an effort to conceal Mrs. Macron's biological sex. There is no connection between Dr. Noguès' work and her daughter-in-law's identity, and Owens ignored the distinction between being intersex and being transgender. Without evidence, Owens falsely claimed the Macrons "kept this quiet when they got married."

***Episode 4: Jean-Michel Trogneux***
***February 11, 2025***

129. On February 11, 2025, Owens released "Episode 4: Jean-Michel Trogneux."[49] Owens announced the episode on X.[50]

130. Episode 4 was premised on Owens' false account of Jean-Michel's life and "proof" that Mrs. Macron was, in fact, Jean-Michel. Owens intentionally released Episode 4 on Jean-Michel's birthday, saying, "Happy birthday, Brigitte." During Episode 4, Owens made the following specific false and defamatory claims:

- Today is Jean-Michel Trogneux's birthday. In other words, happy birthday, Brigitte Macron, the First Lady, Brigitte Macron.

- . . . Macron's immediate family was involved in helping people who had gender issues to become someone else. In other words, they were facilitating the issuing of real government IDs, which allowed people to legally shed themselves of their former identities and their true biological sex. We have to wake up to the fact that that is the reality of the world that we live in today. So what are the implications of that?

- But what we can't tell you is what exactly happened to [André-Louis Auzière]. We cannot ascertain what happened to him based on the testimony of his first cousin, because it depends on whether or not you believe his partner, the woman who was at

[49] Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *Jean-Michel Trogneux* | Ep 4 (Feb. 11, 2025), https://www.youtube.com/watch?v=yCkFQSceM2Y&list=PLPW2eH9z9CUvJ0Iiv9AQqq2RVAWFFfNZR&index=4.

[50] Candace Owens (@RealCandaceO), X (Feb. 11, 2025, at 13:09 ET), https://x.com/RealCandaceO/status/1889376320758411562.

his funeral, who claimed that she found tickets to Africa in his pocket, that he had emptied all of his bank accounts. And if you potentially, or you could say, and, or if you believe the journalist from Paris Match, who then wrote that André actually spent the last days of his life in a psychiatric ward being guarded by none other than Alexander Benalla.

- With forgery, extortion, and most importantly, with access to a woman who can facilitate the changing of identities, it is not enough for any person investigating this case to ask questions like, is this Brigitte Trogneux in the wedding photo?

- Because we can confirm that that is indeed a photo of a woman named Brigitte Trogneux in that wedding photo where that Brigitte is. We cannot confirm because the first lady refuses to answer. She has a mother-in-law who helps transgender people get new identities. So you have to essentially understand that you can just take somebody's name. You can take, you can become somebody else at a moment's notice. Now, legally, when you become transgender, okay. This brings us to Jean-Michel Trogneux.

- If it's really you, Brigitte Macron, and you didn't take on the identity of your sister, if it's really you . . .

- The only question that remains is who the hell is Brigitte Macron? And the obvious answer to me, and after you see these photos that you are going to see, one in particular, from when Jean-Michel Trogneux was 18, you're going to fall down like I did when I saw it. It's completely crazy.

- There's no question upon seeing this technology, in my mind, that Jean-Michel Trogneux is Brigitte Macron. The only question that I have is what happened to his sister, Brigitte Trogneux.

131. Owens released Episode 4 on Jean-Michel's birthday and opened by declaring, "Today is Jean-Michel Trogneux's birthday. In other words, happy birthday, Brigitte Macron." She teased an "explosive" photo of Jean-Michel but did not show it and asserted, "there's no question . . . that Jean-Michel Trogneux is Brigitte Macron." She promised evidence about the "real" Brigitte Trogneux but never provided it.

132. Owens also claimed that Mrs. Macron gave a 1977 interview as "Véronique," an openly transgender individual, citing an AI voice analysis that supposedly showed the voice was "exactly" the same, though she admitted she "doesn't know much about these softwares" and did not show that the analysis exists. Because Jean-Michel's wife was named Véronique, Owens used

the interview to bolster her claim that he became Mrs. Macron, calling the marriage only "on paper."

133. Owens ignored public videos and photos of Jean-Michel, including from President Macron's inauguration, and did not tell her audience that her own source, Poussard, admitted in his book that the man seen at the inauguration is named Jean-Michel and lives above the Trogneux family shop in Amiens.

134. Owens insisted that if Mrs. Macron "didn't take on the identity of [her] sister," she would have answered basic questions—ignoring that those answers were in the December Retraction Demand.

135. Owens closed Episode 4 by again citing the book *Chaos*, about the Charles Manson murders and the CIA, claiming these topics are "very relevant" to President Macron's story.

136. Revealing her financial motive, Owens solicited donations by claiming she is risking her safety "to protect children" from "predatory" people like the Macrons.

***Episode 5: Who Created Emmanuel Jean-Michel Macron?***
***February 13, 2025***

137. On February 13, 2025, Owens premiered "Episode 5: Who Created Emmanuel Jean-Michel Macron?"[51] Owens announced the episode on X.[52]

---

[51] Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *Who Created Emmanuel Jean-Michel Macron?* | Ep 5 (Feb. 13, 2025), https://www.youtube.com/watch?v=xAiShYLJi5k&list=PLPW2eH9z9CUvJ0Iiv9AQqq2RVAWFFfNZR&index=3.

[52] Candace Owens (@RealCandaceO), X (Feb. 13, 2025, at 15:25 ET), https://x.com/RealCandaceO/status/1890135320332804466.

138. Episode 5 was premised on Owens' false and defamatory claim that a secret group of elites selected and groomed Emmanuel Macron to lead France so they could control him. During Episode 5, Owens made the following specific false and defamatory claims:

- This is a good time to tell you that most of what you think you even know about Emmanuel Macron thus far, his legacy. Yeah, it's just objectively not true. Emmanuel had a major hand up in life. This guy [is] so private, we don't know much about him. What we do know about him is I would say quite sinister. It's quite sinister. It's making me think, I don't know, of that movie, *The Manchurian Candidate*.

- Brigitte Macron perhaps is Jean-Michel Trogneux.

- Who are you really, and what is your relationship to Emmanuel Macron? What is Emmanuel Macron's relationship to you? What is the relationship between Emmanuel Macron and Jean-Jacques? It's not feeling like a nephew to me.

- He's just a puppet. And he has been groomed from that time that he was a child, but groomed by who, who is his father? Who is his father? . . . he doesn't really seem to have close relations with his parents of these, his doctors, perhaps . . . they can change identities and they can change names. This family has this capacity.

- There are too many similarities between the upbringing of []Emmanuel Macron and as we talked about the upbringing of Kamala Harris, the upbringing of Barack Obama, you know, these people being raised by their grandparents at a time when we know that the MKUltra program was running and there is something very, very wrong there.

139. Owens opened Episode 5 by claiming that public images of the Macrons "can't be trusted" because they were supposedly manufactured by public relations consultant Mimi Marchand, who Owens said has "an extensive criminal history."

140. Owens cast President Macron as a "Manchurian candidate," handpicked and groomed by shadowy elites as part of a global operation steeped in "perversion and pedophilia and grooming," telling him, "[C]learly somebody behind you has been moving you all through life."

141. She tied this alleged grooming to the Rothschilds, a prominent Jewish banking family long targeted by antisemitic conspiracy theories, telling viewers she would not say much about them "so the episode doesn't get hit on YouTube," but urging them to look up "proven ties to Jeffrey Epstein" and scandals involving "pedophilia and incest." Owens' fixation on the

Rothschilds pervades her reporting on the Macrons. In the same episode, Owens equated being transgender with pedophilia, telling the Macrons, "You can't play the, all my homies are pedophiles and trans except for me card."[53]

142. Owens asked Mrs. Macron, "Who sanctioned these lies in the press?" and questioned whether Jean-Jacques is really her nephew, then falsely said, "They won't answer that." The Macrons had unequivocally denied the incest claim in the December Retraction Demand.

***Episode 6: Candace Owens x Xavier Poussard***
***February 17, 2025***

143. On February 17, 2025, Owens launched Episode 6, titled "Candace Owens x Xavier Poussard."[54] Owens announced the episode on X.[55] The first twenty minutes are available (and transcribed) on the platforms listed above, but the remainder is only on CandaceOwens.com, allowing Owens to avoid other platforms' content moderation policies.

144. Episode 6 features Owens' interview of her primary source, Poussard. Knowing that Poussard had led Rey and Roy into defamation liability in France, Owens aired his false claims to a global audience twice and expanded on them, saying she released the episode because the Macrons sent her a retraction demand—revealing a motive of revenge, not truth.

145. During Episode 6, Owens made the following specific false and defamatory claim:

> I think a year from now, most of the world will be awakened to the fact that what I said one year ago is true. I believe that Emmanuel Macron is a homosexual man that was groomed from his youth. I believe the individual

---

[53] Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *Who Created Emmanuel Jean-Michel Macron?* | Ep 5 (Feb. 13, 2025), at 31:10–36:08, https://www.youtube.com/watch?v=xAiShYLJi5k&list=PLPW2eH9z9CUvJ0Iiv9AQqq2RVAWFFfNZR&index=3.

[54] Candace: Becoming Brigitte: *Candace Owens x Xavier Poussard* | Ep 6 (CandaceOwens.com, Feb. 17, 2025), https://candaceowens.com/video/becoming-brigitte-candace-owens-x-xavier-poussard-ep-6/.

[55] Candace Owens (@RealCandaceO), X (Feb. 17, 2025, at 12:56 ET), https://x.com/RealCandaceO/status/1891547191736475866.

who groomed him is now his wife. I believe that his wife was born Jean-Michel Trogneux and transitioned in his early thirties, and I believe that the entire state is colluding to protect that secret. And like I said, I would stake my entire professional career on all of those points.

146. Owens published several X posts in support of Episode 6 making the following specific false and defamatory claims:

- Emmanuel Macron married a man. Which was illegal at the time that he did it.[56]




- Why did he send me the legal letter? 1) Because Brigitte can STILL be prosecuted for this crime against a minor up until the end of this year. 2) Because his marriage was an illegal act. Emmanuel Macron broke the law when he married his groomer.[57]

---

[56] Candace Owens (@RealCandaceO), X (Feb. 18, 2025, at 9:45 ET), https://x.com/RealCandaceO/status/1891861509975703647.

[57] Candace Owens (@RealCandaceO), X (Feb. 18, 2025, at 9:47 ET), https://x.com/RealCandaceO/status/1891862093575462960.




147. In Episode 6, Owens and Poussard presented their full theory as fact, knowing it was false: that Mrs. Macron is Jean-Michel, who committed incest with President Macron, himself a mind-control product and "Manchurian candidate," and that the Macrons manipulate the media, falsify records, and abuse state power to suppress the truth.

148. Owens and Poussard asserted, without proof, that Mrs. Macron's childhood photos were doctored to hide her "true" identity, including by airbrushing a young Jean-Michel out of the family photo. Owens dismissed the 2021 Daily Mail debunking article, saying she could "just see" Mrs. Macron was actually Jean-Michel; called the first communion photo "too modern" and colorized—an assertion she had walked back after receiving the December Retraction Demand; and denied that the wedding photo showed Mrs. Macron.

149. They alluded to, but never showed, photos that Poussard claimed would "prove" Mrs. Macron is Jean-Michel, and claimed without proof that Jean-Michel is not the man in the inauguration video.

150. They claimed that Jean-Michel assumed his sister's identity in 1986 and married President Macron under that false persona, committing "identity theft," yet—despite admitting she "actually existed"—never explained what happened to the "real Brigitte Trogneux."

151. Owens claimed that France is "run by a deranged homosexual with his child victim," and declared that "Emmanuel Macron is a homosexual man that was groomed from his youth"—reflecting her disdain for his perceived sexual orientation, which she treats as proof of abuse. Citing President Macron's perceived resemblance to Jean-Jacques, whom Poussard falsely claimed may be Mrs. Macron's child, she again suggested that the Macrons are blood relatives committing incest.

152. Owens and Poussard agreed that a secret group of criminal elites controls President Macron. Owens said that "leaders are selected and primed and groomed and sort of inserted into powerful positions," adding: "This is kind of the same thing with Brigitte Macron." Poussard said the Macrons' "entire identity is based upon a fraudulent construct, forgery, pedophilia, and the abuse of a minor."

153. Owens and Poussard accused the Macrons of abusing the French Secret Service and judiciary to silence critics and keep this "dark family secret," and Owens asked whether Poussard fears for his life—suggesting that the Macrons would kill to protect their "fraudulent construct."

## ***The Epilogue***
## ***February 20, 2025***

154. Owens released the last episode of the Series, titled "The Epilogue," on February 20, 2025.[58] In it, Owens claimed that in all previous episodes she had "stuck strictly to the facts." Owens announced the episode on X.[59]

155. The Epilogue is premised on Owens' false and defamatory claims that a family member molested President Macron, that the Macrons are committing incest, and that the Rothschild, Trogneux, and Macron families are intertwined blood relatives. During the Epilogue, Owens made the following specific false and defamatory claims:

- I know there are so many lingering questions. Is Brigitte Macron, the first lady of France, Emmanuel Macron's biological father? We're hearing that a lot. Where is the real Brigitte Trogneux?

- Okay, so many of you had suspected that these families might all be related. Are the Auzières, the Trogneux, and the Macrons all just from the same family? Is there a chance that Brigitte Macron some of you asked is actually the father of Emmanuel Macron?

- We definitely know and have confirmed like we did in the last episode that he had his hand held through his career by uh, David de Rothschild. A family that is known and is on record as having practiced incest. Okay, why and how did Emmanuel Macron get so close to the Rothschilds? So close that his colleague said this dude didn't even know what EBITDA meant and yet he became the youngest managing partner. We understood that whatever it was David Rothschild was holding his hand. He just couldn't question the power that he was being given and we would laugh at him in meetings because he knew nothing about finance. Why did David Rothschild see to it that Emmanuel had his hand held? Vice is nice, but incest is best because it stays in the family. That is a direct quote from David de Rothschild's cousin Natalie Reams Rothschild . . . . Then there was a biography which was written by author Natalie Livingston, which was entitled "The Women of Rothschild," which sort of revealed the maniacal desire that the Rothschild family had to maintain their fortune and their power

---

[58] Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *The Epilogue* (Feb. 20, 2025), https://www.youtube.com/watch?v=Yu1_dhNvLHg&list=PLPW2eH9z9CUvJ0Iiv9AQqq2RVAWFFfNZR&index=1.

[59] Candace Owens (@RealCandaceO), X (Feb. 20, 2025, at 16:00 ET), https://x.com/RealCandaceO/status/1892680741172941033.

in the world. A desire that was so maniacal that they practiced family incest. That is just undeniable. It is a fact. Okay, and allegedly they did this only until it was no longer socially acceptable. Right up until the late 19th century, you guys, right before we get into this this Trogneux family. It's just amazing. . . .

- Yes, I agree with those of you that are commenting right now that we are looking potentially at incest. That is, that is what in my guts feels it has to be a secret so big that it would make them react in this way because it is a type of violence to treat journalists like this. It is a [] kind of emotional violence to do these sorts of things and they do it as though they know that vice is nice, but incest is best and things should be kept within the family.

156. Owens published a false and defamatory X post in support of the Epilogue, in which Owens made the following specific false and defamatory claims:[60]

- Is Brigitte Macron [President Macron's] father?
- What happened to the real Brigitte?




157. In the Epilogue, Owens accused Mrs. Macron of an "identity swap," falsely claiming that the Élysée Palace refused to confirm that recent photos of Jean-Michel Trogneux show the person in a 1953 family photo from Amiens, though the December Retraction Demand—in a section Owens read aloud in Episode 1—confirmed his identity. She also repeated that "they

[60] *Id.*

won't answer [] for sure" whether the man in the inauguration footage is Mrs. Macron's brother, though the Macrons had given her that footage and stills confirming it is Jean-Michel.

158. She claimed the family "could destroy identities and create identities" using shared names, and urged viewers to share information about the "mystery" of Brigitte Trogneux's whereabouts.

159. Owens again raised incest claims to draw attention, asserting that a "key takeaway" from the Series was that Mrs. Macron may be President Macron's father, linking the Rothschild and Trogneux families to explain President Macron's promotion at Rothschild Bank. Owens built this incest accusation on an antisemitic trope: that the Rothschilds, a Jewish banking family, practiced "family incest" because "vice is nice, but incest is best."

160. She promoted Poussard's *Becoming Brigitte* book as containing "way more pedo-criminals" than the Series.

161. Owens claimed of President Macron, "They're not actually his mom and dad," again citing his parents' professions as evidence that his identity was manipulated and his entire life is staged.

162. Owens ended by telling President Macron: "Emmanuel Macron, you have lied repeatedly to the French people. You have harassed journalists. You are a monster . . . ." She concluded, "We know you were created. You are not real. . . . You are the Manchurian candidate, and you have absolutely no power." She accused Mrs. Macron of grooming President Macron into a "psychopathic" figure who "enjoyed harming people."

***The Macrons send a final retraction demand, putting Owens on notice of the false and defamatory claims in the Series.***

163. After the Series concluded, Owens repeated her claims in interviews with other podcasters, insisted that Mrs. Macron was a man whenever the Macrons appeared in the news,

publicized President Trump's request for her to stop spreading the rumors, falsely claimed that President Macron refused to help end the war in Ukraine until Owens stopped speaking about Mrs. Macron, and falsely tied President Macron to Jeffrey Epstein.

164. On February 21, 2025, Owens again accused Mrs. Macron of lying about her identity and grooming President Macron. She then said, "Where's your lawsuit? Where's your lawsuit, Brigitte? When are you going to drop it?"[61]

165. On July 1, 2025, the Macrons sent the July Retraction Demand addressing the Series. It incorporated the December and February Retraction Demands and stated that "Mrs. Macron has always been a woman; she is not President Macron's blood relative; and President Macron was not involved in a mind control program."

166. Rather than retracting her claims, Owens used the July Retraction Demand for content.[62] She falsely told her audience that the Macrons had never told her they were not blood relatives. She then read the demand's appendix of false and defamatory statements on air and published the demand and appendix to CandaceOwens.com.

167. Owens refused to retract, stating, "We are not getting in line. We've said, 'File your lawsuits, my friend.'" She claimed the demand was the result of the Macrons' "law firm just running up the tab and taking their money and lying to them about what defamation means in America." The Macrons never received a direct response.

---

[61] Video posted by Candace Owens (@RealCandaceO), YouTube, *EXCLUSIVE: Taylor Swift Will Be Deposed.* | Candace Ep 150 (Feb. 21, 2025), https://www.youtube.com/watch?v=wpTaKI_oUWc.

[62] Video posted by Candace Owens (@RealCandaceO), YouTube, *DOUBLE SERVED! Blake Lively And Brigitte Macron.* (July 2, 2025), https://www.youtube.com/watch?v=03DPN8u9mHw.

*The Macrons file the Delaware Action against Owens,*
*Owens responds by tripling down and*
*launching Season Two of the Series.*

168. The Macrons filed their Complaint in the Delaware Action on July 23, 2025, once again putting Owens on notice of the falsity of her claims and the publicly available evidence disproving them. Owens responded by republishing Season One of the Series and describing its claims as "the truth."[63]




***Candace Ep 218***
***July 23, 2025***

169. The day the Macrons filed the Delaware Action, Owens released Episode 218 titled "BREAKING! Brigitte Sues Me For Defamation."[64] The cover image for the episode stated, "This took… balls." Owens announced the episode on X.[65]

170. In Episode 218, Owens reacted to the Delaware Action by playing a clip from Gladiator and asking, "Are you not entertained?" She repeated her false claims, calling

---

[63] Candace Owens (@RealCandaceO), X (July 23, 2025, at 22:58 ET), https://x.com/RealCandaceO/status/1948216250431099317.
[64] Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING! Brigitte Sues Me For Defamation | Candace Ep 218* (July 23, 2025), https://www.youtube.com/watch?v=PKKLk57tcLs.
[65] Candace Owens (@RealCandaceO), X (July 23, 2025, at 15:56 ET), https://x.com/RealCandaceO/status/1948110050905542819.

Mrs. Macron "a very goofy man" and claiming she has "definitely got balls." She said the Delaware Action was further proof that "Brigitte Macron is definitely a man." She repeatedly referred to Mrs. Macron's alleged penis and called her "a creepy old man."

171. Owens refused to back down and displayed ill will toward Mrs. Macron, stating:

> I'm getting really sick of Brigitte Macron . . . . I think you're a man. . . . You may want to split hairs about, well, I'm really a woman. And I feel on the inside, I'm a woman. An insulting wig that you're wearing, it's ridiculous. . . . ***What I'm saying is that you were born a man and you will die a man.***

172. Owens' words reveal what drives her. She did not merely assert a fact about Mrs. Macron's past; she mocked Mrs. Macron's "insulting wig," derided her identity as a woman, and declared that she "will die a man."

***Candace Ep 219***
***July 24, 2025***

173. On July 24, 2025, Owens released Episode 219 titled "WOAH! Trump Named In Epstein Files. '*Becoming Brigitte*' Goes International."[66] Owens announced the episode on X.[67]

174. In Episode 219, Owens repeated her false claims that the Macrons were involved in incest. She said that Mrs. Macron "would have defeated [Owens] in the court of public opinion if the truth was on ***his*** side, but it's not." She claimed that after "one episode of the *Becoming Brigitte* series . . . [n]obody comes out of that thinking that Brigitte Macron was born a woman." She then promised that she was "going to do a *Becoming Brigitte* season two because that [] is exactly what happens when you try to bully [her] with finances."

---

[66] Video posted by Candace Owens (@RealCandaceO), YouTube, *WOAH! Trump Named In Epstein Files. 'Becoming Brigitte' Goes International* | Candace Ep 219 (July 24, 2025), https://www.youtube.com/watch?v=KOw97YmXicE.
[67] Candace Owens (@RealCandaceO), X (July 24, 2025, at 15:59 ET), https://x.com/RealCandaceO/status/1948473223705968729.

175. Owens repeated her false claims on X that the Macrons are lying about Mrs. Macron's identity despite the Macrons' denials in the Delaware Action.[68][69]







***Candace Ep 220***
***July 28, 2025***

176. On July 28, 2025, Owens released Episode 220 titled "EXCLUSIVE! Brigitte Macron's Lawyer Has A Dark Past. Dan Bongino Speaks Out."[70] Owens announced the episode on X.[71]

177. In Episode 220, Owens claimed the Macrons sued her because she was "getting close to finding out . . . all of it's really connected, Epstein, Brigitte, Ghislaine." She repeated her false claim that the Rothschilds control President Macron, stating that "[President] Macron has absolutely no power to do anything that the Rothschilds do not want done." She then referred to Mrs. Macron as President Macron's husband.

---

68 Candace Owens (@RealCandaceO), X (July 24, 2025, at 13:38 ET), https://x.com/RealCandaceO/status/1948437681983148236.

69 Candace Owens (@RealCandaceO), X (July 25, 2025, at 08:49 ET), https://x.com/RealCandaceO/status/1948727307608187259.

70 Video posted by Candace Owens (@RealCandaceO), YouTube, *EXCLUSIVE! Brigitte Macron's Lawyer Has A Dark Past. Dan Bongino Speaks Out.* | Candace Ep 220 (July 28, 2025), https://www.youtube.com/live/JjtEQESDlCs.

71 Candace Owens (@RealCandaceO), X (July 28, 2025, at 15:56 ET), https://x.com/RealCandaceO/status/1949922035640996323.

***Candace Ep 221***
***July 29, 2025***

178. On July 29, 2025, Owens released Episode 221 titled "Brigitte Presents 'Proof' Her Brother Is Alive."[72] Owens announced the episode on X.[73]

179. In Episode 221, Owens repeated her false claim that the Macrons are lying about Mrs. Macron's identity, calling her a "quote unquote mother." She asserted that Jean-Michel was "curiously missing" and cited "Chinese software" as stating "that [Mrs. Macron is] this little boy in the photo." She alleged that "Jean-Michel Trogneux took Brigitte Trogneux's identity at some point." She added that Mrs. Macron was "part of a network of people that are willing to give IDs."

180. Owens also repeated the false allegation that President Macron was "intentionally groomed for a position of power."

181. Owens told her listeners that "our *Becoming Brigitte* series barely scratched the surface. . . . It's just so sick and sadistic and it's such a web."

***Candace Ep 222***
***July 31, 2025***

182. On July 31, 2025, Owens released Episode 222 titled "First Epstein, Now Diddy. What Is Donald Trump Thinking?!"[74] Owens announced the episode on X.[75] In it, Owens said she wants the Delaware Action "to go all the way."

---

[72] Video posted by Candace Owens (@RealCandaceO), YouTube, *Brigitte Presents "Proof" Her Brother Is Alive.* | Candace Ep 221 (July 29, 2025), https://www.youtube.com/live/6ewSeyiObm0.
[73] Candace Owens (@RealCandaceO), X (July 29, 2025, at 15:57 ET), https://x.com/RealCandaceO/status/1950284459359523157.
[74] Video posted by Candace Owens (@RealCandaceO), YouTube, *First Epstein, Now Diddy. What Is Donald Trump Thinking?!* | Candace Ep 222 (July 31, 2025), https://www.youtube.com/watch?v=Glm-rvI6bBU.
[75] Candace Owens (@RealCandaceO), X (July 31, 2025, at 16:04 ET), https://x.com/RealCandaceO/status/1951010818868277736.

### *Tucker Carlson Interview of Candace Owens*
### *August 1, 2025*

183. On August 1, 2025, Owens appeared on the *Tucker Carlson Show* to discuss the Delaware Action.[76] She reposted the episode on X that day.[77] On August 4, 2025, she posted it again, celebrating that it had reached over 3 million views.[78] The episode is available on tuckercarlson.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, with transcripts on YouTube, Spotify, Apple Podcasts, and PodScribe.







184. In the interview, Owens repeated her false claim that "[Mrs. Macron] was born a man named Jean-Michel Trogneux." She repeated the false claim that the Macrons abused their power to "harass" the journalists that "got wise to the fact that Brigitte Macron kind of didn't exist for 30 years." She also claimed that President Macron was "told to pretend that [he's] the president of France and somebody behind [him] is telling [him] what to do . . . ." And she stated that she "certainly d[id] not want to have the case dismissed."

---

[76] Tucker Carlson Network, The Tucker Carlson Show, *Candace Owens: Macron, Harvey Weinstein, and Why "Christ Is King" Totally Broke People's Brains* (Aug. 1, 2025), https://tuckercarlson.com/tucker-show-candace-owens-2025.

[77] Candace Owens (@RealCandaceO), X (Aug. 1, 2025, at 13:00 ET), https://x.com/TuckerCarlson/status/1951327223845105812.

[78] Candace Owens (@RealCandaceO), X (Aug. 4, 2025, at 10:16 ET), https://x.com/RealCandaceO/status/1952373092677722398.

185. After the Tucker Carlson interview, Owens did not slow down. Between August 4 and September 9, 2025, she released eleven more episodes of *Candace* plus the first two episodes of *Becoming Brigitte* season 2. In these episodes, Owens repeated her core lie that Mrs. Macron was born Jean-Michel Trogneux and that the Macrons have spent decades deceiving the public about it.[79] Again and again, she aimed her attacks at the Macrons' perceived sex, gender identity, and sexual orientation; at their religion and supposed ties to the Rothschilds; and at their French nationality.[80]

186. In these episodes, Owens layered on new and increasingly bizarre theories to support her lies. For instance, she accused the Élysée Palace of "pluck[ing]" off journalists seeking the "truth,"[81] accused the Macrons and their family of fabricating Mrs. Macron's birth

---

[79] *E.g.*, Video posted by Candace Owens (@RealCandaceO), YouTube, *What Does Israel Have On Donald Trump?* | Candace Ep 224 (Aug. 5, 2025), https://www.youtube.com/watch?v=Abf0FTYPyMQ&t=3288s ("if you say that you don't think that Brigitte Macron is a man, … you didn't watch the series"); Video posted by Candace Owens (@RealCandaceO), YouTube, *Yes, Trump WILL Pardon Ghislaine Maxwell.* | Candace Ep 225 https://www.youtube.com/live/RKG3asyEB3g ("Brigitte Macron is a male"); Video posted by Candace Owens (@RealCandaceO), YouTube, *INSANE UPDATE! Brigitte, Blake Lively, And The Globalized Press.* | Candace Ep 226 (Aug. 7, 2025), https://www.youtube.com/live/XIES-bVsP2c ("the sheer size of Brigitte's hands, the one thing you can't operate on … that is a very large hand for a madame"); Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *The God Of Amiens.* (Sep. 9, 2025), https://www.youtube.com/live/MHDyInz4kAA ("you're looking at somebody that is a dude … that gait in particular is quite military").

[80] *See supra* n.79; Video posted by Candace Owens (@RealCandaceO), YouTube, *Drama Club Reunion: Macron, Zelensky, And House Inhabit Are Back!* | Candace Ep 229 (Aug. 18, 2025), https://www.youtube.com/live/BtpY_86FYHg ("Does she stand when she pees?"); Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *MK Ultra And The French Gold Rush.* (Sep. 8, 2025), https://www.youtube.com/live/gtI9o5YroxQ (claiming Mrs. Macron was a "Rothschild agent" who may have put Jean Michel-Trogneux in the Stanford Prison Experiment to get gold); Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING NEWS! Jean "M" Trogneux FOUND In The United States In The 60's.* | Candace Ep 232 (Aug. 21, 2025), https://www.youtube.com/live/cctwGCBQdUc (claiming Mrs. Macron was part of the cult of Dionysus and was trying to dismantle the Catholic Church).

[81] Video posted by Candace Owens (@RealCandaceO), YouTube, *Yes, Trump WILL Pardon Ghislaine Maxwell.* | Candace Ep 225 https://www.youtube.com/live/RKG3asyEB3g.

announcement and other evidence,[82] claimed the Macrons were targeting her because of her race,[83] insisted that Jean-Michel Trogneux participated in the Stanford Prison Experiment,[84] suggested that recent deaths within Mrs. Macron's family were tied to a cover-up orchestrated by the Macrons (and questioned whether the U.S. government was complicit in the same),[85] claimed that Mrs. Macron was part of the cult of Dionysus and was trying to dismantle the Catholic Church from within,[86] and bolstered her claim that the Macrons were part of MKUltra or a similar mind control program.[87]

---

[82] *E.g.*, Video posted by Candace Owens (@RealCandaceO), YouTube, *INSANE UPDATE! Brigitte, Blake Lively, And The Globalized Press.* | Ep 226 (Aug. 7, 2025), https://www.youtube.com/live/XIES-bVsP2c; Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING NEWS! The Macrons Hired A Detective To Investigate Me.* | Candace Ep 227 (Aug. 11, 2025), https://www.youtube.com/live/YYPPybwkXPg ("what's crazy is that they are producing as evidence in the lawsuit photos that we know are fake").

[83] Video posted by Candace Owens (@RealCandaceO), YouTube, *INSANE UPDATE! Brigitte, Blake Lively, And The Globalized Press.* | Ep 226 (Aug. 7, 2025), https://www.youtube.com/live/XIES-bVsP2c ("It's a slave whipping … When you guys see black and brown people, you're like, well, we're down in Algeria just doing stuff.").

[84] Video posted by Candace Owens (@RealCandaceO), YouTube, *President Macron Gives His Victim Impact Statement.* | Candace Ep 230 (Aug. 19, 2025), https://www.youtube.com/live/DCRJr_82wY; Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING NEWS! Jean "M" Trogneux FOUND In The United States In The 60's.* | Candace Ep 232 (Aug. 21, 2025), https://www.youtube.com/live/cctwGCBQdUc; Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *MK Ultra And The French Gold Rush.* (Sep. 8, 2025), https://www.youtube.com/live/gtI9o5YroxQ.

[85] Video posted by Candace Owens (@RealCandaceO), YouTube, *Emmanuel Macron Had A "Sugar Daddy". Kanye Drops A Documentary.* | Candace Ep 228 (Aug. 14, 2025), https://www.youtube.com/watch?v=T_d-gTvtyh8 ("had those two individuals have been alive, we may have liked to subpoena them"); Video posted by Candace Owens (@RealCandaceO), YouTube, *President Macron Gives His Victim Impact Statement.* | Candace Ep 230 (Aug. 19, 2025), https://www.youtube.com/live/DCR-Jr_82wY ("the United States government is not getting involved here and telling Emmanuel Macron to go away. Do they know something?").

[86] Video posted by Candace Owens (@RealCandaceO), YouTube, Becoming Brigitte: *The God Of Amiens.* (Sep. 9, 2025), https://www.youtube.com/live/MHDyInz4kAA.

[87] *Id.*

***Owens continues to republish and expand her false and defamatory claims throughout 2025 and 2026, using the Macrons' lawsuit itself as fuel for still more lies.***

187. Owens made the statements described below with full knowledge of the December 2024, February 2025, and July 2025 Retraction Demands, the French judgments against Rey and Roy, and the Delaware Action and the evidence of falsity set out in it. Owens expressly told her audience that she is "not taking back anything that [she has] said."[88]

188. Each episode, appearance, and post described below is a separate publication of false and defamatory statements of fact concerning President and Mrs. Macron.

***Candace Ep 264***
***November 13, 2025***

189. On November 13, 2025, Owens released Episode 264 titled "What Did Charlie Kirk Discover Near The End?"[89] Owens announced the episode on X.[90]

190. In Episode 264, Owens told her audience that "[w]e are a nation that is ruled by perverts" and that "the entire web of Western civilization seems to be ruled by perverts." She then identified the Macrons as a part of that supposed network, tied them to a "fed level coverup," and dismissed the Delaware Action as a sham designed to mislead the public. During Episode 264, Owens made the following specific false and defamatory claim:

> That's the common thread between my investigations into Brigitte Macron and her strange relationship, ***his strange relationship with Emmanuel Macron***, the fed level coverup, which includes a never-before-seen lawsuit,

---

[88] Video posted by Theo Von (@TheoVon), YouTube, *Candace Owens* | This Past Weekend w/ Theo Von #688 (Oct. 5, 2026), at https://www.youtube.com/watch?v=Yg2fzmNTmUo.
[89] Video posted by Candace Owens (@RealCandaceO), YouTube, *What Did Charlie Kirk Discover Near The End?* | Candace Ep 264 (Nov. 13, 2025), https://www.youtube.com/watch?v=yAIb-NuUh_U.
[90] Candace Owens (@RealCandaceO), X (Nov. 13, 2025, 4:44 PM), https://x.com/RealCandaceO/status/1989087039632064979?referrer=grok-com.

> which is just meant to be propagandists to make people think up there's nothing here, which should let you know that everything is here.

191. Owens repeated her false claim that Mrs. Macron is a man, deliberately correcting herself mid-sentence—from "her strange relationship" to "his strange relationship with Emmanuel Macron."

192. Owens told her audience that the Delaware Action "is just meant to be propagand[a] to make people think [] there's nothing here, which should let you know that everything is here."

193. These claims are demonstrably false, and Owens knew it. Mrs. Macron was born a woman named Brigitte Trogneux, and the Macrons have not lied about her identity.

***Candace Ep 268***
***November 19, 2025***

194. On November 19, 2025, Owens released Episode 268 titled "Charlie Kirk And The Crossing Of The Delaware."[91] Owens announced the episode on X.[92]

195. Episode 268 was premised on Owens' false claim that the world is "run by pedophiles" and that the Macrons are among them. Owens told her audience that her reporting on Mrs. Macron "was a story about pedophiles in power," aired a clip of two other podcasters speculating about Mrs. Macron's genitalia, and then declared that the Macrons sued her because they were "caught." During Episode 268, Owens made the following specific false and defamatory claims:

- I mean, any person who actually watched the Brigitte Macron story knows that that was a story about pedophiles in power, pedophiles in power and the psychopathic lengths they will go through to maintain the lie, right?

---

[91] Video posted by Candace Owens (@RealCandaceO), YouTube, *Charlie Kirk And The Crossing Of The Delaware* | Candace Ep 268 (Nov. 19, 2025), https://www.youtube.com/watch?v=SKGUzGHymcI.

[92] Candace Owens (@RealCandaceO), X (Nov. 19, 2025, 4:32 PM), https://x.com/RealCandaceO/status/1991258315339264326?referrer=grok-com.

- And, uh, Theo and Joe had quite a laugh discussing ***the Brigitte Macron non-conspiracy theory***.

- I told the truth about the Brigitte Macron story, right? And like I said, the fact that they are caught and their move is we're going to sue Candace Owens. That really tells you the nature of a psychopathology. Like these people are not human. I mean they're not human. There's something very dark and sinister and wrong that nothing stops and they have no shame and their only option is more anger, more destruction. Um, and in some circumstances people with that much power in a lot of circumstances, more murder, more murder.

196. Owens aired and endorsed a clip from Joe Rogan's podcast in which Mr. Rogan and Theo Von speculated whether Mrs. Macron has male genitalia. Owens introduced the clip by saying that "Theo and Joe had quite a laugh discussing the Brigitte Macron non-conspiracy theory." In the clip, one host said of Mrs. Macron "that if she does have, she better have a hog on her." Owens republished that degrading speculation to her audience of millions.

197. Owens closed by telling her audience that the Macrons sued her because they "are caught," that they "are not human," that they are "dark and sinister," and that "people with that much power" resort to "more murder, more murder."

198. These claims are demonstrably false, and Owens knew it. Mrs. Macron was born a woman named Brigitte Trogneux, and neither President nor Mrs. Macron is a "pedophile," has lied about Mrs. Macron's identity, or has ever directed violence against anyone.

***Candace Ep 269***
***November 20, 2025***

199. On November 20, 2025, Owens released Episode 269 titled "Another French Front: Did Charlie Kirk Save My Life?"[93] Owens announced the episode on X.[94]

---

[93] Video posted by Candace Owens (@RealCandaceO), YouTube, *Another French Front: Did Charlie Kirk Save My Life?* | Candace Ep 269 (Nov. 20, 2025), https://www.youtube.com/watch?v=sImMM04XdWY.

[94] Candace Owens (@RealCandaceO), X (Nov. 20, 2025, 4:42 PM), https://x.com/RealCandaceO/status/1991623097775190109.

200. Episode 269 was devoted almost entirely to the Macrons. During it, Owens made the following specific false and defamatory claims:

- Now we're in 2025 and I decide that actually I'm going to turn this down to an entire season because ***who are you French First Man*** to tell us that we can't speak about the story.
- It really kind of, um, it, it, it shocks your core that the press could be in on telling a lie this big.
- I just look at Brigitte Macron and I am telling you, you are looking at an utter psychopath in my view.
- And what terrifies me the most by the way, is how far the length that they are going through, uh, to protect Brigitte, who the hell is Brigitte Macron? Cause it ain't Brigitte Trogneux. I can tell you that for free. Who is this person?
- They would rather protect Brigitte even though the whole world no longer believes that Brigitte Macron was born a female, right?

201. Owens also told her audience that Tucker Carlson "believes that Brigitte Macron was born a man or born a male rather," offering the reaction to her own reporting as corroboration of her false claim.

202. These claims are demonstrably false, and Owens knew it. Mrs. Macron was born a woman named Brigitte Trogneux, in Amiens, France, on April 13, 1953; she is not Jean-Michel Trogneux, has not stolen anyone's identity, and is not a "psychopath."

***Candace Ep 284***
***January 5, 2026***

203. On January 5, 2026, Owens released Episode 284 titled "You Won't Believe What Happened While We Were Off Air."[95] Owens announced the episode on X.[96]

---

[95] Video posted by Candace Owens (@RealCandaceO), YouTube, *You Won't Believe What Happened While We Were Off Air* | Candace Ep 284 (Jan. 5, 2026), https://www.youtube.com/watch?v=OEAHy3SsIiI.
[96] Candace Owens (@RealCandaceO), X (Jan. 5, 2026, 4:27 PM), https://x.com/RealCandaceO/status/2008289275729657874.

204. Episode 284 was Owens' first episode of 2026. In it, Owens announced that "[w]e are still talking about Brigitte Macron being born a dude," and then responded to news reports that a French court had convicted eleven people of cyberbullying Mrs. Macron by restating her false claims as established fact and accusing Mrs. Macron of a crime. During Episode 284, Owens made the following specific false and defamatory claims:

- We are still talking about Brigitte Macron being born a dude.
- A real headline today, by the way, Brigitte Macron, who was quite literally born a male . . .
- No, it is proof that France has now created laws and are willing to try people for telling the truth if the person who is lying feels bullied.

205. Owens' statement that Mrs. Macron "was quite literally born a male," offered as the premise of a news item, is a flat assertion of fact about Mrs. Macron's sex.

206. Owens then characterized the French cyberbullying convictions—obtained by Mrs. Macron against people who had published the very claims Owens repeats—as "proof that France has now created laws and are willing to try people for telling the truth if the person who is lying feels bullied."

207. By January 2026, Owens had possessed for more than a year the December Retraction Demand and the evidence it contained, including Mrs. Macron's birth announcement, photographs of Mrs. Macron as a child, and proof that Jean-Michel Trogneux is alive and is Mrs. Macron's brother.

208. Owens also used Episode 284 to ridicule Mrs. Macron's body. Holding up on air a "Brigitte doll," an alien-like figure reminiscent of the film character E.T., to caricature Mrs. Macron's physical appearance, Owens told her audience, "I got this Christmas present from Mark, and it's just hilarious. I can't even believe that this is being sold online. I don't know, it's just very sweet that France is selling Brigitte dolls . . . And whoever is selling this is about to be

so sued from the French government." Owens displayed the doll to invite her audience to mock Mrs. Macron's body and appearance.

209. These claims are demonstrably false, and Owens knew it. Mrs. Macron was born a woman named Brigitte Trogneux and has not lied about her identity.

***X Posts***
***January 5, 2026***

210. On January 5, 2026, Owens published two posts about Mrs. Macron on her X account, @RealCandaceO.[97][98]

211. In those posts, Owens abandoned any pretense that she was merely asking questions. She referred to Mrs. Macron throughout as "this man," "he," and "Jean Michel Trogneux," and asserted that she had assumed a female identity to escape something she had done during unspecified "military years." Defendant made the following specific false and defamatory claims:

- It is my honest to God belief that Jean Michel Trogneux was involved in some really sinister stuff during his military years, which made his transition a requirement. Brigitte is dangerous. That he wakes up everyday, puts on a fake wig, lipstick and mascara and declares war on those who know his true identity is nothing short of psychopathic.
- I do not believe Jean Michel Trogneux transitioned because he felt he was a woman. I believe he transitioned because whatever he did during his military years overseas was so demented that he needed an entirely new face and identity. Brigitte mentioning 'MKUltra' a shocking 18 times in his lawsuit against me was a confession.

212. Owens stated, as fact, that Mrs. Macron is a man and "Jean Michel Trogneux." Owens then went further, asserting that Mrs. Macron did something "really sinister" and "so

---

[97] Candace Owens (@RealCandaceO), X (Jan. 5, 2026, 9:07 AM), https://x.com/RealCandaceO/status/2008178621874131093.
[98] Candace Owens (@RealCandaceO), X (Jan. 5, 2026, 9:14 AM), https://x.com/RealCandaceO/status/2008180304717005041.

demented" during "his military years overseas" that it "made his transition a requirement" and required "an entirely new face and identity." Owens offered no evidence for any of this because none exists.

213. She also told her audience that Mrs. Macron is "dangerous" and "psychopathic," that she "puts on a fake wig, lipstick and mascara," and that she "declares war on those who know his true identity."

214. Owens also told her readers that the Macrons' reference to MKUltra in the Delaware Action "was a confession," although the Delaware Action referred to MKUltra only to deny Owens' false claims that the Macrons were products of it.

215. These claims are demonstrably false, and Owens knew it. Mrs. Macron was born a woman named Brigitte Trogneux; she is not Jean-Michel Trogneux; she never served in any military; and she has never committed any "sinister" or "demented" crime or "transitioned."

***Candace Ep 285***
***January 6, 2026***

216. On January 6, 2026, Owens released Episode 285 titled "BREAKING NEWS: Where Tyler Robinson Went On The Night Of 9/10."[99] Owens announced the episode on X.[100]

217. In Episode 285, Owens returned to the French cyberbullying convictions and told her audience that what Mrs. Macron had actually established in court was that "the truth about [her] gender" may not be spoken. During Episode 285, Owens made the following specific false and defamatory claim:

---

[99] Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING NEWS: Where Tyler Robinson Went On The Night Of 9/10* | Candace Ep 285 (Jan. 6, 2026), https://www.youtube.com/watch?v=HYn0P-P1wUw.

[100] Candace Owens (@RealCandaceO), X (Jan. 6, 2026, 4:38 PM), https://x.com/RealCandaceO/status/2008654325254680885.

- Brigitte Macron believes the truth about his gender is a form of harassment.
- It doesn't matter if it's true. It matters if it hurt Brigitte's feelings . . . She feels harassed by the truth. You can harass people with the truth now . . . this is not defamation. She's not making the argument that these things are untrue. She's making the argument that her feelings are hurt because you know that she was born with a penis.

218. The defamatory sting of Owens' statement, which refers to Mrs. Macron as "his" and calls what she objects to "the truth" about her gender, lies in its assertion that Mrs. Macron's sex and gender are other than what she has always represented them to be.

219. Owens also falsely told her audience that the French defendants were "sentenc[ed] . . . to jail" for "know[ing] that she was born with a penis" and that Mrs. Macron is "not making the argument that these things are untrue" but only that "her feelings are hurt." Owens compared Mrs. Macron to Jeffrey Dahmer, asking her audience to "just imagine" telling "Jeffrey Dahmer" that "you're a sick cannibal pedophile" and hearing "that actually doesn't matter because you hurt my feelings."

220. Owens framed the Delaware Action as part of the same campaign: "[t]hat's the purpose of this lawsuit against me . . . is that evil people are getting caught doing evil things . . . ." She added that the Macrons' message is "we'll bankrupt you. We'll kill you. We'll do whatever it is to shut you up."

221. These claims are demonstrably false, and Owens knew it. Mrs. Macron was born a woman, and she has never attempted to kill or harm anyone for discussing these claims.

***Candace Ep 286***
***January 7, 2026***

222. On January 7, 2026, Owens released Episode 286 titled "DEFCON 3: Ben Shapiro's Legacy Of No-Nos."[101] Owens announced the episode on X.[102]

223. In Episode 286, Owens told her audience that a "dystopian future" was being imposed on them, and offered Mrs. Macron as her example. During Episode 286, Owens made the following specific false and defamatory claim:

> Like Brigitte Macron is suing people for knowing the truth about crimes that she committed when she was a man.

224. Owens continued: "[t]hat's a dystopian nightmare. You go to prison for knowing the truth."

225. These claims are demonstrably false, and Owens knew it. Mrs. Macron has never been a man, has not committed any crime, and has never sued anyone, or caused anyone to be imprisoned, for "knowing the truth"—the French proceedings she brought centered on the falsity of those claims.

---

[101] Video posted by Candace Owens (@RealCandaceO), YouTube, *DEFCON 3: Ben Shapiro's Legacy Of No-Nos* | Candace Ep 286 (Jan. 7, 2026), https://www.youtube.com/watch?v=zSKrxIUMNqw.

[102] Candace Owens (@RealCandaceO), X (Jan. 7, 2026, 4:37 PM), https://x.com/RealCandaceO/status/2009016585735041534.

***Candace Ep 290***
***January 14, 2026***

226. On January 14, 2026, Owens released Episode 290 titled "PROJECT LOOKING GLASS: How Did Charlie Know He Was Going To Die?"[103] Owens announced the episode on X.[104]

227. During Episode 290, Owens made the following specific false and defamatory claim:

> For example, even, uh, unrelatedly, but [] Brigitte and Emmanuel Macron, they filed a lawsuit. We have so much power. What are we going to do to stop this thing? She's getting into the story, is getting to the heart of evil and how the world is run to figure out that ***Brigitte was born a man***. What are we gonna do? We were going to file a lawsuit.

228. Owens presented this statement as a dramatization of the Macrons' deliberations, premised on her assertion that "Brigitte was born a man."

229. Owens also told her audience that her reporting is "getting to the heart of evil," placing the Macrons at the center of that "evil," and that the Macrons wield "so much power" that litigation is simply a tool they deploy to stop inconvenient reporting.

230. These claims are demonstrably false, and Owens knew it. Mrs. Macron was born a woman named Brigitte Trogneux.

---

[103] Video posted by Candace Owens (@RealCandaceO), YouTube, *PROJECT LOOKING GLASS: How Did Charlie Know He Was Going To Die?* | Candace Ep 290 (Jan. 14, 2026), https://www.youtube.com/watch?v=BKcOm32ZEGk.

[104] Candace Owens (@RealCandaceO), X (Jan. 14, 2026, 4:40 PM), https://x.com/RealCandaceO/status/2011553990086152360.

***Candace Ep 291***
***January 15, 2026***

231. On January 15, 2026, Owens released Episode 291 titled "OH SNAP! We Were Right About Fort Huachuca."[105] Owens announced the episode on X.[106]

232. During Episode 291, Owens made the following specific false and defamatory claim:

> If you have to say I'm a man, which he then follows up by saying "I'm a real man," you probably aren't one. Hey, Brigitte, if you got a lawsuit to prove you're a woman, you're probably not one.

233. Owens told her audience that the Macrons' suit is evidence that Mrs. Macron "probably [is] not" a woman. Owens has maintained throughout that no evidence can disprove her claim and that any attempt to disprove it confirms it—a preconceived narrative immune to fact.

234. These claims are demonstrably false, and Owens knew it. Mrs. Macron was born a woman named Brigitte Trogneux.

***Candace Ep 300***
***February 2, 2026***

235. On February 2, 2026, Owens released Episode 300 titled "BAAL SO HARD: The Epstein Files."[107] Owens announced the episode on X.[108]

236. During Episode 300, Owens made the following specific false and defamatory claim:

---

[105] Video posted by Candace Owens (@RealCandaceO), YouTube, *OH SNAP! We Were Right About Fort Huachuca* | Candace Ep 291 (Jan. 15, 2026), https://www.youtube.com/watch?v=X92MllIHDzw.

[106] Candace Owens (@RealCandaceO), X (Jan. 15, 2026, 5:31 PM), https://x.com/RealCandaceO/status/2011929265294496090.

[107] Video posted by Candace Owens (@RealCandaceO), YouTube, *BAAL SO HARD: The Epstein Files* | Candace Ep 300 (Feb. 2, 2026), https://www.youtube.com/watch?v=CEF7gQRWYCE.

[108] Candace Owens (@RealCandaceO), X (Feb. 2, 2026, 4:32 PM), https://x.com/RealCandaceO/status/2018437297788600673.

> you can't talk about kids without talking about France. Ain't that right? Brigitte. What's up, dude? What up, my dude? How you doing? It's going to sue me for knowing this is their new thing. We'll just sue you for now and we'll sue you for knowing that we're devil worshipers.

237. Owens addressed Mrs. Macron as "dude" and "my dude," and referred to her as "It"—"[i]t's going to sue me for knowing."

238. Owens made that statement alongside her accusation that French elites were "molesting Muslim kids" in Morocco and her assertion that the "Brigitte story . . . runs right through to Morocco." Owens said that "you can't talk about kids without talking about France," then turned immediately to Mrs. Macron—a juxtaposition that told her audience the Macrons are implicated in the sexual abuse of children.

239. Owens also told her audience that the Macrons are "devil worshipers" and "satanic," and that the Delaware Action was brought to punish her "for knowing" it.

240. These claims are demonstrably false, and Owens knew it. Mrs. Macron is a woman, and neither she nor President Macron has abused or exploited any child, in Morocco or anywhere else; and neither is a "devil worshiper."

***Candace Ep 302***
***February 4, 2026***

241. On February 4, 2026, Owens released Episode 302 titled "REVELATIONS: Macron's Boyfriend. Erika's Girlfriend."[109] Owens announced the episode on X.[110]

242. During Episode 302, Owens made the following specific false and defamatory claim:

---

[109] Video posted by Candace Owens (@RealCandaceO), YouTube, *REVELATIONS: Macron's Boyfriend. Erika's Girlfriend* | Candace Ep 302 (Feb. 4, 2026), https://www.youtube.com/watch?v=DYD_QHMPwqM.
[110] Candace Owens (@RealCandaceO), X (Feb. 4, 2026, 5:32 PM), https://x.com/RealCandaceO/status/2019177368787775528.

> There are more emails referencing the fact that Emmanuel Macron is gay. And I think the biggest clue was that he married a dude, but apparently now people are willing to accept that Emmanuel Macron is not a straight Catholic man by any stretch of an imagination.

243. Owens' statement rests on the asserted fact that President Macron "married a dude," i.e., that Mrs. Macron is a man.

244. Owens opened the segment by declaring: "Emmanuel Macron is gay. Why are you gay, Emmanuel Macron? When I said it, it was a conspiracy." She added that President Macron is "also married to a dude because he's gay. So that makes sense." Owens also told her audience that she had been "shown a photo of Macron's boyfriend" and gave "a shout out to Emmanuel Macron for being in the Epstein files." Owens prints the same taunt—"Why are you gay, Emmanuel Macron?"—on merchandise she sells, confirming that her claims about the Macrons are driven by disdain for their perceived sexual orientation and gender identity.

245. Owens presented these assertions as vindication—"another thing that I was right about"—and told her audience that the "mainstream media" was finally "willing to accept that maybe I was telling the truth."

246. These claims are demonstrably false, and Owens knew it. Mrs. Macron is a woman, and President Macron married a woman.

***X Post***
***February 4, 2026***

247. On February 4, 2026, Owens promoted Episode 302 in a post on her X account.[111]

248. Defendant made the following specific false and defamatory claim:

> Today on the show: 1) ***Epstein files reveal that Emmanuel Macron has a boyfriend. Know to some as—his wife.*** 2) I receive an explosive series of

[111] Candace Owens (@RealCandaceO), X (Feb. 4, 2026, 5:32 PM), https://x.com/RealCandaceO/status/2019177368787775528.

> tips that Erika Kirk was not with her mother on September 10th 3) The Elites worship Satan.

249. Owens framed the statement as a report of what the "Epstein files reveal," lending it the appearance of documentary support. No such document exists.

250. These claims are demonstrably false, and Owens knew it. Mrs. Macron is a woman, and President Macron is married to a woman.

***X Post***
***March 16, 2026***

251. On March 16, 2026, while her motion to dismiss the Delaware Action was pending, Owens posted on her X account about that motion and Mrs. Macron.[112]

252. Defendant made the following specific false and defamatory claim:

> We moved to have it dismissed out of Delaware courts, arguing they should be forced to file in Tennessee—where I live and where they will be subject to anti-slapp laws. We are arguing jurisdiction . . . . ***I have not moved one inch on my very public assertion that Brigitte Macron was born a male.***

253. Owens used the pendency of the Delaware Action as an occasion to republish the central falsehood of this case, and to make clear that she would never retract it.

254. Owens made that statement more than fourteen months after the Macrons first told her the claim was false, nearly eight months after they filed suit, and with the evidence of falsity squarely before her. It is direct evidence of actual malice and of Owens' refusal to retract.

255. These claims are demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Owens knew this when she published this statement.

---

[112] Candace Owens (@RealCandaceO), X (Mar. 16, 2026, 10:41 AM), https://x.com/RealCandaceO/status/2033554321816633592.

***X Post***
***March 30, 2026***

256. On March 30, 2026, Owens posted on her X account about France, Charlie Kirk, and Mrs. Macron.[113]

257. Defendant made the following specific false and defamatory claim:

> And I will say again that ***Brigitte Macron is a dangerous military man.***

258. These claims are demonstrably false, and Owens knew it. Mrs. Macron is a woman, has never served in any military, and is not dangerous.

***Candace Ep 330***
***April 29, 2026***

259. On April 29, 2026, Owens released Episode 330 titled "TIME MAGAZINE: World's Most VILE Person?!"[114] Owens announced the episode on X.[115]

260. In Episode 330, Owens read aloud to her audience a message from a viewer that she then endorsed and adopted. During Episode 330, Owens published the following specific false and defamatory claim:

> I'm rooting for you in regards to Erika, Charlie, and ***the french dude and his husband suing you.*** Continue kicking ass.

261. Owens read the message, which calls Mrs. Macron "the french dude" and President Macron "his husband," in full to her audience of millions. Owens responded: "[I]f they could see

---

[113] Candace Owens (@RealCandaceO), X (Mar. 30, 2026, 8:18 AM), https://x.com/RealCandaceO/status/2038591585936425352.

[114] Video posted by Candace Owens (@RealCandaceO), YouTube, *TIME MAGAZINE: World's Most VILE Person?! | Candace Ep 330* (Apr. 29, 2026), https://www.youtube.com/live/qZ8RWfyuewQ.

[115] Candace Owens (@RealCandaceO), X (Apr. 29, 2026, 4:31 PM), https://x.com/RealCandaceO/status/2049587427195465913.

the jokes that I write in my phone about Brigitte . . . there's a lot there . . . ." Owens thereby adopted the statement as her own.

262. These claims are demonstrably false, and Owens knew it. Mrs. Macron is a woman, and President Macron is married to a woman.

### *X Post*
### *May 26, 2026*

263. On May 26, 2026, in a post directed at another public figure, Owens again published her claims about Mrs. Macron on her X account.[116]

264. Defendant made the following specific false and defamatory claims:

> . . . Was this the real reason you began attacking Ron Desantis and then me, shortly after I exposed a Brigitte? . . . ***Did Brigitte ever call you back to inform you that although she is a dude***, she's not low IQ like you? Did you know Brigitte and Emmanuel have many trusts too . . . ?

265. Owens repeated that Mrs. Macron "is a dude." Owens claimed that she had "exposed" Mrs. Macron—again presenting her fabrication as a revealed truth.

266. These claims are demonstrably false, and Owens knew it. Mrs. Macron is a woman; there is nothing to expose.

### *Candace Ep 356*
### *June 25, 2026*

267. On June 25, 2026, Owens released Episode 356 titled "TRUMAN SHOW: Proof That Charlie Kirk Was Targeted By The Elites."[117] Owens announced the episode on X.[118]

---

[116] Candace Owens (@RealCandaceO), X (May 26, 2026, 1:02 PM), https://x.com/RealCandaceO/status/2059319211906797881.

[117] Video posted by Candace Owens (@RealCandaceO), YouTube, *TRUMAN SHOW: Proof That Charlie Kirk Was Targeted By The Elites* | Candace Ep 356 (June 25, 2026), https://www.youtube.com/watch?v=IqHsl7d2dos.

[118] Candace Owens (@RealCandaceO), X (June 25, 2026, 6:50 PM), https://x.com/RealCandaceO/status/2070278596649009630.

268. During Episode 356, Owens made the following specific false and defamatory claim:

> And it really has become a, a neat global governance protecting perverts. That's just the reality. The perverts are in charge. You have a president that wants me to be bankrupted by Brigitte Macron who harmed a child. That's crazy.

269. Owens placed her accusation that Mrs. Macron "harmed a child" inside her broader false narrative that the Macrons belong to a "global governance protecting perverts," and that the President of the United States is aligned with Mrs. Macron in an effort to "bankrupt[]" Owens for reporting on her.

270. These claims are demonstrably false, and Owens knew it. Mrs. Macron has never harmed a child, and neither she nor President Macron belongs to any network of "perverts."

***X Post***
***September 3, 2026***

271. On September 3, 2026, Owens posted a video of Mrs. Macron on her X account, making the following specific false and defamatory claim:[119]

> The wig looks better but Brigitte really can't help the ingrained military strut from his Jean Michel Trogneux days.

272. Owens attached the caption to a video of Mrs. Macron, inviting her readers to examine her appearance and gait for "evidence." That invitation is rooted in sexism and ageism: Owens asks her audience to scrutinize the body of a seventy-three-year-old woman and to treat Mrs. Macron's age and appearance as proof that she is not a woman.

[119] Candace Owens (@RealCandaceO), X (Sept. 3, 2026, 11:01 AM), https://x.com/RealCandaceO/status/2095527689545220444.

273. These claims are demonstrably false, and Owens knew it. Mrs. Macron is a woman and has never served in any military; Jean-Michel Trogneux is her older brother, who is alive in Amiens, France.

***This Past Weekend w/ Theo Von***
***October 5, 2026***

274. On October 5, 2026, Owens appeared as a guest on the podcast *This Past Weekend w/ Theo Von*, Episode #688.[120] The episode is available on YouTube, Spotify, Apple Podcasts, and Amazon Music, with transcripts on YouTube, Spotify, Apple Podcasts, and PodScribe. Owens announced the episode on X.[121]

275. Owens discussed this litigation at length, falsely claiming that the Macrons have never disputed that Mrs. Macron was born a man and stating that she stands by everything she has said. She made the following specific false and defamatory claims:

- For him, they never sued him, but they came after his businesses. You know, it's a squeeze, like I was talking about. One of the mechanisms is they'll try to bankrupt you, kind of terrify you. They went after other journalists on the case and sued them for defamation. Never on the point that Brigitte was born Jean-Michel Trogneux. My lawsuit is not about whether or not Brigitte Macron is a man. And that's what they do, is they try to win these cases on a technicality. Like she's suing me, like I said, for mentioning MKUltra, for saying that she stole her brother's ide[ntity] because she didn't steal it or whatever. So accusing somebody of theft is accusing somebody of being a criminal. And that's basically what they did. And then they tell the press. And so the press runs, Candace Owens is being sued for defamation for calling Brigitte a man. Read the case. I'm not being sued for calling Brigitte a man.

- I'm not being sued for saying Brigitte's a man. [] She's never sued anyone for saying that she was born a man.

- Is she really is the question. . . . Is really she? Or is really he? If these—To he or not to he, that is the question.

---

[120] Video posted by Theo Von, YouTube, *Candace Owens* | This Past Weekend w/ Theo Von #688 (Oct. 5, 2026), https://www.youtube.com/watch?v=Yg2fzmNTmUo.

[121] Candace Owens (@RealCandaceO), X (Oct. 6, 2026, 9:58 PM), https://x.com/RealCandaceO/status/2107651792473555246.

- The little crazy story, but Brigitte, I'm not taking back anything that I've said. That's for sure.
- Instead, they give you the AI model, which scrapes the mainstream media, which is controlled by the state apparatus. And they give you, this is a debunk. Brigitte, this is a debunk. Yeah, there ain't no wiener here. Everything's debunked. And so you're just getting the Department of War's narrative.

276. By telling a national audience that the Macrons "try to bankrupt you, kind of terrify you" and "try to win these cases on a technicality," Owens accused them of abusing legal process to intimidate.

277. Owens made these statements during an extended exchange, which she directed and returned to, about Mrs. Macron's body and genitalia. Asked what he would be for Halloween, Theo Von answered, "[p]robably Brigitte's wiener, probably," and Owens replied that "Brigitte would be a great costume." Owens told the audience that "Brigitte's old now. You know, Brigitte's like 80 something now." When the host said "[i]f these vaginal walls could talk. . . . They wouldn't say a word because they're not here," Owens did not correct him.

278. Owens closed by telling the audience to dismiss any contrary information as the "narrative" of "the state apparatus."

279. These claims are demonstrably false, and Owens knew it. Mrs. Macron was born a woman named Brigitte Trogneux, and the Macrons have not abused legal process, sought to bankrupt or terrify anyone, or caused any government to manufacture a "debunk."

## *Candace Ep 402*
## *October 14, 2026*

280. On October 14, 2026, Owens released Episode 402 titled "Happy 33rd Birthday, Charlie Kirk! You Were Right—Your Death Spawned A Global Awakening . . . ."[122] Owens announced the episode on X.[123]

281. During Episode 402, Owens made the following specific false and defamatory claim:

> I mean, that's what we were hitting at when I started looking into the Brigitte story. I was like, this person doesn't exist. This person doesn't exist. You can't just not exist for 30 years and then gaslight the public and be like, I have enough power and resources to gaslight you as to why I can't produce a single photo of me across 30 years of my life. Like this is the Brigitte Macron story. No one's asking for blood. Nope, no one needs to see private parts. It's not that extreme. You allegedly had three kids, some photos raising them, pregnant in the hospital, birthday parties, nothing, nothing. It's just a dark hole. And then they look at us and they go, you're crazy. How dare you think this?

282. Owens told her audience, repeatedly, that Mrs. Macron "doesn't exist." She accused Mrs. Macron of "gaslight[ing] the public" and of using her "power and resources" to do so. Owens claimed that Mrs. Macron had produced no photographs of herself across thirty years of her life, of her raising her three children, of her pregnant, or of birthday parties—"nothing, nothing. It's just a dark hole."

283. The Macrons provided Owens with Mrs. Macron's birth announcement, family photographs of Mrs. Macron as a child, and a photograph from her 1974 wedding to André-Louis Auzière.

---

[122] Video posted by Candace Owens (@RealCandaceO), YouTube, *Happy 33rd Birthday, Charlie Kirk! You Were Right—Your Death Spawned A Global Awakening . . .* | Candace Ep 402 (Oct. 14, 2026), https://www.youtube.com/watch?v=6jOEN9rBePU.

[123] Candace Owens (@RealCandaceO), X (Oct. 14, 2026, 6:02 PM), https://x.com/RealCandaceO/status/2110491382888411611.

284. These claims are demonstrably false, and Owens knew it. Mrs. Macron exists; she was born in Amiens, France, on April 13, 1953; and she gave birth to three children.

***Candace Ep 407***
***October 22, 2026***

285. On October 22, 2026, Owens released Episode 407 titled "Candace Owens x Baron Coleman: The Real UVU Review."[124] Owens announced the episode on X.[125]

286. In Episode 407, Owens again read aloud and published to her audience a viewer comment referring to Mrs. Macron as a man and as "Jean-Michel." Owens published the following specific false and defamatory claim:

> PK Bloom writes when Baron Coleman had to cancel an episode due to an emergency. And then we heard Candace tell us that Brigitte got attacked. I thought it was Baron who was yanking and banking to get Candace's to get to Candace's to help save Brigitte. We know that Baron would do what he could ***for his fellow man, long live Jean-Michel***.

287. The comment refers to Mrs. Macron as Baron Coleman's "fellow man" and signs off "long live Jean-Michel." Owens did not correct or disclaim the comment, which she published to an audience she has spent more than two years teaching to refer to Mrs. Macron in exactly these terms.

288. These claims are demonstrably false, and Owens knew it. Mrs. Macron is a woman and is not Jean-Michel Trogneux.

---

[124] Video posted by Candace Owens (@RealCandaceO), YouTube, *Candace Owens x Baron Coleman: The Real UVU Review* | Candace Ep 407 (Oct. 22, 2026), https://www.youtube.com/watch?v=IAVSN4vuCx0.

[125] Candace Owens (@RealCandaceO), X (Oct. 22, 2026, 5:41 PM), https://x.com/RealCandaceO/status/2113385267247599849.

### *X Posts*
### *October 27, 2026*

289. On October 27, 2026, the day she was dismissed without prejudice from the Delaware Action, Owens published two posts on her X account about the Macrons and about the Delaware Action.[126][127]

290. Defendant made the following specific false and defamatory claims:

- BREAKING NEWS: I was just personally dismissed from the Macron lawsuit filed against me in Delaware. This case represents one of the grossest, legal overreaches by a foreign government leader in human history—a sitting President's attempt to personally bankrupt a single podcaster from outside the nation in which he governs. And to formally reiterate since many reporters willfully lied about this most important detail: ***I was NEVER being sued for stating that Brigitte Macron was born a male. I was instead being sued for discussing MK Ultra and for allegedly accusing the 'First Lady' of theft from her sister.***

- I am in the absolute best mood over this Macron dismissal. Feels like a year and a half of my family having to deal with psychotic lies regarding pending bankruptcies, secret accounts and plans to flee the country, has finally come to end. . . . We argued the Macron couple was intentionally forum shopping because being held to France's 3 months would have naturally expired their claims. . . . ***I believe it is worth again noting that the couple is NOT and has never sued anyone for matters pertaining to sex, sexual orientation, or gender (despite intentional media misrepresentations), but rather for defamation related to claims regarding MK Ultra and theft.***

291. Owens placed quotation marks around "First Lady" to signal to her readers that Mrs. Macron is not what she claims to be, and told them that she "was NEVER being sued for stating that Brigitte Macron was born a male."

292. These claims are demonstrably false, and Owens knew it. Mrs. Macron is the First Lady of France and was born a woman named Brigitte Trogneux. The Macrons have never

---

[126] Candace Owens (@RealCandaceO), X (Oct. 27, 2026, 6:13 PM), https://x.com/RealCandaceO/status/2115205265561674117.

[127] Candace Owens (@RealCandaceO), X (Oct. 27, 2026, 9:12 PM), https://x.com/RealCandaceO/status/2115250382859305458.

conceded the truth of Owens' claims about Mrs. Macron's sex—they denied them, in writing, three times before filing suit and again in the Delaware Action.

***Owens published her false and defamatory claims with actual malice—that is, with the knowledge that they were false or with reckless disregard for the truth.***

293. Owens published her false and defamatory statements in the Series, subsequent episodes, and X posts knowing they were false or, at a minimum, with reckless disregard for the truth.

294. Before the Series was released, the December Retraction Demand addressed the central defamatory themes Owens intended to publish and provided documented evidence refuting them. Owens ignored the substance of the letter, instead selectively quoting isolated phrases out of context, falsely suggesting that these excerpts were the entirety of the Macrons' response, and telling her audience that the Macrons had not denied any of her allegations—a deliberate lie.

295. Even apart from the retraction demands, the evidence of actual malice is overwhelming. Owens' central claim—that President and Mrs. Macron fabricated their identities, engaged in incest, participated in MKUltra, and are part of a criminal syndicate engaged in identity theft, forgery, fraud, abuses of power, and even murder—is inherently implausible. She relied on fringe conspiracy theorists and discredited figures as her primary sources while disregarding readily available public records and credible reporting that contradicted her narrative.

296. Owens continued publishing her claims despite knowing they were false because she did not think the Macrons had any legal recourse. Though she dared them to file a lawsuit, Owens later admitted to Tucker Carlson that she "didn't even know how they could sue."[128]

[128] The Tucker Carlson Show: *Candace Owens: Macron, Harvey Weinstein, and Why "Christ Is King" Totally Broke People's Brains* (Tucker Carlson Network, Aug. 1, 2025), https://tuckercarlson.com/tucker-show-candace-owens-2025.

297. Even after the Delaware Action was filed, Owens mentioned the Macrons in every podcast episode she made between July 23, 2025, and September 9, 2025, and in various episodes since then.

298. Owens admitted that she chooses stories based on which topics people claim are false, telling Tucker Carlson that "where they're like getting very angry about something that seems so simple is probably where you should press your thumb the hardest."[129]

299. Although the facts show that President and Mrs. Macron have not lied about their identities or history, Owens continues to promote inherently improbable claims of identity theft, incest, and mind control to build her viewership and wealth. Owens has since claimed that an unfavorable outcome in the Delaware Action would be due to corruption because "you know Hunter [Biden] kind of notoriously said like we control the courts in Delaware."[130]

300. Owens' sources are facially unreliable, yet she would "stake [her] entire professional reputation" on the word of a so-called clairvoyant (Roy) and amateur detective (Rey). She republished their accusations even though a French court had found Rey and Roy liable for defamation for those very claims. She also relied on Xavier Poussard, formerly of *Faits et Documents*, a newsletter known for its antisemitism and conspiracy theories.

301. Rey and Roy also display ill will toward the Macrons. Rey sought to use these claims to influence French policy, telling Roy that her evidence of the First Lady's transition was in "a sealed envelope deposited with a lawyer whose name is well known" and would be made public "the day vaccines are made obligatory."

---

[129] The Tucker Carlson Show: *Candace Owens: Macron, Harvey Weinstein, and Why "Christ Is King" Totally Broke People's Brains* (Tucker Carlson Network, Aug. 1, 2025), https://tuckercarlson.com/tucker-show-candace-owens-2025.

[130] *Id.*

302. Roy is biased against President Macron because, she claims, just after President Macron's 2017 election, she called the Élysée Palace to report a premonition that terror groups would attack a French nuclear power station and was disbelieved and mistreated. Roy has spread other unfounded rumors about the Macrons' private lives on her YouTube channel, often falsely claiming that President Macron is gay.

303. Owens displayed political bias against President and Mrs. Macron in her July 1, 2024 episode of _*Candace*_, stating she does not "know how long Brigitte Macron is going to be leading the country behind her husband" because "Marine Le Pen's far-right group" was expected to win, which Owens found "extremely promising." This bias is further evidence of actual malice.

304. Owens has repeatedly demonstrated her ill will and disdain toward the Macrons based on Mrs. Macron's perceived sex and gender identity, President Macron's perceived sexual orientation, the Macrons' perceived religious beliefs, and their perceived connections to Jewish people and institutions. That animus permeates her false claims.

305. Owens' use of the "Brigitte doll" she keeps on her set illustrates that ill will. The doll is a grotesque, alien-like figure, reminiscent of E.T., that caricatures Mrs. Macron's body, and Owens displays it on camera as a recurring prop to ridicule her appearance. On January 5, 2026, Owens held the doll up on air and told her audience that "it's just very sweet that France is selling Brigitte dolls."



306. On October 19, 2026, Owens told her audience that someone had broken into her podcast studio and thrown bleach on the doll, and said, "Just suffice it to say, it was in fact an LGBTQ hate crime. Because, you know, Jean-Michel Trogneux is gay."[131] Owens' mockery of Mrs. Macron through the doll, and her description of an attack on it as an "LGBTQ hate crime," confirm that her campaign against Mrs. Macron is driven by animus toward Mrs. Macron's perceived gender identity, gender, and sexuality.

307. Owens' broadcasts and posts are replete with further examples of that animus, including:

- On June 30, 2025, Owens described a Jewish sect whose followers, she said, practiced incest "as a sacrament" and believed in "this sort of mixture of the male and the female"; blamed that sect for the idea that "transgenderism is totally a thing"; and then declared, "And now we have in Paris, Brigitte Macron."[132]

- On July 10, 2025, in an episode titled "Brigitte Macron Loses In Court! (It's A Dude.)," Owens boasted that she was the first to say that President Macron "is definitely married to a dude" and mocked Mrs. Macron as a "quote-unquote woman who happens to look a lot like a dude in a dress" who is "giving Mrs. Doubtfire."[133]

- On August 12, 2025, Owens posted on X: "I genuinely believe that we are losing Western Civilization because heterosexual men are routinely driven to follow and elect homosexual men. The patriarchy got replaced by the gaytriarchy. From Macron, to Trudeau, to Zelensky, to Obama, we are positively infested with theatre boys leading countries and movements."[134]

- On August 14, 2025, in an episode titled "Emmanuel Macron Had A 'Sugar Daddy,'" Owens speculated about President Macron's sexuality: "it's Paris. . . . He's bisexual.

[131] Video posted by Candace Owens (@RealCandaceO), YouTube, *UPDATES! NEW Info On Charlie's Statue Vandals, Katie Zacharia Is Out, Plus, Erika's Pre-K Tour* (Oct. 19, 2026), https://www.youtube.com/watch?v=VUSs6CTp78Q.

[132] Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING NEWS! I've Been Keeping A Secret.* | Candace Ep 208 (June 30, 2025), https://www.youtube.com/watch?v=1103XwJ2N9c.

[133] Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING NEWS - Brigitte Macron Loses In Court! (It's A Dude.)* | Candace Ep 214 (July 10, 2025), https://www.youtube.com/watch?v=ErqF6-acIP8.

[134] Candace Owens (@RealCandaceO), X (Aug. 12, 2025, at 00:07 ET), https://x.com/RealCandaceO/status/1955118981938925817.

They would have loved that."[135]

- On October 28, 2025, Owens told her audience that President Macron is, "just like the state of Israel, a Rothschild's creation," and that "Kabbalah very much is the reason for this push in culture for transgenderism."[136]

- On December 1, 2025, Owens repeatedly called Mrs. Macron "the first man of France" and "the French first man," and mocked her by saying, "You really believe that you are a woman."[137]

- On May 13, 2026, Owens told her audience that "everybody kind of knows Emmanuel Macron's gay" and pointed to Mrs. Macron's "massive hands" as "the one thing the doctor can't work on" after "feminization surgery."[138]

308. Owens' false claims are driven by this disdain. She said that "these people are satanic"[139] and described the Macrons as her "enemies."[140] She counted the Macrons among the "perverts that run the world" and called them "sick" and "disgusting," saying she is "fully prepared to take on this battle on behalf of the entire world . . . [she] will see [the Macrons] in court."[141] She said she was on a mission to expose the Macrons as "sickos" and that she wanted to "get to the part where [she] get[s] to depose [the Macrons] and [] to request documents . . . and [] to

---

135 Video posted by Candace Owens (@RealCandaceO), YouTube, *Emmanuel Macron Had A "Sugar Daddy". Kanye Drops A Documentary.* | Candace Ep 228 (Aug. 14, 2025), at 25:15–40:29, https://www.youtube.com/watch?v=T_d-gTvtyh8.

136 Video posted by Candace Owens (@RealCandaceO), YouTube, *Charlie Ripped A Hole In Reality* | Candace Ep 253 (Oct. 28, 2025), https://www.youtube.com/watch?v=Cq7nj9rxPdo.

137 Video posted by Candace Owens (@RealCandaceO), YouTube, *Charlie Kirk And Brigitte's Legionnaires* | Candace Ep 271 (Dec. 1, 2025), https://www.youtube.com/watch?v=tB5SXXmd9vU.

138 Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING! The White House Attempted To Rescind This E-mail.* | Candace Ep 338 (May 13, 2026), https://www.youtube.com/watch?v=7FS1tUeSfdE.

139 *Id.*

140 Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING! Brigitte Sues Me For Defamation* | Candace Ep 218 (July 23, 2025), https://www.youtube.com/watch?v=PKKLk57tcLs.

141 *Id.*

request conversations between [the Macrons] and Mimi Marchand."[142] She dared the Macrons, "what are you gonna do? . . . Sue me some more, sue me harder . . . I'm looking forward to this."[143]

309. Owens' retaliatory intent further evidences actual malice. As she admitted to multiple podcasters, she initially intended to release only one episode, but upon receiving the December Retraction Demand—which refuted her false claims—she expanded the Series in retaliation ("Now we're doing a whole series because how dare you"), and she threatened to retaliate with a second season if the Macrons contacted her again.

310. Owens has continued to state, "We're not gonna shut up. You're not going to bully us. Frankly, I find this all to be irresistible and delicious. . . . The discovery alone is going to be out of this world."[144] She said she is "just the kind of person that digs [her] heels" and is "totally committed now to doing so much more on both Emmanuel and Brigitte."[145] On September 8, 2025, Owens launched Season 2 of the Series.

311. Owens intentionally disregarded reliable sources that debunked her claims. She admitted that she learned about the allegation from the 2021 Daily Mail debunking article, which provided substantial evidence of its falsity, and she received three retraction demand letters from the Macrons stating that her claims were false and providing supporting evidence.

---

[142] *Id.*

[143] Video posted by Candace Owens (@RealCandaceO), YouTube, *EXCLUSIVE! Brigitte Macron's Lawyer Has A Dark Past. Dan Bongino Speaks Out.* | Candace Ep 220 (July 28, 2025), https://www.youtube.com/live/JjtEQESDlCs.

[144] Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING! Brigitte Sues Me For Defamation* | Candace Ep 218 (July 23, 2025), https://www.youtube.com/watch?v=PKKLk57tcLs.

[145] Video posted by Candace Owens (@RealCandaceO), YouTube, *WOAH! Trump Named In Epstein Files. 'Becoming Brigitte' Goes International* | Candace Ep 219 (July 24, 2025), https://www.youtube.com/watch?v=KOw97YmXicE.

312. Owens had a preconceived storyline before she began her reporting. In March 2024, long before her "research" for the Series, she told the world she was staking her entire reputation on Mrs. Macron being a man. She made these false accusations because they supported that storyline, as is evident in her refusal to provide her audience with contrary evidence and her knowingly false denial that such evidence exists.

313. Owens was also financially motivated to create a scandal. The Series was aggressively monetized and used to solicit donations, promote subscriptions, and elevate her personal brand.

314. After being fired from The Daily Wire, Owens needed sensational content to spur her followers to contribute financially, and her show now appears to rely heavily on funding from audiences and advertisers supportive of her false claims about the Macrons. As evidenced by the merchandise she sells on CandaceOwens.com, she has monetized the "conspiracy theorist" label and profited from her lies about the Macrons:




315. In her September 18, 2024 appearance on *Piers Morgan Uncensored*, Owens admitted that she relies on fan donations to keep her podcast running since YouTube demonetized

her. In a September 11, 2024 X post, she had claimed that YouTube demonetized her for exposing the global ring of Satanic pedophiles—currently through the Macron conspiracy theory—but YouTube demonetized her for violating its hate speech policies.

316. Although YouTube has since remonetized her channel, Owens has stated that her goal is financial independence from the platform, and she rebuilt her website to host content she knows YouTube would remove or demonetize—one episode of the Series is dubbed "Too Hot for Youtube!" on Owens' website.

317. In every episode of the Series and in subsequent episodes, Owens solicits donations from her audience, pairing these requests with claims that she is on a mission to reveal the truth and that criticism and fact-checking are attempts to suppress free speech and attacks on her religious beliefs. Her financial motive further proves actual malice.

318. After the Macrons filed the Delaware Action, Owens immediately restocked her "Man of the Year" shirt featuring Mrs. Macron and noted she hoped the Macrons would "add an addendum that says, they sold out again!"[146] The next day, she posted a link to the shirts on X.[147] Owens called a Time Magazine article mentioning the shirts "simply iconic" and encouraged her viewers to buy one from her website.[148]

---

[146] Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING! Brigitte Sues Me For Defamation* | Candace Ep 218 (July 23, 2025), https://www.youtube.com/watch?v=PKKLk57tcLs.

[147] Candace Owens (@RealCandaceO), X (July 24, 2025, at 11:28 ET), https://x.com/RealCandaceO/status/1948405050520354849.

[148] Video posted by Candace Owens (@RealCandaceO), YouTube, *WOAH! Trump Named In Epstein Files. 'Becoming Brigitte' Goes International* | Candace Ep 219 (July 24, 2025), https://www.youtube.com/watch?v=KOw97YmXicE.




319. Owens also asks viewers to subscribe and donate to cover her legal fees, telling them "These lawyer fees just don't go away"[149] and noting "definitely an uptick in donations. People that are like, take our money."[150] Despite claiming that the Macrons will "fake kill Brigitte" before discovery, she told her fans that "obviously supporting us, signing up on the website, all of those things, it's how you can support us."[151]

320. Most recently, Owens told her audience that she "got an estimate this weekend from a legal team. It is going to cost [her] millions."[152] She said she would sell "#freeEmmanuel" shirts and hats to pay for her defense in the Delaware Action.

321. On August 6, 2026, during Episode 373, Owens appeared on camera wearing her merchandise and said, "I'm wearing my, um, 'Emmanuel Macron, why are you gay' shirts? We never get an answer to that question. You already know how I feel about Brigitte right now in this

---

[149] *Id.*

[150] *Id.*

[151] Video posted by Candace Owens (@RealCandaceO), YouTube, *EXCLUSIVE! Brigitte Macron's Lawyer Has A Dark Past. Dan Bongino Speaks Out.* | Candace Ep 220 (July 28, 2025), https://www.youtube.com/live/JjtEQESDlCs.

[152] Video posted by Candace Owens (@RealCandaceO), YouTube, *BREAKING NEWS! The Macrons Hired A Detective To Investigate Me.* | Candace Ep 227 (Aug. 11, 2025), https://www.youtube.com/live/YYPPybwkXPg.

moment. Sniffer, pooch, pooch, sniffer. I should have known, Brigitte, I should have known it was you."[153]




322. Taken together, Owens' misrepresentation and manufacturing of evidence, the inherent improbability of her accusations, her unreliable sources, her bias and ill will, her disregard of reliable sources, her preconceived storyline, her financial motive, and her refusal to retract are clear and convincing evidence of actual malice.

***Others amplified and republished Owens' false and defamatory statements, increasing their global audience and the reputational and emotional harm to the Macrons.***

323. Other influential podcasters picked up Owens' false claims after the Series concluded, including Joe Rogan, whose podcast, *Joe Rogan Experience*, was ranked the number one podcast in the United States as of Q4 2024, according to Edison Research. Rogan and his podcast have more than 55 million combined subscribers and followers on YouTube, Instagram, and X.

[153] Video posted by Candace Owens (@RealCandaceO), YouTube, *A Shocking Truth Revealed In The "4K" Footage. Beavis and Butt-Head Send A Messenger…* | Ep 373 (Aug. 6, 2026), https://www.youtube.com/watch?v=d7VsbEIWkP8.

324. On March 22, 2025, Rogan discussed the Series.[154] Rogan said, "Brigitte Macron's a man. [Owens] got me hook, line, and sinker." The March 22 episode has more than 760,000 views.

325. On April 3, 2025, Rogan said Owens' YouTube show is "doing better numbers than any of the shows on cable news."[155] Of the Series, he said, "She's got a six-hour presentation on how Brigitte Macron is a man . . . I think she's right." He added, "[Owens] would be getting sued right now instead of trying to bribe her." The Macrons have never offered Owens any type of bribe or money settlement to stop speaking about them.

326. Owens endorsed Rogan's statements by playing the clip on the April 7 episode of *Candace*.[156] She did not refute the false bribery claim, instead saying, "He is not lying. . . . I actually said to my team, 'We are going to have to do a *Becoming Brigitte* season two.'"

327. On February 19, 2025, comedians Tom Segura and Christina Pazsitzky discussed Owens on their podcast *Your Mom's House*.[157] The podcast and its hosts have nearly 4.4 million combined subscribers and followers on YouTube and X, and the February 19 episode has over 560,000 views, and the March 5 episode over 460,000, on YouTube alone.

328. Pazsitzky stated the Series is "huge" and Owens has "a ton of evidence." She repeated the false claim that Mrs. Macron is actually Jean-Michel and summed up Owens' theory

---

[154] Video posted by Joe Rogan Experience (@joerogan), YouTube, *JRE Fight Companion* (Mar. 22, 2025), https://www.youtube.com/watch?v=Xr-DqSmJEXI.
[155] Video posted by Joe Rogan Experience (@joerogan), YouTube, *Dave Smith* #2299 (Apr. 3, 2025), https://www.youtube.com/watch?v=EmNE6yNxruc&t=1037s.
[156] Candace Owens, *Russell Brand Charged* | *Ryan Reynolds Caught* | Ep 172, Candace, Apr. 7, 2025, https://www.youtube.com/watch?v=VakslzWRcvk.
[157] Video posted by YMH Studios (@YMHStudios), YouTube, *Tom's DMT Voyage* Ep. 798, Your Mom's House (Feb. 19, 2025), https://www.youtube.com/watch?v=IWkYo1VBUuw.

as involving "a 14-year-old boy," "a [pedophile] culture," "links to the Rothschild family," "incest," and "Satanic cults."

329. In a March 5, 2025 episode, Segura and Pazsitzky again discussed Owens.[158] Segura said Owens "is the leader in this story," and Pazsitzky agreed, "She has exposed Brigitte Macron." Pazsitzky repeated the false claim that the Macrons are "not even trying to call [Owens] out on [the false claims]."

330. On March 5, 2025, Owens appeared on *This Past Weekend with Theo Von* to discuss the Series.[159] Von has more than 15 million combined subscribers and followers on YouTube, X, and Instagram; his podcast was ranked number five in the United States as of Q4 2024, according to Edison Research; and his episode with Owens has 4.3 million views on YouTube alone.

331. Owens told Von that "1000%, [Mrs. Macron] was born a man, lived as a man for 30 years, and then transitioned at some time in the 80s." Asked whether she was concerned about being sued, she replied, "I have welcomed the lawsuit . . . I only presented the facts." She also falsely stated that President Macron was 14 and Mrs. Macron was 40 when the couple met, and "they don't deny that"—something Owens has repeatedly recognized the Macrons do refute.

332. On March 14, 2025, Tucker Carlson hosted Clayton Morris on *The Tucker Carlson Show*.[160] Carlson has approximately 30 million combined subscribers and followers on YouTube, X, and Instagram, and his episode with Morris has 1 million views on YouTube alone.

---

[158] Video posted by YMH Studios (@YMHStudios), YouTube, *The High and Tight 800th Episode* Ep. 800, Your Mom's House (Mar. 5, 2025), https://www.youtube.com/watch?v=43K9WrmPF7U.

[159] Video posted by Theo Von, YouTube, *Candace Owens* Ep. 566, This Past Weekend with Theo Von (Mar. 5, 2025), https://www.youtube.com/watch?v=wlHJTDBmZAs.

[160] Video posted by Tucker Carlson (@TuckerCarlson), YouTube, *Clayton Morris: Truth About the USS Liberty, Europe's Self-Destruction, & Is Brigitte Macron a Man?* (Mar. 14, 2025), https://www.youtube.com/watch?v=N2tzUhrW8e0&t=22s.

333. Morris gave Owens "full credit . . . for really opening this story up." Summarizing Owens' reporting, he said that Mrs. Macron "uses the identity of another human being" and that "Brigitte Macron is a man who groomed Emmanuel Macron." Discussing child sex trafficking, Carlson agreed "these elite circles, it's incredibly disgusting."

334. Owens covered Carlson's episode.[161] She played a clip of Carlson and Morris and endorsed their statements: "That's a fact." She noted that the Series was going "viral worldwide" and that "The entire world who has watched this series [is] embracing it."

335. In that episode, Owens said, "I was only going to do one episode on Brigitte. . . . And then my pregnant butt waddled outside, and there was a hundred-page legal letter being served to me. And I was like, game on, let's go to war." She added, "I don't just say stuff. And that's why I staked my entire professional career on the *Becoming Brigitte* series."

336. On April 3, 2025, Owens discussed President Macron with Ian Carroll, host of the *Ian Carroll Show*, on *Candace*.[162] Carroll has nearly 4 million combined subscribers and followers on YouTube, X, Instagram, and TikTok, and the April 3 episode has more than 1.4 million views. Owens stated, "Emmanuel Macron was an actor. He had no power. Anybody who has watched my Brigitte Macron series walks away and understands that he has never been in control."

337. On April 7, 2025, Owens appeared on *Keeping It Real with Jillian Michaels,* saying she "only stuck to the facts" on the Series.[163] Michaels has more than 4.5 million combined

---

[161] Video posted by Candace Owens (@RealCandaceO), YouTube, *Straight Husbands vs Ryan Reynolds | Tucker Carlson vs Brigitte Macron* | Ep 161 (Mar. 17, 2025), https://www.youtube.com/watch?v=zZNTC9qrh2U.

[162] Candace Owens, *Candace Owens x Ian Carroll* | Ep 171, Candace, Apr. 3, 2025, https://www.youtube.com/watch?v=O0DrdlUck1E.

[163] Video posted by Keeping it Real with Jillian Michaels (@JillianMichaels), YouTube, *Candace Owens: Raw & Relentless!!* (Apr. 7, 2025), https://www.youtube.com/watch?v=83KhSS19LnU.

followers and subscribers on Instagram, X, and YouTube, and her April 7 episode with Owens has over 417,000 views.

338. Owens boasted to Michaels that Joe Rogan was "fully convinced" of her claims after two episodes. She falsely said President Macron was 14 and Mrs. Macron was 45. She said, "[Mrs. Macron's] just a dude. She transitioned when she was in her early thirties . . . everything they told you about this, this woman was just fictitious, and it was made up because she's connected to a tremendous amount of power in France." She repeated that Mrs. Macron took on "somebody else's identity." She then said Mrs. Macron was 40, contradicting herself, and that "it's statutory rape . . . until the end of this year. Brigitte Macron could be tried for this. . . . 'Cause it's true."

339. Of the December Retraction Demand, Owens told Michaels: "I was only going to do one episode, and I said, 'Now we're doing a whole series because how dare you.'" She called the Series "the most viral thing we've ever done."

340. Owens suggested that the Macrons might physically harm her for her claims. When Michaels suggested "a really good security service," Owens replied, "I think it's an act of vanity, security. I mean, like, they shot JFK in a moving vehicle . . . if they want you, they're gonna get you . . . ."

341. On April 7, 2025, Owens also appeared on the *Howie Mandel Does Stuff* podcast and spoke about Mrs. Macron.[164] Mandel co-hosts the podcast with his daughter, Jackelyn Shultz; the podcast and its hosts have more than 2.4 million combined subscribers and followers on YouTube, Instagram, and X; and the April 7 episode with Owens has more than 460,000 views.

---

[164] Video posted by Howie Mandel Does Stuff (@HowieMandelDoesStuff), YouTube, *Candace Owens Reveals Truths on Russell Brand, Harvey Weinstein & Taylor Swift* (Apr. 7, 2025), https://www.youtube.com/watch?v=pU1ismsKwGw&t=4404s.

342. Owens responded "100%" when asked if Mrs. Macron had a penis. She repeated that Mrs. Macron lived as Jean-Michel before she transitioned and that there are only two photos from her past.

343. Mandel asked, "Did you get offered money, really?" Owens responded, "I got threatened first," and falsely claimed that she "hadn't done anything" and "it hadn't even come out" before the Macrons sent the December Retraction Demand. Pressed, she admitted she was not offered money.

344. Owens explained her central thesis: "At the heart of the Macron thing . . . there's an entire pedophile nebula that's around him. . . . People who have worked for him that just keep getting arrested for child pedophilia."

345. On April 26, 2025, Owens appeared on *The Tim Dillon Show*.[165] Dillon has more than 3.4 million combined subscribers and followers on YouTube, X, and Instagram, and his April 26 episode with Owens has more than 2.4 million views.

346. Dillon told Owens that the Series has "blown up." Owens replied, "Oh, everywhere. I mean, it is the most international thing I've ever done." Owens again displayed her ill will toward the Macrons:

> The funny thing is, if Emmanuel Macron had not sent me that letter threat, we were only going to do one episode. Oh, my God. It's like I was so angry. He had the audacity to send a server processor to Nashville, Tennessee. . . . [S]omeone is going to knock on my front door and say, 'The President of France says you're not allowed to speak, or else.' . . . I already knew he married a dude, you know, but now we're really doing this thing.

347. Owens again falsely claimed that the Macrons had not refuted her claims: "You refuse to say the truth. And it was just this pompous 100 page, 'We don't have to answer whether

[165] Video posted by The Tim Dillon Show (@TimDillonShow), YouTube, *Candace Owens Emergency Podcast* | #441 (Apr. 26, 2025), https://www.youtube.com/watch?v=dBZBVNVo754.

or not like Brigitte is a woman or a man.'" As Owens knew, the December Retraction Demand denied and disproved that Mrs. Macron was a man.

348. Owens pretended to have additional evidence: "there's stuff that I can't say on record just yet."

349. Owens again lied about the Macrons' age difference, saying, "he's 14; [Mrs. Macron is] 40." Soon after, she said it's actually "48 and 14." Owens repeated that Mrs. Macron engaged in identity theft.

350. Owens further demonstrated her ill will, stating,

> Their lawyers are still calling my lawyers. They still asked for us to take down the series because they were afraid when Joe Rogan mentioned it recently. . . . Stop with these phone calls. As I said to my lawyer, if they call again, we're doing a season two. Because I left a lot on the table.

351. Owens described MKUltra and similar programs as "mind control programs" that turned people "into, um, essentially slaves that could be programmed to do things," including, "in a Manchurian candidate fashion, run the government, run a country." She said, "that is who Emmanuel Macron is." She added that "he was like [a] protected Rothschild and they needed to kind of create this fake resume for him to make people think he was a genius."

352. Owens repeated her theory that Mrs. Macron is not only a man who molested President Macron but also his blood relative: "My sense is [Mrs. Macron is] the missing uncle whose name is Jean-Michel . . . who was the godfather when Emmanuel Macron got his first communion at school, who's just missing."

353. When Dillon summarized her theory—that President Macron was "selected at a very young age to basically be some type of Manchurian candidate" and that "Jean-Michel Trogneux becomes Brigitte, who then becomes a teacher"—Owens responded, "Yeah. To further groom. He was groomed by Brigitte, there's no question."

***Owens' false statements and their reasonably foreseeable republication have harmed the Macrons' reputations.***

354. Owens' false and defamatory accusations and implications have caused—and continue to cause—substantial and irreparable damage to the Macrons.

355. Owens' defamatory accusations and implications were widely circulated. Indeed, on February 17, 2025, Owens posted the level of engagement she had on YouTube—calling it a "record for us"—largely due to the Series.[166]




356. In her March 17 episode, Owens boasted of the Series' reach: "now look at the series [*Becoming Brigitte*] everywhere. And the implications are, they're far-reaching. . . . This is not ***just viral in France, viral in America, viral in the UK, the story, it's even viral in Russia. People are now considering it as a part of their political dialogue and analyses***, judging Emmanuel Macron's current actions . . . Because the world is finding out about the person who groomed him."

166 Candace Owens (@RealCandaceO), X (Feb. 17, 2025, at 12:30 ET), https://x.com/RealCandaceO/status/1891540778695950406.

357. Owens stated that "the Series was already viral in the West when we did this. Now it's viral in the East hemisphere as well."[167] Owens further claimed that the Series was being reported on in Asia and the Middle East.[168]

358. Since the filing of the Delaware Action, Owens has continued to promote the Series to her global audience. On September 22, 2025, Owens boasted about the "incredible year" she's had with her viewers, encouraging them to "[g]o watch the *Becoming Brigitte* series. I think a lot of people have been hooked on that. It's a really good one and she's a dude."[169] This continued promotion has compounded the reputational harm to the Macrons.

359. Other media outlets and podcasters have recirculated the Series and its defamatory accusations to a massive global audience. These numerous republications demonstrate the reputational harm to the Macrons, showing that people who heard and read Owens' statements believe them.

360. Owens' audience has absorbed her lies. On November 21, 2025, Owens released Episode 270 of *Candace*, titled "Operation: 'See you in Valhalla, Charlie.'"[170] In that episode, Owens read aloud and endorsed the "[t]op comments from yesterday" submitted by her audience, beginning with a comment that referred to Mrs. Macron using male pronouns, "Brigitte thought Candace forgot all about him." Owens did not correct the comment but adopted it, responding that

---

[167] Video posted by Candace Owens (@RealCandaceO), YouTube, *WOAH! Trump Named In Epstein Files. 'Becoming Brigitte' Goes International* | Candace Ep 219 (July 24, 2025), https://www.youtube.com/watch?v=KOw97YmXicE.

[168] *Id.*; Video posted by Candace Owens (@RealCandaceO), YouTube, *EXCLUSIVE! Brigitte Macron's Lawyer Has A Dark Past. Dan Bongino Speaks Out.* | Candace Ep 220 (July 28, 2025), https://www.youtube.com/live/JjtEQESDlCs.

[169] Video posted by Candace Owens (@RealCandaceO), YouTube, *Erika Kirk Forgives. The Feds Forget…* | Candace Ep 240 (Sept. 22, 2025), https://www.youtube.com/watch?v=ja26iltROkM.

[170] Video posted by Candace Owens (@RealCandaceO), YouTube, *Operation: "See you in Valhalla, Charlie"* | Candace Ep 270 (Nov. 21, 2025), https://www.youtube.com/watch?v=mKXdKV-OBog.

"somebody that is this sinister, in terms of harassing people, suing people, going after people, who even discuss the truth of their history . . . that's a committed psychopath . . . and yeah, Brigitte's a gangster, like he's a gangster, there's no question about it." By November 2025, Owens' audience referred to the First Lady of France as "him" as a matter of course—the reputational harm her statements have caused.

361. Owens' defamatory accusations caused numerous people who heard or read them—whether or not they had previously held the Macrons in high regard or had any opinion of them—to view them with contempt, to hold them in low regard, and to avoid, and encourage others to avoid, associating or doing business with them.

362. The Macrons have publicly discussed the emotional harm they have suffered as a result of the conspiracy theories. At an International Women's Day event in Paris in February 2024, President Macron told reporters that "[t]he worst thing is the false information and fabricated scenarios. People eventually believe them and disturb you, even in your intimacy." By amplifying these conspiracies globally and purveying even more intimate and heinous theories of her own, Owens has greatly exacerbated that harm.

363. In an interview on August 19, 2025, President Macron described the effect of Owens' false claims, stating that they have "become so widespread in the United States that we had to react. This is about upholding the truth. We're talking about the marital status of the First Lady of France, a wife, a mother, a grandmother." President Macron's statements underscore that the Macrons' damages flow directly from Owens' statements.

364. On October 28, 2025, Mrs. Macron's daughter, Tiphaine Auzière, testified before a Paris court that the false claims about her mother's gender had caused a "deterioration" in Mrs. Macron's health and living conditions. Ms. Auzière told the court that Mrs. Macron "cannot

ignore the horrible things said about her," that she must now be careful about her clothing and posture because she knows any image of her can be distorted, and that her grandchildren hear people say that their grandmother is a man. According to press reports, several of the defendants in that proceeding had shared Owens' posts.[171]

365. As a result of the false and defamatory accusations and implications published by Owens, the Macrons' reputations have been impugned.

366. The Macrons' reputations have substantial value. President Macron is the head of state of the French Republic, and Mrs. Macron is the First Lady of France. Each has built a reputation for integrity over decades of public life. Owens has broadcast to tens of millions of people worldwide the false claim that the Macrons have lied for decades about who Mrs. Macron is. That has caused grave damage to the reputation of each of them as a world leader.

367. As a result of the false and defamatory accusations and implications published by Owens, the Macrons' relationships with other members of the government, potential political allies, and others have been undermined.

368. As a result of the false and defamatory accusations and implications published by Owens, confidence in the Macrons' integrity and fitness as political and governmental leaders has been undermined.

369. Repairing that damage will be costly. Owens has spread her false claims across her podcast, *Becoming Brigitte*, her X account, appearances on other podcasts, and the republications

[171] *Brigitte Macron's daughter testifies about alleged cyberbullying of France's first lady*, Associated Press (Oct. 28, 2025), https://kdhnews.com/news/world/brigitte-macrons-daughter-testifies-about-alleged-cyberbullying-of-frances-first-lady/article_201c5150-d6dc-50c2-ae12-24e86b53b313.html; *Cyberbullying has affected Brigitte Macron's health, says daughter*, The Local (Agence France-Presse) (Oct. 28, 2025), https://www.thelocal.fr/20251028/cyberbullying-has-affected-brigitte-macrons-health-says-daughter.

described above, and she continues to repeat them. Correcting the public record after a sustained, worldwide campaign of that scale will require significant and continuing expense.

370. Owens' false statements have also damaged the Macrons' future earning capacity. President Macron's term ends in May 2027, and he cannot run for a third consecutive term. Former heads of state and their spouses routinely receive opportunities for books, speaking engagements, and advisory, board, and charitable roles. Each of those opportunities depends on a reputation for honesty and integrity. Owens has falsely accused the Macrons of forging civil records and identity documents, committing identity theft, and carrying out a decades-long fraud on the public. Those are the very accusations most likely to close off those opportunities.

371. Separate and apart from the costs of this lawsuit, the Macrons have incurred expenses to counter Owens' false and defamatory statements and correct the public record. These include the costs of preparing and sending the December 2024, February 2025, and July 2025 Retraction Demands and the evidence that accompanied them.

372. Owens' false statements have caused each of the Macrons humiliation, mental anguish, emotional distress, and anxiety. That includes the deterioration in Mrs. Macron's health and living conditions to which her daughter testified.

373. Owens has profited from her false statements. She has sold merchandise built on them, including the "Man of the Year" shirt featuring Mrs. Macron, which sold out and which she restocked after the Delaware Action was filed, and shirts reading "Why are you gay, Emmanuel Macron?" She has also used her claims about the Macrons to solicit donations, subscriptions, and advertising. On information and belief, Owens' revenue from merchandise promoting her false claims about the Macrons reaches well into six, if not seven, figures.

374. In view of the foregoing, the Macrons are entitled to actual, presumed, and punitive damages in an amount to be specifically determined at trial.

**COUNT ONE – DEFAMATION**
**INTRODUCTION EPISODE (JANUARY 31, 2025)**

375. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

376. Defendant published the following false and defamatory statements of fact on January 31, 2025, during the Introduction episode of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) . . . Brigitte Macron's alleged brother who [] I believe Brigitte Macron is . . .

(b) And guys, by the way, you should know that there is this strange case of what happens to every journalist who tries to touch the story. First and foremost, uh, Isabella Ferreira. I think I mentioned this on a past episode. . . . People who began prodding into the story as an independent journalist happened upon some huge information pertaining to the relationship of Emmanuel Macron and Brigitte. Uh, but then she was found dead. She was found dead floating in a river and her friends said that she didn't kill herself, but the media said she most definitely did that.

(c) . . . there have been people who have been so concerned about like our safety and stuff. We did up on security for this time being after getting the letter from Macron and because of the things that we know about their network and, uh, things that are happening, like I said, to every journalist that has tried to get this out, we, um, are taking that seriously, but also know that at the end of the day, it's not in the security's hands. It is in God's hands. And so we just ask everybody, whether you believe or not, to just pray.

377. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

378. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

379. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron has engaged in identity theft, has lied about her identity, and has perpetrated or directed physical violence against any individual for investigating or reporting on her, including Owens and Isabella Ferreira.

380. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her identity; and she has never perpetrated or directed physical violence against any individual for investigating or reporting on her and President Macron, including Owens or Isabella Ferreira.

381. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied about Mrs. Macron's identity, and have perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens and Isabella Ferreira.

382. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity, and have not perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens or Isabella Ferreira.

383. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them,

including by accusing President and Mrs. Macron of identity theft, lying to the public about Mrs. Macron's identity, perpetrating abuses of power, and engaging in physical violence toward individuals investigating them.

384. The Statements are defamatory *per se*, and people who heard them understood them to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

385. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

386. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and engaged in physical violence toward individuals investigating them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

387. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

388. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

389. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

390. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Thus, punitive damages are appropriate.

391. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT TWO – FALSE LIGHT**
**INTRODUCTION EPISODE (JANUARY 31, 2025)**

392. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

393. Defendant published the statements quoted in Count One ¶ 376 on January 31, 2025, during the Introduction episode of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

394. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

395. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron has engaged in identity theft, lied about her identity, and has perpetrated or directed physical violence against any individual for investigating or reporting on her, including Owens and Isabella Ferreira.

396. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her identity; and she has never perpetrated or directed physical violence against any individual for investigating or reporting on her, including Owens or Isabella Ferreira.

397. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied about Mrs. Macron's identity, and have perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens and Isabella Ferreira.


Case 3:26-cv-01765 Document 1 Filed 11/04/26 Page 107 of 409 PageID #: 107

398. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity, and have not perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens or Isabella Ferreira.

399. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

400. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying to the public about Mrs. Macron's identity, perpetrating abuses of power, and engaging in physical violence against individuals investigating them.

401. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

402. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and engaged in physical violence against individuals investigating them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

403. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

404. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

405. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

406. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

407. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT THREE – DEFAMATION BY IMPLICATION INTRODUCTION EPISODE (JANUARY 31, 2025)

408. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

409. Defendant published statements (b) and (c) quoted in Count One ¶ 376 on January 31, 2025, during the Introduction episode of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

410. Defendant juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that President and Mrs. Macron have lied about Mrs. Macron's identity, and have perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens and Isabella Ferreira (the "Implications").

411. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

412. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron has engaged in identity theft, lied about her identity, and has perpetrated or directed physical violence against any individual for investigating or reporting on her, including Owens and Isabella Ferreira.

413. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her identity; and she has never perpetrated or directed physical violence against any individual for investigating or reporting on her, including Owens or Isabella Ferreira.

414. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact that President and Mrs. Macron lied about Mrs. Macron's identity, and perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens and Isabella Ferreira.

415. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity, and have not perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens or Isabella Ferreira.

416. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them,

including by accusing President and Mrs. Macron of identity theft, lying to the public about Mrs. Macron's identity, perpetrating abuses of power, and engaging in physical violence against individuals investigating them. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

417. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

418. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

419. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and engaged in physical violence against individuals investigating them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Implications and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

420. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

421. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

422. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

423. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity

and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

424. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FOUR – DEFAMATION
## EPISODE 1 (FEBRUARY 4, 2025)

425. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

426. Defendant published the following false and defamatory statements of fact on February 4, 2025, during Episode 1 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) I literally told you that every journalist that tries to touch this story, something happens to. Okay. And it is a fact that Isabella Ferreira was working on the story, had messaged according to her friends saying that she had a bombshell about Emmanuel Macron and appreciate the French press has reported on this. And then she was found dead floating in a river, okay. Or a pond, whatever it was. And they, the public, said that she had drowned and her friends said that she was not suicidal. And the public, the press said that she had maybe taken some pills. I don't remember.

(b) Like I said, every journalist that tries to get this out. Yes, that is not a lie. That is the truth. We have upped our security because, and we were responding to the chat, people saying, get yourself some good security. And of course, when you have people walking around your property and you have young children and you understand the extent of the stakes that are in this, getting and upping on your security, that is my right.

(c) I believe Brigitte Macron was born a biological male, okay. And then transitioned into a female. That is my belief. I don't know how many times I can say it.

(d) . . . and you will never, ever, ever get me to transform my opinion that you were groomed by the person you eventually married in 2007, Brigitte Macron. I believe she's a man.

427. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

428. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

429. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron has engaged in identity theft, lied about her identity, and perpetrated or directed physical violence against individuals investigating or reporting on President Macron or herself, including Owens or Isabella Ferreira.

430. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; has not lied about her identity; and has not perpetrated or directed physical violence against any individual for investigating or reporting on President Macron or herself, including Owens or Isabella Ferreira.

431. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied about Mrs. Macron's identity and perpetrated or directed physical violence against individuals investigating or reporting on them, including Owens or Isabella Ferreira.

432. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity or perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens or Isabella Ferreira.

433. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule,

or disgrace, and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying to the public about Mrs. Macron's identity, perpetrating abuses of power, and engaging in physical violence against individuals who are investigating them.

434. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

435. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to the Macrons by making the Statements.

436. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and engaged in physical violence against individuals investigating them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

437. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

438. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

439. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

440. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity

and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

441. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FIVE – FALSE LIGHT
## EPISODE 1 (FEBRUARY 4, 2025)

442. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

443. Defendant published the statements quoted in Count Four ¶ 426 on February 4, 2025, during Episode 1 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

444. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

445. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron has engaged in identity theft, lied about her identity, and perpetrated or directed physical violence against individuals investigating or reporting on President Macron or herself, including Owens or Isabella Ferreira.

446. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; has not lied about her identity; and has not perpetrated or directed physical violence against any individual for investigating or reporting on President Macron or herself, including Owens or Isabella Ferreira.

447. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied about Mrs. Macron's identity and perpetrated or directed physical violence against individuals investigating or reporting on them, including Owens or Isabella Ferreira.

448. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity or perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens or Isabella Ferreira.

449. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

450. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying to the public about Mrs. Macron's identity, perpetrating abuses of power, and engaging in physical violence against individuals who are investigating them.

451. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

452. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and engaged in physical violence against individuals investigating them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

453. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

454. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

455. As a direct and proximate result of Defendant's false Statements, and resulting false

impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

456. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

457. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SIX – DEFAMATION BY IMPLICATION**
**EPISODE 1 (FEBRUARY 4, 2025)**

458. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

459. Defendant published the following false and defamatory statements of fact on February 4, 2025, during Episode 1 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) I literally told you that every journalist that tries to touch this story, something happens to. Okay. And it is a fact that Isabella Ferreira was working on the story, had messaged according to her friends saying that she had a bombshell about Emmanuel Macron and appreciate the French press has reported on this. And then she was found dead floating in a river, okay. Or a pond, whatever it was. And they, the public said that she had drowned and her friends said that she was not suicidal. And the public, the press said that she had maybe taken some pills. I don't remember.

(b) Like I said, every journalist that tries to get this out. Yes, that is not a lie. That is the truth. We have upped our security because, and we were responding to the chat, people saying, get yourself some good security. And of course, when you have people walking around your property and you have young children and you understand the extent of the stakes that are in this, getting and upping on your security, that is my right.

460. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

461. Defendant juxtaposed the Statements to imply a false and defamatory connection between them, or otherwise create the false and defamatory implications that President and Mrs. Macron have lied about Mrs. Macron's identity and perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens or Isabella Ferreira (the "Implications").

462. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in, and in connection with, the Implications (and the Statements giving rise to them).

463. The Implications are statements of (false) fact and are reasonably understood as factual assertions that Mrs. Macron has engaged in identity theft, lied about her identity, and perpetrated or directed physical violence against any individual for investigating or reporting on President Macron or herself, including Owens or Isabella Ferreira.

464. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux and has not lied about her identity or perpetrated or directed physical violence against any individual for investigating or reporting on President Macron or herself, including Owens or Isabella Ferreira.

465. Additionally, the Implications are statements of (false) fact and are reasonably understood as factual assertions that President and Mrs. Macron have lied about Mrs. Macron's

identity and perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens or Isabella Ferreira.

466. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity or perpetrated or directed physical violence against any individual for investigating or reporting on them, including Owens or Isabella Ferreira.

467. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying to the public about Mrs. Macron's identity, perpetrating abuses of power, and engaging in physical violence against individuals who are investigating them. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

468. The Implications are defamatory *per se*, and people who heard them understood them to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

469. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause

injury to the Macrons by making the Implications.

470. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and engaged in physical violence toward individuals investigating them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Implications and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

471. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

472. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

473. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

474. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

475. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SEVEN – DEFAMATION**
**EPISODE 2 (FEBRUARY 5, 2025)**

476. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

477. Defendant published the following false and defamatory statement of fact on February 5, 2025, during Episode 2 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statement (the "Statement"):

(a) He turned to his wife to know what to answer about his sister. I don't know about how you guys are feeling right now, but I'm starting to get a little icky feeling. It's all starting to feel a bit, I don't know, incestuous to me . . .

478. The Statement was published in a fixed and permanent form that remains accessible to the public, and constitutes libel.

479. The Statement is of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statement.

480. The Statement is a statement of (false) fact and is reasonably understood as a statement of (false) fact—specifically, as an assertion that President and Mrs. Macron are blood relatives and have committed incest.

481. The Statement is categorically and demonstrably false. President and Mrs. Macron have not committed incest and are not blood relatives.

482. The Statement is defamatory, and people who heard it understood it to be defamatory, because it holds President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tends to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of committing incest.

483. The Statement is defamatory *per se*, and people who heard it understood it to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in its plain and obvious meaning, it accuses President and Mrs. Macron of crimes (incest), casts aspersions on their integrity, undercuts their reputations, and has the likely effect of harming them.

484. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statement, which is readily apparent, and, in fact, intended to cause injury to the Macrons by making the Statement.

485. For the reasons set forth in detail above, Defendant made the defamatory Statement

with actual malice, including with actual, subjective awareness of its falsity, as evidenced by the facts that Defendant:

(a) Made the Statement despite having actual knowledge that it was false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statement as part of a preconceived narrative that President and Mrs. Macron have committed incest;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statement for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statement even after being confronted with additional evidence of its falsity; and

(g) Continued to repeat the Statement and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

486. Defendant had no applicable privilege or legal authorization to publish the Statement, or, if she did, she abused that privilege or authorization.

487. As a direct and proximate result of Defendant's false Statement, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

488. As a direct and proximate result of Defendant's false Statement, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm

they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

489. Defendant published the Statement maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

490. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT EIGHT – FALSE LIGHT**
**EPISODE 2 (FEBRUARY 5, 2025)**

491. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

492. Defendant published the statement quoted in Count Seven ¶ 477 on February 5, 2025, during Episode 2 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted that statement (the "Statement"). The Statement was published in a fixed and permanent form that remains accessible to the public, and constitutes libel.

493. The Statement is of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in, and in connection with, the Statement.

494. The Statement is a statement of (false) fact and is reasonably understood as a statement of (false) fact—specifically, as an assertion that President and Mrs. Macron are blood relatives and have committed incest.

495. The Statement is categorically and demonstrably false. President and Mrs. Macron have not committed incest and are not blood relatives.

496. By publishing the Statement, Defendant has portrayed President and Mrs. Macron in a false light because it accuses President and Mrs. Macron of crimes (including incest), casts aspersions on their integrity, undercuts their reputations, and has the likely effect of harming them.

497. The false light created by Defendant would be highly offensive to a reasonable person because the Statement holds President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tends to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of committing incest.

498. Defendant knew the Statement would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statement.

499. For the reasons set forth in detail above, Defendant made the defamatory Statement with actual malice, including with actual, subjective awareness of its falsity, as evidenced by the facts that Defendant:

(a) Made the Statement despite having actual knowledge that it was false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statement as part of a preconceived narrative that President and Mrs. Macron have committed incest;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statement for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statement even after being confronted with additional evidence of its falsity; and

(g) Continued to repeat the Statement and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

500. Defendant had no applicable privilege or legal authorization to publish the Statement, or, if she did, she abused that privilege or authorization.

501. As a direct and proximate result of Defendant's false Statement, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

502. As a direct and proximate result of Defendant's false Statement, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

503. Defendant published the Statement maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

504. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT NINE – DEFAMATION**
**EPISODE 3 (FEBRUARY 7, 2025)**

505. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

506. Defendant published the following false and defamatory statements of fact on February 7, 2025, during Episode 3 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) We showed you this side by side of current President Emmanuel Macron and a person who was supposed to be Brigitte's nephew, his wife's nephew. But these two people who are not supposed to be in any way related look way too much alike.

(b) What really happened to André-Louis, who was cremated very quickly, even though his daughter says he was buried? . . . What really happened to André-Louis? . . . Did he actually die? Did he escape with the assistance of the Élysée Palace? Did he try to escape, but the Élysée Palace intervened?

(c) There is no conspiracy here. The MKUltra was real. The government was obsessed with all of these different programs. Really, the main point of them trying to condition the brain, trying to brainwash people, sometimes through isolation, which it sounds like Emmanuel Macron spent a ton of time isolated throughout his childhood. I mean, he's acknowledging that he lived through books, and his friends are acknowledging, or should be friends are acknowledging that he was kind of a loner and on his own. So they would experiment psychologically through isolation, through drugs, you know, LSD, drugging people to see if they could get them to commit crimes or to commit other acts unwittingly, essentially trying to establish a Manchurian candidate. . . . So we don't know just how global that program went. We don't know every element of that program. . . . And one element of that program was of course, sexual perversions, like committing a sexual assault in order to then establish how it impacts somebody's psyche. Truly evil stuff. Okay. Now earlier I told you that Macron's biological alleged biological parents you see here up on the screen had some interesting jobs just off the bat. His father, Jean-Michel Macron was a psychiatrist. And yes, of course we know for a fact that psychiatrists have done some evil things, some very evil things throughout the years.

507. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

508. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

509. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron committed identity theft, lied about her identity, lied about President Macron's identity and upbringing, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

510. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft; lied about her identity or President Macron's identity or upbringing; committed incest; participated in government mind control programs; or perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

511. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President Macron lied about Mrs. Macron's identity, lied about his identity, lied about his upbringing, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

512. The Statements are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity; lied about his identity or upbringing; committed incest; participated in mind control programs; or perpetrated or directed physical violence against or faked

the death of André-Louis Auzière.

513. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President and Mrs. Macron are blood relatives, have lied about their identities, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

514. The Statements are categorically and demonstrably false. President and Mrs. Macron are not blood relatives and have not lied about their identities, committed incest, participated in government mind control programs, or perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

515. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying about their identities, committing incest, participating in government mind control programs, and perpetrating or directing physical violence against or faking the death of André-Louis Auzière.

516. The Statements are defamatory *per se*, and people who heard them understood them to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, incest, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

517. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause

injury to the Macrons by making the Statements.

518. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about their identities or upbringing, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

519. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

520. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at

trial.

521. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

522. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

523. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT TEN – FALSE LIGHT
## EPISODE 3 (FEBRUARY 7, 2025)

524. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

525. Defendant published the statements quoted in Count Nine ¶ 506 on February 7, 2025, during Episode 3 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements").

526. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

527. The Statements are of and concerning President and Mrs. Macron. Indeed,

Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

528. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; committed incest; participated in government mind control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

529. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft; lied about her identity; lied about President Macron's identity or upbringing; committed incest; participated in government mind control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

530. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President Macron lied about Mrs. Macron's identity; lied about his identity; lied about his upbringing; committed incest; participated in government mind control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

531. The Statements are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity; lied about his identity or upbringing; committed incest; participated in mind control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

532. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President and Mrs. Macron are blood relatives, have

lied about their identities, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

533. The Statements are categorically and demonstrably false. President and Mrs. Macron are not blood relatives and have not lied about their identities, committed incest, participated in government mind control programs, or perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

534. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, incest, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

535. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying about their identities, committing incest, participating in government mind control programs, and perpetrating or directing physical violence against or faking the death of André-Louis Auzière.

536. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

537. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about their identities or upbringing, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

538. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

539. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

540. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm

they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

541. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

542. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT ELEVEN – DEFAMATION BY IMPLICATION**
**EPISODE 3 (FEBRUARY 7, 2025)**

543. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

544. Defendant published the statements quoted in Count Nine ¶ 506 on February 7, 2025, during Episode 3 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

545. Defendant juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that President and Mrs. Macron are blood relatives, lied about their identities, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière (the "Implications").

546. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in, and in connection with, the Implications (and the Statements giving rise to them).

547. The Implications are statements of (false) fact and are reasonably understood as factual assertions that Mrs. Macron committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; committed incest; participated in government mind control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

548. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft; lied about her identity; lied about President Macron's identity or upbringing; committed incest; participated in government mind control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

549. Additionally, the Implications are statements of (false) fact and are reasonably understood as factual assertions that President Macron lied about Mrs. Macron's identity; lied about his identity; lied about his upbringing; committed incest; participated in government mind control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

550. The Implications are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity; lied about his identity; lied about his upbringing; committed incest; participated in government mind control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

551. Additionally, the Implications are statements of (false) fact and are reasonably

understood as factual assertions that President and Mrs. Macron are blood relatives, lied about their identities, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

552. The Implications are categorically and demonstrably false. President and Mrs. Macron are not blood relatives and have never lied about their identities, committed incest, participated in government mind control programs, or perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

553. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying about their identities, committing incest, participating in government mind control programs, and perpetrating or directing physical violence against or faking the death of André-Louis Auzière. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

554. The Implications are defamatory *per se*, and people who heard them understood them to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, incest, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

555. Defendant knew the substantial danger of injury to President and Mrs. Macron and

their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to the Macrons by making the Implications.

556. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron lied to the public about their identities or upbringing, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Implications and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

557. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

558. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of

future business opportunities and such other compounding and growing losses as will be shown at trial.

559. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

560. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

561. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT TWELVE – DEFAMATION
## EPISODE 4 (FEBRUARY 11, 2025)

562. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

563. Defendant published the following false and defamatory statements of fact on February 11, 2025, during Episode 4 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) Today is Jean-Michel Trogneux's birthday. In other words, happy birthday, Brigitte Macron, the First Lady, Brigitte Macron.

(b) . . . Macron's immediate family was involved in helping people who had gender issues to become someone else. In other words, they were facilitating the issuing of real government IDs, which allowed people to legally shed themselves of their former identities and their true biological sex. We have to wake up to the fact that that is the reality of the world that we live in today. So what are the implications of that?

(c) But what we can't tell you is what exactly happened to [André-Louis Auzière]. We cannot ascertain what happened to him based on the testimony of his first cousin, because it depends on whether or not you believe his partner, the woman who was at his funeral, who claimed that she found tickets to Africa in his pocket, that he had emptied all of his bank accounts. And if you potentially, or you could say, and, or if you believe the journalist from Paris Match, who then wrote that André actually spent the last days of his life in a psychiatric ward being guarded by none other than Alexander Benalla.

(d) With forgery, extortion, and most importantly, with access to a woman who can facilitate the changing of identities, it is not enough for any person investigating this case to ask questions like, is this Brigitte Trogneux in the wedding photo?

(e) Because we can confirm that that is indeed a photo of a woman named Brigitte Trogneux in that wedding photo where that Brigitte is. We cannot confirm because the first lady refuses to answer. She has a mother-in-law who helps transgender people get new identities. So you have to essentially understand that you can just take somebody's name. You can take, you can become somebody else at a moment's notice. Now, legally, when you become transgender, okay. This brings us to Jean-Michel Trogneux.

(f) If it's really you, Brigitte Macron, and you didn't take on the identity of your sister, if it's really you . . .

(g) The only question that remains is who the hell is Brigitte Macron? And the obvious answer to me, and after you see these photos that you are going to see, one in particular, from when Jean-Michel Trogneux was 18, you're going to fall down like I did when I saw it. It's completely crazy.

(h) There's no question upon seeing this technology, in my mind, that Jean-Michel Trogneux is Brigitte Macron. The only question that I have is what happened to his sister, Brigitte Trogneux.

564. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

565. The Statements are of and concerning President and Mrs. Macron. Indeed,

Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

566. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

567. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

568. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President Macron lied about Mrs. Macron's identity; lied about his identity and upbringing; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

569. The Statements are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity; lied about his identity and upbringing; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

570. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President and Mrs. Macron lied about their identities and perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

571. The Statements are categorically and demonstrably false. President and Mrs. Macron have never lied about their identities or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

572. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft; lying about President or Mrs. Macron's identities; and perpetrating or directing physical violence against, or faking the death of, André-Louis Auzière.

573. The Statements are defamatory *per se*, and people who heard them understood them to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

574. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to the Macrons by making the Statements.

575. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron lied to the public about their identities or upbringing, and

perpetrated or directed physical violence against or faked the death of André-Louis Auzière;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

576. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

577. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

578. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

579. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity

and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

580. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT THIRTEEN – FALSE LIGHT**
**EPISODE 4 (FEBRUARY 11, 2025)**

581. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

582. Defendant published the statements quoted in Count Twelve ¶ 563 on February 11, 2025, during Episode 4 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

583. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in, and in connection with, the Statements.

584. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

585. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

586. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President Macron lied about Mrs. Macron's identity; lied about his identity and upbringing; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

587. The Statements are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity; lied about his identity and upbringing; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

588. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President and Mrs. Macron lied about their identities and perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

589. The Statements are categorically and demonstrably false. President and Mrs. Macron have never lied about their identities or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

590. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

591. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace, and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying about President or Mrs. Macron's identities, and perpetrating or directing physical violence against or faking the

death of André-Louis Auzière.

592. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

593. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron lied to the public about their identities or upbringing, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

594. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

595. As a direct and proximate result of Defendant's false Statements, President and

Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

596. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

597. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

598. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FOURTEEN – DEFAMATION BY IMPLICATION
## EPISODE 4 (FEBRUARY 11, 2025)

599. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

600. Defendant published the following false and defamatory statements of fact on February 11, 2025, during Episode 4 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) Macron's immediate family was involved in helping people who had gender issues to become someone else. In other words, they were facilitating the issuing of real government IDs, which allowed people to legally shed themselves of their former identities and their true biological sex. We have to wake up to the fact that that is the reality of the world that we live in today. So what are the implications of that?

(b) But what we can't tell you is what exactly happened to [André-Louis Auzière]. We cannot ascertain what happened to him based on the testimony of his first cousin, because it depends on whether or not you believe his partner, the woman who was at his funeral, who claimed that she found tickets to Africa in his pocket, that he had emptied all of his bank accounts. And if you potentially, or you could say, and, or if you believe the journalist from Paris Match, who then wrote that André actually spent the last days of his life in a psychiatric ward being guarded by none other than Alexander Benalla.

(c) With forgery, extortion, and most importantly, with access to a woman who can facilitate the changing of identities, it is not enough for any person investigating this case to ask questions like, is this Brigitte Trogneux in the wedding photo?

(d) Because we can confirm that that is indeed a photo of a woman named Brigitte Trogneux in that wedding photo where that Brigitte is. We cannot confirm because the first lady refuses to answer. She has a mother-in-law who helps transgender people get new identities. So you have to essentially understand that you can just take somebody's name. You can take, you can become somebody else at a moment's notice. Now, legally, when you become transgender, okay. This brings us to Jean-Michel Trogneux.

601. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

602. Defendant juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that President and Mrs. Macron have committed identity theft; lied about their identities and upbringing; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière (the "Implications").

603. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in

connection with the Implications (and the Statements giving rise to them).

604. The Implications are statements of (false) fact and are reasonably understood as factual assertions that Mrs. Macron has committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

605. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

606. Additionally, the Implications are statements of (false) fact and are reasonably understood as factual assertions that President Macron lied about Mrs. Macron's identity; lied about his identity and upbringing; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

607. The Implications are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity; lied about his identity and upbringing; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

608. Additionally, the Implications are statements of (false) fact and are reasonably understood as factual assertions that President and Mrs. Macron have lied about their identities and perpetrated or directed physical violence against or faked the death of André-Louis Auzière.

609. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about their identities or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

610. The Implications are defamatory, and people who heard them understood them to

be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft; lying about their identities; and perpetrating or directing physical violence against, or faking the death of, André-Louis Auzière. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

611. The Implications are defamatory *per se*, and people who heard them understood them to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

612. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to the Macrons by making the Implications.

613. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about their identities or upbringing and perpetrated or directed physical violence against or faked the death of André-Louis Auzière;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Implications and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

614. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

615. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

616. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

617. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and

Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

618. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT FIFTEEN – DEFAMATION**
**EPISODE 5 (FEBRUARY 13, 2025)**

619. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

620. Defendant published the following false and defamatory statements of fact on February 13, 2025, during Episode 5 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) This is a good time to tell you that most of what you think you even know about Emmanuel Macron thus far, his legacy. Yeah, it's just objectively not true. Emmanuel had a major hand up in life. This guy [is] so private, we don't know much about him. What we do know about him is I would say quite sinister. It's quite sinister. It's making me think, I don't know, of that movie, *The Manchurian Candidate*.

(b) Brigitte Macron perhaps is Jean-Michel Trogneux.

(c) Who are you really, and what is your relationship to Emmanuel Macron? What is Emmanuel Macron's relationship to you? What is the relationship between Emmanuel Macron and Jean-Jacques? It's not feeling like a nephew to me.

(d) He's just a puppet. And he has been groomed from that time that he was a child, but groomed by who, who is his father? Who is his father? . . . he doesn't really seem to have close relations with his parents of these, his doctors, perhaps . . . they can change identities, and they can change names. This family has this capacity.

(e) There are too many similarities between the upbringing of []Emmanuel Macron and as we talked about the upbringing of Kamala Harris, the

> upbringing of Barack Obama, you know, these people being raised by their grandparents at a time when we know that the MKUltra program was running and there is something very, very wrong there.

621. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

622. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

623. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; committed incest; participated in government mind-control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

624. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; committed incest; participated in government mind-control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

625. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President Macron lied about Mrs. Macron's identity; lied about his identity and upbringing; committed incest; participated in government mind-control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

626. The Statements are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity; lied about his identity and upbringing; committed incest;

participated in government mind-control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

627. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President and Mrs. Macron lied about their identities, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

628. The Statements are categorically and demonstrably false. President and Mrs. Macron have never lied about their identities, committed incest, participated in government mind control programs, or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

629. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft; lying about their identities; committing incest; participating in government mind-control programs; and perpetrating or directing physical violence against, or faking the death of, André-Louis Auzière.

630. The Statements are defamatory *per se*, and people who heard them understood them to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, incest, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

631. Defendant knew the substantial danger of injury to President and Mrs. Macron and

their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to the Macrons by making the Statements.

632. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about their identities or upbringing, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

633. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

634. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of

future business opportunities and such other compounding and growing losses as will be shown at trial.

635. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

636. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

637. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT SIXTEEN – FALSE LIGHT
## EPISODE 5 (FEBRUARY 13, 2025)

638. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

639. Defendant published the statements quoted in Count Fifteen ¶ 620 on February 13, 2025, during Episode 5 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

640. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

641. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; committed incest; participated in government mind-control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

642. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; committed incest; participated in government mind-control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

643. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President Macron lied about Mrs. Macron's identity; lied about his identity and upbringing; committed incest; participated in government mind-control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

644. The Statements are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity; lied about his identity and upbringing; committed incest; participated in government mind-control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

645. Additionally, the Statements are statements of (false) fact and are reasonably

understood as statements of (false) fact that President and Mrs. Macron lied about their identities; committed incest; participated in government mind-control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

646. The Statements are categorically and demonstrably false. President and Mrs. Macron have never lied about their identities; committed incest; participated in government mind-control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

647. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, incest, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

648. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft; lying about their identities; committing incest; participating in government mind-control programs; and perpetrating or directing physical violence against, or faking the death of, André-Louis Auzière.

649. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

650. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as

evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about their identities or upbringing, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

651. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

652. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

653. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable

sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

654. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

655. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT SEVENTEEN – DEFAMATION BY IMPLICATION EPISODE 5 (FEBRUARY 13, 2025)

656. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

657. Defendant published statements (a), (c), (d), and (e) quoted in Count Fifteen ¶ 620 on February 13, 2025, during Episode 5 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

658. Defendant juxtaposed the Statements to imply a false and defamatory connection between them, or otherwise create the false and defamatory implications that President and Mrs. Macron lied about their identities and upbringing, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked

the death of André-Louis Auzière (the "Implications").

659. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

660. The Implications are statements of (false) fact and are reasonably understood as factual assertions that Mrs. Macron committed identity theft; lied about her identity; lied about President Macron's identity and upbringing; committed incest; participated in government mind-control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

661. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft; lied about her identity; lied about President Macron's identity or upbringing; committed incest; participated in government mind-control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

662. Additionally, the Implications are statements of (false) fact and are reasonably understood as factual assertions that President Macron has lied about Mrs. Macron's identity; lied about his identity and upbringing; committed incest; participated in government mind-control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

663. The Implications are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity; lied about his identity and upbringing; committed incest; participated in government mind-control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

664. Additionally, the Implications are statements of (false) fact and are reasonably understood as factual assertions that President and Mrs. Macron have lied about their identities; committed incest; participated in government mind-control programs; and perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

665. The Implications are categorically and demonstrably false. President and Mrs. Macron have never lied about their identities; committed incest; participated in government mind-control programs; or perpetrated or directed physical violence against, or faked the death of, André-Louis Auzière.

666. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace, and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft; lying about their identities; committing incest; participating in government mind-control programs; and perpetrating or directing physical violence against, or faking the death of, André-Louis Auzière. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

667. The Implications are defamatory *per se*, and people who heard them understood them to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, incest, forgery, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

668. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to the Macrons by making the Implications.

669. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about their identities or upbringing, committed incest, participated in government mind control programs, and perpetrated or directed physical violence against or faked the death of André-Louis Auzière;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Implications and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

670. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

671. As a direct and proximate result of Defendant's false Implications, President and

Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

672. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

673. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

674. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT EIGHTEEN – DEFAMATION
## EPISODE 6 (FEBRUARY 17, 2025)

675. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

676. Defendant published the following false statements of fact on February 17, 2025, during Episode 6 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) I think a year from now, most of the world will be awakened to the fact that what I said one year ago is true. I believe that Emmanuel Macron is a

homosexual man that was groomed from his youth. I believe the individual who groomed him is now his wife. I believe that his wife was born Jean-Michel Trogneux and transitioned in his early thirties, and I believe that the entire state is colluding to protect that secret. And like I said, I would stake my entire professional career on all of those points.

677. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

678. Defendant published several X posts in support of Episode 6. In those X posts, Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) On February 18, 2025, Defendant posted on X: "Emmanuel Macron married a man. Which was illegal at the time that he did it."[172]


Candace Owens
@RealCandaceO
Subscribe

Exclusively available on CandaceOwens.com

Credit due to @XavierPoussard. This was years of his hard work and fighting the Macrons in court to release photos of "Jean-Michel".

Emmanuel Macron married a man. Which was illegal at the time that he did it.

(b) On February 18, 2025, Defendant posted on X: "Why did he send me the legal letter? 1) Because Brigitte can STILL be prosecuted for this crime against a minor up until the end of this year. 2) Because his marriage was an illegal act. Emmanuel Macron broke the law when he married his groomer."[173]


Candace Owens
@RealCandaceO
Subscribe

Why did he send me the legal letter?
1) Because Brigitte can STILL be prosecuted for this crime against a minor up until the end of this year.
2) Because his marriage was an illegal act. Emmanuel Macron broke the law when he married his groomer.

CandaceOwens.Com

679. The Statements are of and concerning President and Mrs. Macron. Indeed,

---

[172] Candace Owens (@RealCandaceO), X (Feb. 18, 2025, at 9:45 ET), https://x.com/RealCandaceO/status/1891861509975703647.

[173] Candace Owens (@RealCandaceO), X (Feb. 18, 2025, at 9:47 ET), https://x.com/RealCandaceO/status/1891862093575462960.

Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

680. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron committed identity theft, lied about her identity, lied about President Macron's identity and upbringing, abused state power to cover up such lies, and committed a crime by marrying President Macron.

681. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft, lied about her identity, lied about President Macron's identity or upbringing, abused state power to cover up such lies, or committed a crime by marrying President Macron.

682. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President Macron lied about Mrs. Macron's identity, lied about his identity and upbringing, abused state power to cover up such lies, and committed a crime by marrying Mrs. Macron.

683. The Statements are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity, lied about his identity and upbringing, abused state power to cover up such lies, or committed a crime by marrying Mrs. Macron.

684. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President and Mrs. Macron lied about their identities, abused state power to cover up such lies, and committed a crime by getting married.

685. The Statements are categorically and demonstrably false. President and Mrs. Macron have never lied about their identities, abused state power to cover up such lies, or committed a crime by marrying.

686. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying about their identities, abusing state power to cover up such lies, and committing a crime by marrying.

687. The Statements are defamatory *per se*, and people who heard them understood them to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, fraud, and illegal marriage), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

688. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to the Macrons by making the Statements.

689. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron lied to the public about their identities or upbringing, abused state power to cover up such lies, and committed a crime by marrying;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

690. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

691. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

692. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

693. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are

appropriate.

694. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT NINETEEN – FALSE LIGHT**
**EPISODE 6 (FEBRUARY 17, 2025)**

695. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

696. Defendant published the statements quoted in Count Eighteen ¶ 676 on February 17, 2025, during Episode 6 of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

697. Defendant published several X posts in support of Episode 6. In those X posts, Defendant made, endorsed, and adopted the following false statements of fact (the "Statements"):

(a) On February 18, 2025, Defendant posted on X: "Emmanuel Macron married a man. Which was illegal at the time that he did it."[174]




(b) On February 18, 2025, Defendant posted on X: "Why did he send me the legal letter? 1) Because Brigitte can STILL be prosecuted for this crime against a minor up until the end of this year. 2) Because his marriage was

[174] Candace Owens (@RealCandaceO), X (Feb. 18, 2025, at 9:45 ET), https://x.com/RealCandaceO/status/1891861509975703647.

an illegal act. Emmanuel Macron broke the law when he married his groomer."[175]




698. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

699. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron committed identity theft, lied about her identity, lied about President Macron's identity and upbringing, abused state power to cover up such lies, and committed a crime by marrying President Macron.

700. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft, lied about her identity, lied about President Macron's identity or upbringing, abused state power to cover up such lies, or committed a crime by marrying President Macron.

701. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President Macron lied about Mrs. Macron's identity, lied about his identity and upbringing, abused state power to cover up such lies, and committed a crime by marrying Mrs. Macron.

702. The Statements are categorically and demonstrably false. President Macron has

---

175 Candace Owens (@RealCandaceO), X (Feb. 18, 2025, at 9:47 ET), https://x.com/RealCandaceO/status/1891862093575462960.

never lied about Mrs. Macron's identity, lied about his identity and upbringing, abused state power to cover up such lies, or committed a crime by marrying Mrs. Macron.

703. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President and Mrs. Macron have lied about their identities, abused state power to cover up such lies, and committed a crime by getting married.

704. The Statements are categorically and demonstrably false. President and Mrs. Macron have never lied about their identities, abused state power to cover up such lies, or committed a crime by marrying.

705. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, fraud, and illegal marriage), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

706. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying about their identities, abusing state power to cover up such lies, and committing a crime by marrying.

707. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

708. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as

evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron lied to the public about their identities or upbringing, abused state power to cover up such lies, and committed a crime by marrying;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

709. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

710. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

711. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm

they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

712. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

713. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT TWENTY – DEFAMATION**
**EPILOGUE (FEBRUARY 20, 2025)**

714. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

715. Defendant published the following false and defamatory statements of fact on February 20, 2025, during the Epilogue of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) I know there are so many lingering questions. Is Brigitte Macron, the First Lady of France, Emmanuel Macron's biological father? We're hearing that a lot. Where is the real Brigitte Trogneux?

(b) Okay, so many of you had suspected that these families might all be related. Are the Auzières, the Trogneux, and the Macrons all just from the same family? Is there a chance that Brigitte Macron some of you asked is actually the father of Emmanuel Macron?

(c) We definitely know and have confirmed like we did in the last episode that he had his hand held through his career by uh, David de Rothschild. A family that is known and is on record as having practiced incest. Okay, why

and how did Emmanuel Macron get so close to the Rothschilds? So close that his colleague said this dude didn't even know what EBITDA meant and yet he became the youngest managing partner. We understood that whatever it was David Rothschild was holding his hand. He just couldn't question the power that he was being given and we would laugh at him in meetings because he knew nothing about finance. Why did David Rothschild see to it that Emmanuel had his hand held? Vice is nice, but incest is best because it stays in the family. That is a direct quote from David de Rothschild's cousin Natalie Reams Rothschild . . . . Then there was a biography which was written by author Natalie Livingston, which was entitled "The Women of Rothschild," which sort of revealed the maniacal desire that the Rothschild family had to maintain their fortune and their power in the world. A desire that was so maniacal that they practiced family incest. That is just undeniable. It is a fact. Okay, and allegedly they did this only until it was no longer socially acceptable. Right up until the late 19th century, you guys, right before we get into this this Trogneux family. It's just amazing. . . .

(d) Yes, I agree with those of you that are commenting right now that we are looking potentially at incest. That is, that is what in my guts feels it has to be a secret so big that it would make them react in this way because it is a type of violence to treat journalists like this. It is a [] kind of emotional violence to do these sorts of things and they do it as though they know that vice is nice, but incest is best and things should be kept within the family.

716. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

717. On February 20, 2025, Defendant published an X post in support of the Epilogue of the Series.[176] In that X post, Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) Is Brigitte Macron [President Macron's] father?

(b) What happened to the real Brigitte?

---

[176] Candace Owens (@RealCandaceO), X (Feb. 20, 2025, at 16:00 ET), https://x.com/RealCandaceO/status/1892680741172941033.




718. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

719. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron committed identity theft, lied about her identity, lied about President Macron's identity and upbringing, committed incest, and abused state power to cover up such lies.

720. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft, lied about her identity, lied about President Macron's identity or upbringing, committed incest, or abused state power to cover up such lies.

721. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President Macron has lied about Mrs. Macron's identity, lied about his identity and upbringing, committed incest, and abused state power to cover up such lies.

722. The Statements are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity, lied about his identity and upbringing, committed incest,

or abused state power to cover up such lies.

723. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President and Mrs. Macron lied about their identities, committed incest, and abused state power to cover up such lies.

724. The Statements are categorically and demonstrably false. President and Mrs. Macron have never lied about their identities, committed incest, or abused state power to cover up such lies.

725. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying about their identities, committing incest, and abusing state power to cover up such lies.

726. The Statements are defamatory *per se*, and people who heard them understood them to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, incest, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

727. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to the Macrons by making the Statements.

728. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as

evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about their identities or upbringing, committed incest, and abused state power to cover up such lies;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

729. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

730. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

731. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm

they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

732. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation and toward the Macrons' perceived connections to Jewish people. Accordingly, punitive damages are appropriate.

733. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT TWENTY-ONE – FALSE LIGHT
## EPILOGUE (FEBRUARY 20, 2025)

734. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

735. Defendant published the following false statements of fact on February 20, 2025, during the Epilogue of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) I know there are so many lingering questions. Is Brigitte Macron, the First Lady of France, Emmanuel Macron's biological father? We're hearing that a lot. Where is the real Brigitte Trogneux?

(b) Okay, so many of you had suspected that these families might all be related. Are the Auzières, the Trogneux, and the Macrons all just from the same family? Is there a chance that Brigitte Macron some of you asked is actually the father of Emmanuel Macron?

(c) We definitely know and have confirmed like we did in the last episode that he had his hand held through his career by uh, David de Rothschild. A family that is known and is on record as having practiced incest. Okay, why and how did Emmanuel Macron get so close to the Rothschilds? So close that his colleague said this dude didn't even know what EBITDA meant and

yet he became the youngest managing partner. We understood that whatever it was David Rothschild was holding his hand. He just couldn't question the power that he was being given and we would laugh at him in meetings because he knew nothing about finance. Why did David Rothschild see to it that Emmanuel had his hand held? Vice is nice, but incest is best because it stays in the family. That is a direct quote from David de Rothschild's cousin Natalie Reams Rothschild . . . . Then there was a biography which was written by author Natalie Livingston, which was entitled "The Women of Rothschild," which sort of revealed the maniacal desire that the Rothschild family had to maintain their fortune and their power in the world. A desire that was so maniacal that they practiced family incest. That is just undeniable. It is a fact. Okay, and allegedly they did this only until it was no longer socially acceptable. Right up until the late 19th century, you guys, right before we get into this this Trogneux family. It's just amazing. . . .

(d) Yes, I agree with those of you that are commenting right now that we are looking potentially at incest. That is, that is what in my guts feels it has to be a secret so big that it would make them react in this way because it is a type of violence to treat journalists like this. It is a [] kind of emotional violence to do these sorts of things and they do it as though they know that vice is nice, but incest is best and things should be kept within the family.

736. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

737. On February 20, 2025, Defendant published an X post in support of the Epilogue of the Series.[177] In that X post, Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) Is Brigitte Macron [President Macron's] father?

(b) What happened to the real Brigitte?

---

[177] *Id.*


Case 3:26-cv-01765 Document 1 Filed 11/04/26 Page 183 of 409 PageID #: 183




738. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

739. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron committed identity theft, lied about her identity, lied about President Macron's identity and upbringing, committed incest, and abused state power to cover up such lies.

740. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft, lied about her identity, lied about President Macron's identity or upbringing, committed incest, or abused state power to cover up such lies.

741. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President Macron has lied about Mrs. Macron's identity, lied about his identity and upbringing, committed incest, and abused state power to cover up such lies.

742. The Statements are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity, lied about his identity and upbringing, committed incest,

or abused state power to cover up such lies.

743. Additionally, the Statements are statements of (false) fact and are reasonably understood as statements of (false) fact that President and Mrs. Macron lied about their identities, committed incest, and abused state power to cover up such lies.

744. The Statements are categorically and demonstrably false. President and Mrs. Macron have never lied about their identities, committed incest, or abused state power to cover up such lies.

745. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, incest, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

746. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying about their identities, committing incest, and abusing state power to cover up such lies.

747. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

748. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about their identities or upbringing, committed incest, and abused state power to cover up such lies;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Statements and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

749. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

750. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

751. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court

of public opinion.

752. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation and toward the Macrons' perceived connections to Jewish people. Accordingly, punitive damages are appropriate.

753. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT TWENTY-TWO – DEFAMATION BY IMPLICATION**
**EPILOGUE (FEBRUARY 20, 2025)**

754. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

755. Defendant published statement (c) quoted in Count Twenty ¶ 715 on February 20, 2025, during the Epilogue of the Series, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted that statement (the "Statement"). The Statement was published in a fixed and permanent form that remains accessible to the public, and constitutes libel.

756. Defendant juxtaposed the Statement to create the false and defamatory implications that President and Mrs. Macron have lied about their identities, committed incest, and abused state power to cover up such lies (the "Implications").

757. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

758. The Implications are statements of (false) fact and are reasonably understood as factual assertions that Mrs. Macron committed identity theft, lied about her identity, lied about President Macron's identity and upbringing, committed incest, and abused state power to cover up such lies.

759. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux. Mrs. Macron has never committed identity theft, lied about her identity, lied about President Macron's identity or upbringing, committed incest, or abused state power to cover up such lies.

760. Additionally, the Implications are statements of (false) fact and are reasonably understood as factual assertions that President Macron lied about Mrs. Macron's identity, lied about his identity and upbringing, committed incest, and abused state power to cover up such lies.

761. The Implications are categorically and demonstrably false. President Macron has never lied about Mrs. Macron's identity, lied about his identity or upbringing, committed incest, or abused state power to cover up such lies.

762. Additionally, the Implications are statements of (false) fact and are reasonably understood as factual assertions that President and Mrs. Macron lied about their identities, committed incest, and abused state power to cover up such lies.

763. The Implications are categorically and demonstrably false. President and Mrs. Macron have never lied about their identities, committed incest, or abused state power to cover up such lies.

764. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them

in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, lying about their identities, committing incest, and abusing state power to cover up such lies. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

765. The Implications are defamatory *per se*, and people who heard them understood them to be defamatory *per se*, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, incest, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

766. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to the Macrons by making the Implications.

767. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about their identities or upbringing, committed incest, and abused state power to cover up such lies;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity; and

(g) Continued to repeat the Implications and similar statements since the filing of the Delaware Action, including on *The Tucker Carlson Show*, the *Candace podcast*, *Becoming Brigitte Season Two*, and X.

768. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

769. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

770. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

771. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation and toward the Macrons' perceived

connections to Jewish people. Accordingly, punitive damages are appropriate.

772. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT TWENTY-THREE – DEFAMATION
## CANDACE EP 264 (NOVEMBER 13, 2025)

773. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

774. Defendant published the following false and defamatory statements of fact on November 13, 2025, during *Candace* Ep 264, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) That's the common thread between my investigations into Brigitte Macron and her strange relationship, his strange relationship with Emmanuel Macron, the fed level coverup, which includes a never-before-seen lawsuit, which is just meant to be propagandists to make people think up there's nothing here, which should let you know that everything is here.

775. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

776. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

777. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a man and is a man, has lied about her identity, and is the beneficiary of a governmental cover-up concealing those facts.

778. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her identity; and no government has

concealed any fact about her identity.

779. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's identity and are the beneficiaries of a "fed level coverup."

780. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity and are not the beneficiaries of any governmental cover-up.

781. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity, of perpetrating abuses of power, and of procuring a governmental cover-up.

782. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

783. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

784. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as

evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

785. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

786. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

787. As a direct and proximate result of Defendant's false Statements, President and

Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

788. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

789. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT TWENTY-FOUR – FALSE LIGHT**
**CANDACE EP 264 (NOVEMBER 13, 2025)**

790. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

791. Defendant published the statements quoted in Count Twenty-Three ¶ 774 on November 13, 2025, during *Candace* Ep 264, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

792. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

793. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a man and is a man, has lied about her identity, and is the beneficiary of a governmental cover-up concealing those facts.

794. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her identity; and no government has concealed any fact about her identity.

795. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's identity and are the beneficiaries of a "fed level coverup."

796. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity and are not the beneficiaries of any governmental cover-up.

797. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

798. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity, of perpetrating abuses of power, and of procuring a governmental cover-up.

799. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

800. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

801. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

802. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

803. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

804. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

805. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT TWENTY-FIVE – DEFAMATION BY IMPLICATION CANDACE EP 264 (NOVEMBER 13, 2025)

806. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

807. Defendant published the statements quoted in Count Twenty-Three ¶ 774 on November 13, 2025, during *Candace* Ep 264, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The

Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

808. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is a man who has lied about her identity, and that the Macrons procured a "fed level coverup" to conceal that fact (the "Implications").

809. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

810. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron was born a man and is a man, has lied about her identity, and is the beneficiary of a governmental cover-up concealing those facts.

811. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her identity; and no government has concealed any fact about her identity.

812. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's identity and are the beneficiaries of a "fed level coverup."

813. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity and are not the beneficiaries of any governmental cover-up.

814. The Implications are defamatory, and people who heard them understood them to

be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity, of perpetrating abuses of power, and of procuring a governmental cover-up. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

815. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

816. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

817. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

818. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

819. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

820. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

821. Defendant published the Implications maliciously, willfully, wantonly, with

common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

822. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT TWENTY-SIX – DEFAMATION**
**CANDACE EP 268 (NOVEMBER 19, 2025)**

823. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

824. Defendant published the following false and defamatory statements of fact on November 19, 2025, during *Candace* Ep 268, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) I mean, any person who actually watched the Brigitte Macron story knows that that was a story about pedophiles in power, pedophiles in power and the psychopathic lengths they will go through to maintain the lie, right?

(b) And, uh, Theo and Joe had quite a laugh discussing the Brigitte Macron non-conspiracy theory.

(c) I told the truth about the Brigitte Macron story, right? And like I said, the fact that they are caught and their move is we're going to sue Candace Owens. That really tells you the nature of a psychopathology. Like these people are not human. I mean they're not human. There's something very dark and sinister and wrong that nothing stops and they have no shame and their only option is more anger, more destruction. Um, and in some circumstances people with that much power in a lot of circumstances, more murder, more murder.

825. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

826. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

827. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a man and is a man, has lied about her identity, is a pedophile, is a psychopath, and is willing to resort to violence and murder to conceal the truth.

828. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her identity; she is not a pedophile; she is not a psychopath; and she has never directed violence or murder against any person.

829. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, that they were "caught" doing so, that they are "pedophiles in power," that they are psychopaths, and that they resort to violence and murder against those who expose them.

830. The Statements are categorically and demonstrably false. President and Mrs. Macron are not pedophiles, are not psychopaths, have not lied about Mrs. Macron's identity, and have never directed violence or murder against any person.

831. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's

identity, of perpetrating abuses of power, of being pedophiles and psychopaths, and of directing violence and murder against those who investigate them.

832. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

833. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

834. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

835. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

836. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

837. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

838. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

839. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT TWENTY-SEVEN – FALSE LIGHT
## CANDACE EP 268 (NOVEMBER 19, 2025)

840. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

841. Defendant published the statements quoted in Count Twenty-Six ¶ 824 on November 19, 2025, during *Candace* Ep 268, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

842. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

843. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a man and is a man, has lied about her identity, is a pedophile, is a psychopath, and is willing to resort to violence and murder to conceal the truth.

844. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her identity; she is not a pedophile; she is not a psychopath; and she has never directed violence or murder against any person.

845. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, that they were "caught" doing so, that they are "pedophiles in power," that they are psychopaths, and that they resort to violence and murder against those who expose them.

846. The Statements are categorically and demonstrably false. President and Mrs. Macron are not pedophiles, are not psychopaths, have not lied about Mrs. Macron's identity, and have never directed violence or murder against any person.

847. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

848. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity, of perpetrating abuses of power, of being pedophiles and psychopaths, and of directing violence and murder against those who investigate them.

849. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

850. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

851. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

852. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

853. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

854. Defendant published the Statements maliciously, willfully, wantonly, with

common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

855. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT TWENTY-EIGHT – DEFAMATION BY IMPLICATION CANDACE EP 268 (NOVEMBER 19, 2025)

856. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

857. Defendant published statements (a) and (c) quoted in Count Twenty-Six ¶ 824 on November 19, 2025, during *Candace* Ep 268, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

858. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that President and Mrs. Macron are pedophiles, that they are psychopaths, that they have lied about Mrs. Macron's identity, that they were "caught" and sued Owens to conceal that fact, and that they are willing to resort to murder to protect themselves (the "Implications").

859. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

860. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron was born a man and is a man, has lied about her identity, is a pedophile, is a psychopath, and is willing to resort to violence and murder to conceal the truth.

861. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her identity; she is not a pedophile; she is not a psychopath; and she has never directed violence or murder against any person.

862. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, that they were "caught" doing so, that they are "pedophiles in power," that they are psychopaths, and that they resort to violence and murder against those who expose them.

863. The Implications are categorically and demonstrably false. President and Mrs. Macron are not pedophiles, are not psychopaths, have not lied about Mrs. Macron's identity, and have never directed violence or murder against any person.

864. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity, of perpetrating abuses of power, of being pedophiles and psychopaths, and of directing violence and murder against those who investigate them. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they

accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

865. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, fraud, and murder), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

866. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

867. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

868. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

869. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

870. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

871. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

872. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT TWENTY-NINE – DEFAMATION**
**CANDACE EP 269 (NOVEMBER 20, 2025)**

873. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

874. Defendant published the following false and defamatory statements of fact on November 20, 2025, during *Candace* Ep 269, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) Now we're in 2025 and I decide that actually I'm going to turn this down to an entire season because who are you French First Man to tell us that we can't speak about the story.

(b) It really kind of, um, it, it, it shocks your core that the press could be in on telling a lie this big.

(c) I just look at Brigitte Macron and I am telling you, you are looking at an utter psychopath in my view.

(d) And what terrifies me the most by the way, is how far the length that they are going through, uh, to protect Brigitte, who the hell is Brigitte Macron?

(e) Cause it ain't Brigitte Trogneux. I can tell you that for free. Who is this person?

(f) They would rather protect Brigitte even though the whole world no longer believes that Brigitte Macron was born a female, right?

875. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

876. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

877. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a man and is a man, that she is not Brigitte Trogneux, that she has stolen another person's identity, that she has

lied to the public about who she is, and that she is a "psychopath."

878. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she is Brigitte Trogneux; she has not stolen any person's identity; she has never lied about her identity; and she is not a "psychopath."

879. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, that they have enlisted the press in maintaining that lie, and that they have abused legal process to silence those who report the truth.

880. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity, have not enlisted the press in any cover-up, and have not abused legal process; they have sought only to correct demonstrable falsehoods.

881. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, of lying to the public about Mrs. Macron's identity, of perpetrating abuses of power, and of corrupting the press.

882. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

883. Defendant knew the substantial danger of injury to President and Mrs. Macron and

their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

884. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

885. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

886. As a direct and proximate result of Defendant's false Statements, President and

Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

887. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

888. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

889. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT THIRTY – FALSE LIGHT**
**CANDACE EP 269 (NOVEMBER 20, 2025)**

890. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

891. Defendant published the statements quoted in Count Twenty-Nine ¶ 874 on November 20, 2025, during *Candace* Ep 269, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public,

and constitute libel.

892. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

893. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a man and is a man, that she is not Brigitte Trogneux, that she has stolen another person's identity, that she has lied to the public about who she is, and that she is a "psychopath."

894. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she is Brigitte Trogneux; she has not stolen any person's identity; she has never lied about her identity; and she is not a "psychopath."

895. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, that they have enlisted the press in maintaining that lie, and that they have abused legal process to silence those who report the truth.

896. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity, have not enlisted the press in any cover-up, and have not abused legal process; they have sought only to correct demonstrable falsehoods.

897. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

898. The false light created by Defendant would be highly offensive to a reasonable

person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, of lying to the public about Mrs. Macron's identity, of perpetrating abuses of power, and of corrupting the press.

899. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

900. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

901. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

902. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

903. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

904. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

905. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT THIRTY-ONE – DEFAMATION BY IMPLICATION**
**CANDACE EP 269 (NOVEMBER 20, 2025)**

906. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

907. Defendant published statements (a), (d), (e), and (f) quoted in Count Twenty-Nine ¶ 874 on November 20, 2025, during *Candace* Ep 269, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

908. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is a man who stole the identity of Brigitte Trogneux, that President and Mrs. Macron have lied to the public about it, and that powerful actors—including the press and the French state—are protecting them (the "Implications").

909. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

910. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron was born a man and is a man, that she is not Brigitte Trogneux, that she has stolen another person's identity, and that she has lied to the public about who she is.

911. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she is Brigitte Trogneux; she has not stolen any person's identity; and she has never lied about her identity.

912. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron

have lied to the public about Mrs. Macron's identity, that they have enlisted the press in maintaining that lie, and that they have abused legal process to silence those who report the truth.

913. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity, have not enlisted the press in any cover-up, and have not abused legal process; they have sought only to correct demonstrable falsehoods.

914. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, of lying to the public about Mrs. Macron's identity, of perpetrating abuses of power, and of corrupting the press. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

915. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

916. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

917. For the reasons set forth in detail above, Defendant made the defamatory

Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

918. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

919. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

920. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

921. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

922. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT THIRTY-TWO – DEFAMATION**
**CANDACE EP 284 (JANUARY 5, 2026)**

923. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

924. Defendant published the following false and defamatory statements of fact on January 5, 2026, during *Candace* Ep 284, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) We are still talking about Brigitte Macron being born a dude.

(b) A real headline today, by the way, Brigitte Macron, who was quite literally born a male . . .

(c) No, it is proof that France has now created laws and are willing to try people for telling the truth if the person who is lying feels bullied.

925. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

926. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

927. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a male and that she has lied about her sex and identity.

928. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux, and she has never lied about her sex or her identity.

929. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity.

930. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity.

931. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex.

932. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft,

forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

933. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

934. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

935. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

936. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

937. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

938. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

939. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT THIRTY-THREE – FALSE LIGHT
## CANDACE EP 284 (JANUARY 5, 2026)

940. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

941. Defendant published the statements quoted in Count Thirty-Two ¶ 924 on January 5, 2026, during *Candace* Ep 284, which Defendant published on CandaceOwens.com, YouTube,

Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

942. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

943. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a male and that she has lied about her sex and identity.

944. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux, and she has never lied about her sex or her identity.

945. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity.

946. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity.

947. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

948. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them

in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex.

949. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

950. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

951. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

952. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

953. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

954. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

955. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT THIRTY-FOUR – DEFAMATION BY IMPLICATION
## CANDACE EP 284 (JANUARY 5, 2026)

956. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

957. Defendant published statements (b) and (c) quoted in Count Thirty-Two ¶ 924 on January 5, 2026, during *Candace* Ep 284, which Defendant published on CandaceOwens.com,

YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

958. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron was born male and has lied about her sex and identity (the "Implications").

959. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

960. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron was born a male and that she has lied about her sex and identity.

961. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux, and she has never lied about her sex or her identity.

962. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity.

963. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity.

964. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them

in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

965. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

966. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

967. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

968. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

969. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

970. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

971. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity

and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

972. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT THIRTY-FIVE – DEFAMATION**
**X POSTS (JANUARY 5, 2026)**

973. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

974. Defendant published the following false and defamatory statements of fact on January 5, 2026, in two posts on her X account, @RealCandaceO. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) It is my honest to God belief that Jean Michel Trogneux was involved in some really sinister stuff during his military years, which made his transition a requirement. Brigitte is dangerous. That he wakes up everyday, puts on a fake wig, lipstick and mascara and declares war on those who know his true identity is nothing short of psychopathic.
>
> (b) I do not believe Jean Michel Trogneux transitioned because he felt he was a woman. I believe he transitioned because whatever he did during his military years overseas was so demented that he needed an entirely new face and identity. Brigitte mentioning 'MKUltra' a shocking 18 times in his lawsuit against me was a confession.

975. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

976. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

977. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that she is Jean Michel Trogneux, that she served in the military and did something "sinister" and "demented"

there, that she adopted a female identity to conceal it, and that she is "dangerous" and "psychopathic."

978. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she is not Jean Michel Trogneux; she has never served in any military; she has never committed any "sinister" or "demented" crime; and she has never adopted or concealed an identity.

979. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity, and that they confessed as much in the Delaware Action.

980. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity and confessed to nothing in the Delaware Action.

981. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity.

982. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the

likely effect of harming them.

983. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

984. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

985. Defendant had no applicable privilege or legal authorization to publish the

Statements, or, if she did, she abused that privilege or authorization.

986. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

987. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

988. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

989. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT THIRTY-SIX – FALSE LIGHT
## X POSTS (JANUARY 5, 2026)

990. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

991. Defendant published the statements quoted in Count Thirty-Five ¶ 974 on January 5, 2026, in two posts on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent

form that remains accessible to the public, and constitute libel.

992. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

993. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that she is Jean Michel Trogneux, that she served in the military and did something "sinister" and "demented" there, that she adopted a female identity to conceal it, and that she is "dangerous" and "psychopathic."

994. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she is not Jean Michel Trogneux; she has never served in any military; she has never committed any "sinister" or "demented" crime; and she has never adopted or concealed an identity.

995. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity and that they confessed as much in the Delaware Action.

996. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity and confessed to nothing in the Delaware Action.

997. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the

likely effect of harming them.

998. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity.

999. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1000. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1001. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1002. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1003. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1004. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1005. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT THIRTY-SEVEN – DEFAMATION BY IMPLICATION X POSTS (JANUARY 5, 2026)

1006. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1007. Defendant published the statements quoted in Count Thirty-Five ¶ 974 on January 5, 2026, in two posts on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1008. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is a man named Jean Michel Trogneux who did something "sinister" in the military and assumed a female identity to conceal it, and that the Macrons have confessed as much (the "Implications").

1009. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1010. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron is a man, that she is Jean Michel Trogneux, that she served in the military and did something "sinister" and "demented" there, that she adopted a female identity to conceal it, and that she is "dangerous" and "psychopathic."

1011. The Implications are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she is not Jean Michel Trogneux; she has never served in any military; she has never committed any "sinister" or "demented" crime; and she has never adopted or concealed an identity.

1012. Additionally, the Implications are statements of (false) fact and are reasonably

understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity and that they confessed as much in the Delaware Action.

1013. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity and confessed to nothing in the Delaware Action.

1014. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

1015. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1016. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1017. For the reasons set forth in detail above, Defendant made the defamatory

Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1018. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1019. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1020. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1021. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1022. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT THIRTY-EIGHT – DEFAMATION
## CANDACE EP 285 (JANUARY 6, 2026)

1023. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1024. Defendant published the following false and defamatory statements of fact on January 6, 2026, during *Candace* Ep 285, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) Brigitte Macron believes the truth about his gender is a form of harassment.

(b) This is very chilling. They are sentencing these people to jail. . . . It doesn't matter whether or not I did these things to Emmanuel when he was 14. It doesn't actually matter. What matters is that you're hurting my feelings, bringing them up. . . . It doesn't matter if it's true. It matters if it hurt Brigitte's feelings. . . . She feels harassed by the truth. You can harass people with the truth now. . . . [T]his is not defamation. She's not making

> the argument that these things are untrue. She's making the argument that her feelings are hurt because you know that she was born with a penis.

1025. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1026. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1027. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron's true sex and gender are male and that she has lied about them.

1028. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; and she has never lied about her sex, gender, or identity.

1029. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and gender.

1030. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or gender.

1031. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of lying about her sex and gender.

1032. The Statements are defamatory per se, and people who heard them understood them

to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1033. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1034. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1035. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1036. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1037. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1038. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1039. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**<u>COUNT THIRTY-NINE – FALSE LIGHT</u>**
**<u>CANDACE EP 285 (JANUARY 6, 2026)</u>**

1040. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1041. Defendant published the statements quoted in Count Thirty-Eight ¶ 1024 on January 6, 2026, during *Candace* Ep 285, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1042. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1043. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron's true sex and gender are male and that she has lied about them.

1044. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; and she has never lied about her sex, gender, or identity.

1045. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and gender.

1046. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or gender.

1047. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect

of harming them.

1048. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of lying about her sex and gender.

1049. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1050. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction

Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1051. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1052. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1053. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1054. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1055. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FORTY – DEFAMATION BY IMPLICATION
## CANDACE EP 285 (JANUARY 6, 2026)

1056. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1057. Defendant published the statements quoted in Count Thirty-Eight ¶ 1024 on January 6, 2026, during *Candace* Ep 285, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1058. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron's true sex and gender are male and that she has lied about them (the "Implications").

1059. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1060. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron's true sex and gender are male and that she has lied about them.

1061. The Implications are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; and she has never lied about her sex, gender, or identity.

1062. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and gender.

1063. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or gender.

1064. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of lying about her sex and gender.

1065. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1066. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1067. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity,

perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1068. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1069. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1070. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1071. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to

President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1072. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT FORTY-ONE – DEFAMATION**
**CANDACE EP 286 (JANUARY 7, 2026)**

1073. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1074. Defendant published the following false and defamatory statements of fact on January 7, 2026, during *Candace* Ep 286, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) Like Brigitte Macron is suing people for knowing the truth about crimes that she committed when she was a man.

1075. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1076. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1077. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was previously a man and that she committed crimes while she was a man.

1078. The Statements are categorically and demonstrably false. Mrs. Macron has never been a man; she was born a woman named Brigitte Trogneux; and she has committed no crime.

1079. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's identity.

1080. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity.

1081. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of unspecified "crimes" and accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity.

1082. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, fraud, and unspecified crimes committed "when she was a man"), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1083. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1084. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1085. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1086. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1087. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable

sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1088. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1089. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT FORTY-TWO – FALSE LIGHT**
**CANDACE EP 286 (JANUARY 7, 2026)**

1090. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1091. Defendant published the statements quoted in Count Forty-One ¶ 1074 on January 7, 2026, during *Candace* Ep 286, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1092. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1093. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was previously a man, that

she committed crimes while she was a man, and that she is using the courts to punish and imprison people who know the truth about those crimes.

1094. The Statements are categorically and demonstrably false. Mrs. Macron has never been a man; she was born a woman named Brigitte Trogneux; and she has committed no crime.

1095. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's identity.

1096. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity.

1097. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, fraud, and unspecified crimes committed "when she was a man"), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1098. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of unspecified "crimes" and accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity.

1099. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1100. For the reasons set forth in detail above, Defendant made the defamatory

Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1101. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1102. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1103. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1104. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1105. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FORTY-THREE – DEFAMATION BY IMPLICATION
## CANDACE EP 286 (JANUARY 7, 2026)

1106. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1107. Defendant published the statements quoted in Count Forty-One ¶ 1074 on January 7, 2026, during *Candace* Ep 286, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1108. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron lived as a man and committed crimes in that identity (the "Implications").

1109. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1110. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron was previously a man and that she committed crimes while she was a man.

1111. The Implications are categorically and demonstrably false. Mrs. Macron has never been a man; she was born a woman named Brigitte Trogneux; and she has committed no crime.

1112. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's identity.

1113. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity.

1114. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of unspecified "crimes" and accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

1115. The Implications are defamatory per se, and people who heard them understood

them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, fraud, and unspecified crimes committed "when she was a man"), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1116. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1117. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1118. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1119. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1120. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1121. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1122. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT FORTY-FOUR – DEFAMATION**
**CANDACE EP 290 (JANUARY 14, 2026)**

1123. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1124. Defendant published the following false and defamatory statements of fact on January 14, 2026, during *Candace* Ep 290, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) For example, even, uh, unrelatedly, but [] Brigitte and Emmanuel Macron, they filed a lawsuit. We have so much power. What are we going to do to stop this thing? She's getting into the story, is getting to the heart of evil and how the world is run to figure out that Brigitte was born a man. What are we gonna do? We were going to file a lawsuit.

1125. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1126. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1127. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a man and has lied about her identity.

1128. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux and she has never lied about her identity.

1129. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied about Mrs. Macron's identity.

1130. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity.

1131. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule,

or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity.

1132. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud) and of abuse of process, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1133. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1134. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1135. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1136. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1137. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1138. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1139. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT FORTY-FIVE – FALSE LIGHT**
**CANDACE EP 290 (JANUARY 14, 2026)**

1140. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1141. Defendant published the statements quoted in Count Forty-Four ¶ 1124 on January 14, 2026, during *Candace* Ep 290, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1142. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1143. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a man and has lied about her identity.

1144. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux and she has never lied about her identity.

1145. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied about Mrs. Macron's identity.

1146. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity.

1147. By publishing the Statements, Defendant has portrayed President and Mrs. Macron

in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud) and of abuse of process, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1148. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity.

1149. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1150. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1151. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1152. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1153. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1154. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1155. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT FORTY-SIX – DEFAMATION BY IMPLICATION**
**CANDACE EP 290 (JANUARY 14, 2026)**

1156. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1157. Defendant published the statements quoted in Count Forty-Four ¶ 1124 on January 14, 2026, during *Candace* Ep 290, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1158. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron was born a man, that the Macrons know it, and have lied about Mrs. Macron's identity (the "Implications").

1159. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1160. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron was born a man and has lied about her identity.

1161. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux and she has never lied about her identity.

1162. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron

have lied about Mrs. Macron's identity.

1163. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's identity.

1164. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

1165. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud) and of abuse of process, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1166. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1167. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1168. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1169. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1170. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable

sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1171. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1172. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT FORTY-SEVEN – DEFAMATION**
**CANDACE EP 291 (JANUARY 15, 2026)**

1173. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1174. Defendant published the following false and defamatory statements of fact on January 15, 2026, during *Candace* Ep 291, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) If you have to say I'm a man, which he then follows up by saying "I'm a real man," you probably aren't one. Hey, Brigitte, if you got a lawsuit to prove you're a woman, you're probably not one.

1175. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1176. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in

connection with the Statements.

1177. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that she is not a woman, and that she has lied about her sex and identity.

1178. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1179. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity.

1180. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity.

1181. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity.

1182. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud) and of abuse of process, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1183. Defendant knew the substantial danger of injury to President and Mrs. Macron and

their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1184. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1185. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1186. As a direct and proximate result of Defendant's false Statements, President and

Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1187. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1188. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1189. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FORTY-EIGHT – FALSE LIGHT
## CANDACE EP 291 (JANUARY 15, 2026)

1190. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1191. Defendant published the statements quoted in Count Forty-Seven ¶ 1174 on January 15, 2026, during *Candace* Ep 291, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public,

and constitute libel.

1192. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1193. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that she is not a woman, and that she has lied about her sex and identity.

1194. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1195. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity.

1196. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity.

1197. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft and fraud) and of abuse of process, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1198. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex

and identity.

1199. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1200. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1201. Defendant had no applicable privilege or legal authorization to publish the

Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1202. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1203. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1204. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1205. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FORTY-NINE – DEFAMATION BY IMPLICATION CANDACE EP 291 (JANUARY 15, 2026)

1206. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1207. Defendant published the statements quoted in Count Forty-Seven ¶ 1174 on January 15, 2026, during *Candace* Ep 291, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked

on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1208. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is a man who is lying about her sex (the "Implications").

1209. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1210. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron is a man, that she is not a woman, and that she has lied about her sex and identity.

1211. The Implications are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1212. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity.

1213. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity.

1214. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them

in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

1215. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud) and of abuse of process, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1216. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1217. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1218. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1219. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1220. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1221. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity

and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1222. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FIFTY – DEFAMATION
## CANDACE EP 300 (FEBRUARY 2, 2026)

1223. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1224. Defendant published the following false and defamatory statements of fact on February 2, 2026, during *Candace* Ep 300, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) you can't talk about kids without talking about France. Ain't that right? Brigitte. What's up, dude? What up, my dude? How you doing? It's going to sue me for knowing this is their new thing. We'll just sue you for now and we'll sue you for knowing that we're devil worshipers.

1225. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1226. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1227. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man and that she is a "devil worshiper."

1228. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux, and she is not a "devil worshiper."

1229. The Statements are statements of (false) fact and are reasonably understood as

statements of (false) fact—specifically, as assertions that President and Mrs. Macron are implicated in the sexual abuse of children and that they are "devil worshipers."

1230. The Statements are categorically and demonstrably false. Neither President nor Mrs. Macron has abused or exploited any child, in Morocco or anywhere else. President and Mrs. Macron are not "devil worshipers."

1231. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity and of involvement in the sexual abuse of children.

1232. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, fraud, and the sexual abuse of children), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1233. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1234. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1235. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1236. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1237. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable

sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1238. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1239. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FIFTY-ONE – FALSE LIGHT
## CANDACE EP 300 (FEBRUARY 2, 2026)

1240. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1241. Defendant published the statements quoted in Count Fifty ¶ 1224 on February 2, 2026, during *Candace* Ep 300, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1242. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1243. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man and that she is a

"devil worshiper."

1244. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux, and she is not a "devil worshiper."

1245. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron are implicated in the sexual abuse of children and that they are "devil worshipers."

1246. The Statements are categorically and demonstrably false. Neither President nor Mrs. Macron has abused or exploited any child, in Morocco or anywhere else. President and Mrs. Macron are not "devil worshipers."

1247. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, fraud, and the sexual abuse of children), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1248. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity and of involvement in the sexual abuse of children.

1249. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1250. For the reasons set forth in detail above, Defendant made the defamatory

Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1251. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1252. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1253. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1254. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1255. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT FIFTY-TWO – DEFAMATION BY IMPLICATION**
**CANDACE EP 300 (FEBRUARY 2, 2026)**

1256. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1257. Defendant published the statements quoted in Count Fifty ¶ 1224 on February 2, 2026, during *Candace* Ep 300, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1258. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is a man and that President and Mrs. Macron are implicated in the sexual abuse of

children (the "Implications").

1259. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1260. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron is a man and that she is a "devil worshiper."

1261. The Implications are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux, and she is not a "devil worshiper."

1262. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron are implicated in the sexual abuse of children and that they are "devil worshipers."

1263. The Implications are categorically and demonstrably false. Neither President nor Mrs. Macron has abused or exploited any child, in Morocco or anywhere else. President and Mrs. Macron are not "devil worshipers."

1264. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's identity, and of involvement in the sexual abuse of children. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

1265. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, fraud, and the sexual abuse of children), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1266. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1267. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1268. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1269. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1270. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1271. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1272. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FIFTY-THREE – DEFAMATION CANDACE EP 302 (FEBRUARY 4, 2026)

1273. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1274. Defendant published the following false and defamatory statements of fact on February 4, 2026, during *Candace* Ep 302, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) There are more emails referencing the fact that Emmanuel Macron is gay. And I think the biggest clue was that he married a dude, but apparently now people are willing to accept that Emmanuel Macron is not a straight Catholic man by any stretch of an imagination.

1275. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1276. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1277. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that President Macron "married a dude," and that the Macrons have lied to the public about Mrs. Macron's sex.

1278. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; President Macron married a woman; and the Macrons have never lied about Mrs. Macron's sex.

1279. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and about the nature of their marriage.

1280. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or about their marriage.

1281. The Statements are defamatory, and people who heard them understood them to be

defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and about their marriage.

1282. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1283. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1284. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1285. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1286. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1287. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1288. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity

and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1289. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT FIFTY-FOUR – FALSE LIGHT**
**CANDACE EP 302 (FEBRUARY 4, 2026)**

1290. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1291. Defendant published the statements quoted in Count Fifty-Three ¶ 1274 on February 4, 2026, during *Candace* Ep 302, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1292. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1293. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that President Macron "married a dude," and that the Macrons have lied to the public about Mrs. Macron's sex.

1294. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; President Macron married a woman; and the Macrons have never lied about Mrs. Macron's sex.

1295. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to

the public about Mrs. Macron's sex and about the nature of their marriage.

1296. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or about their marriage.

1297. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1298. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and about their marriage.

1299. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1300. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1301. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1302. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1303. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1304. Defendant published the Statements maliciously, willfully, wantonly, with

common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1305. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FIFTY-FIVE – DEFAMATION BY IMPLICATION
## CANDACE EP 302 (FEBRUARY 4, 2026)

1306. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1307. Defendant published the statements quoted in Count Fifty-Three ¶ 1274 on February 4, 2026, during *Candace* Ep 302, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1308. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is a man and that the Macrons' marriage is therefore a public deception (the "Implications").

1309. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1310. The Implications are statements of (false) fact and are reasonably understood as

factual—specifically, as assertions that Mrs. Macron is a man, that President Macron "married a dude," and that the Macrons have lied to the public about Mrs. Macron's sex.

1311. The Implications are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; President Macron married a woman; and the Macrons have never lied about Mrs. Macron's sex.

1312. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and about the nature of their marriage.

1313. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or about their marriage.

1314. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and about their marriage.

1315. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1316. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause

injury to President and Mrs. Macron by making the Implications.

1317. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1318. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1319. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of

future business opportunities and such other compounding and growing losses as will be shown at trial.

1320. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1321. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1322. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FIFTY-SIX – DEFAMATION
## X POST (FEBRUARY 4, 2026)

1323. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1324. Defendant published the following false and defamatory statements of fact on February 4, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) Today on the show: 1) Epstein files reveal that Emmanuel Macron has a boyfriend. Know to some as—his wife. 2) I receive an explosive series of tips that Erika Kirk was not with her mother on September 10th 3) The Elites worship Satan.

1325. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1326. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1327. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man and President Macron's "boyfriend," and that the Macrons have lied to the public about Mrs. Macron's sex.

1328. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1329. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is President Macron's "boyfriend" rather than his wife, and that the Macrons have deceived the public about their marriage.

1330. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and is President Macron's wife and the Macrons have not deceived the public about their marriage.

1331. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and their marriage.

1332. The Statements are defamatory per se, and people who heard them understood them

to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1333. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1334. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1335. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1336. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1337. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1338. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1339. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FIFTY-SEVEN – FALSE LIGHT
## X POST (FEBRUARY 4, 2026)

1340. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1341. Defendant published the statements quoted in Count Fifty-Six ¶ 1324 on February 4, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1342. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1343. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man and President Macron's "boyfriend," and that the Macrons have lied to the public about Mrs. Macron's sex.

1344. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1345. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is President Macron's "boyfriend" rather than his wife, and that the Macrons have deceived the public about their marriage.

1346. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and is President Macron's wife and the Macrons have not deceived the public about their marriage.

1347. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1348. The false light created by Defendant would be highly offensive to a reasonable

person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and their marriage.

1349. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1350. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1351. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1352. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1353. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1354. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1355. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT FIFTY-EIGHT – DEFAMATION BY IMPLICATION**
**X POST (FEBRUARY 4, 2026)**

1356. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1357. Defendant published the statements quoted in Count Fifty-Six ¶ 1324 on February 4, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1358. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that President Macron's marriage is a public deception concealing that Mrs. Macron is a man (the "Implications").

1359. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1360. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron is a man and President Macron's "boyfriend," and that the Macrons have lied to the public about Mrs. Macron's sex.

1361. The Implications are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1362. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is President Macron's "boyfriend" rather than his wife, and that the Macrons have deceived the public about their marriage.

1363. The Implications are categorically and demonstrably false. Mrs. Macron is a woman and is President Macron's wife and the Macrons have not deceived the public about their

marriage.

1364. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and their marriage.

1365. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1366. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1367. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity,

perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1368. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1369. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1370. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1371. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to

President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1372. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT FIFTY-NINE – DEFAMATION
## X POST (MARCH 16, 2026)

1373. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1374. Defendant published the following false and defamatory statements of fact on March 16, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) We moved to have it dismissed out of Delaware courts, arguing they should be forced to file in Tennessee—where I live and where they will be subject to anti-slapp laws. We are arguing jurisdiction . . . . I have not moved one inch on my very public assertion that Brigitte Macron was born a male.

1375. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1376. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1377. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a male and that she has lied to the public about her sex ever since.

1378. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1379. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex.

1380. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex.

1381. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity.

1382. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1383. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1384. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1385. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1386. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1387. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable

sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1388. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1389. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SIXTY – FALSE LIGHT**
**X POST (MARCH 16, 2026)**

1390. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1391. Defendant published the statements quoted in Count Fifty-Nine ¶ 1374 on March 16, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1392. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1393. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron was born a male and that she has lied to the public about her sex ever since.

1394. The Statements are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1395. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex.

1396. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex.

1397. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1398. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity.

1399. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1400. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1401. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1402. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1403. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have

had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1404. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1405. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SIXTY-ONE – DEFAMATION BY IMPLICATION**
**X POST (MARCH 16, 2026)**

1406. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1407. Defendant published the statements quoted in Count Fifty-Nine ¶ 1374 on March 16, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1408. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron was born a male and has lied about it, and that nothing the Macrons have produced—or could produce—disturbs that claim (the "Implications").

1409. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in

connection with the Implications (and the Statements giving rise to them).

1410. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron was born a male and that she has lied to the public about her sex ever since.

1411. The Implications are categorically and demonstrably false. Mrs. Macron was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1412. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex.

1413. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex.

1414. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

1415. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely

effect of harming them.

1416. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1417. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1418. Defendant had no applicable privilege or legal authorization to publish the

Implications, or, if she did, she abused that privilege or authorization.

1419. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1420. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1421. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1422. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SIXTY-TWO – DEFAMATION**
**X POST (MARCH 30, 2026)**

1423. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1424. Defendant published the following false and defamatory statements of fact on March 30, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) And I will say again that Brigitte Macron is a dangerous military man.

1425. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1426. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1427. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man and that she served in the military as Jean-Michel Trogneux.

1428. The Statements are categorically and demonstrably false. Mrs. Macron is a woman, was born a woman named Brigitte Trogneux and has never served in any military as Jean-Michel Trogneux.

1429. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied about Mrs. Macron's sex.

1430. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex.

1431. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of concealing that she is a man.

1432. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain

and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1433. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1434. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte*

*Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1435. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1436. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1437. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1438. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1439. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT SIXTY-THREE – FALSE LIGHT
## X POST (MARCH 30, 2026)

1440. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1441. Defendant published the statements quoted in Count Sixty-Two ¶ 1424 on March

30, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1442. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1443. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man and that she served in the military as Jean-Michel Trogneux.

1444. The Statements are categorically and demonstrably false. Mrs. Macron is a woman, was born a woman named Brigitte Trogneux and has never served in any military as Jean-Michel Trogneux.

1445. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied about Mrs. Macron's sex.

1446. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex.

1447. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1448. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt,

ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of concealing that she is a man.

1449. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1450. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte*

*Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1451. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1452. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1453. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1454. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1455. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SIXTY-FOUR – DEFAMATION BY IMPLICATION**
**X POST (MARCH 30, 2026)**

1456. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1457. Defendant published the statements quoted in Count Sixty-Two ¶ 1424 on March

30, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1458. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is a dangerous man concealing a military past (the "Implications").

1459. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1460. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron is a man and that she served in the military as Jean-Michel Trogneux.

1461. The Implications are categorically and demonstrably false. Mrs. Macron is a woman, was born a woman named Brigitte Trogneux and has never served in any military as Jean-Michel Trogneux.

1462. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied about Mrs. Macron's sex.

1463. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex.

1464. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them

in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of concealing that she is a man.

1465. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1466. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1467. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1468. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1469. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1470. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1471. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1472. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SIXTY-FIVE – DEFAMATION**
**CANDACE EP 330 (APRIL 29, 2026)**

1473. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1474. Defendant published the following false and defamatory statements of fact on April 29, 2026, during *Candace* Ep 330, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) I'm rooting for you in regards to Erika, Charlie, and the french dude and his husband suing you. Continue kicking ass.

1475. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1476. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1477. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man—"the french dude"—and that she has lied to the public about her sex and identity.

1478. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1479. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man and that President Macron is "his husband," and that the Macrons have lied to the public about Mrs. Macron's sex and the nature of their marriage.

1480. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or about their marriage; President Macron is

married to a woman.

1481. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity and about the nature of their marriage.

1482. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud) and hold them out as having perpetrated a sustained public deception, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1483. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1484. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity,

perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1485. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1486. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1487. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1488. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to

President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1489. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT SIXTY-SIX – FALSE LIGHT
## CANDACE EP 330 (APRIL 29, 2026)

1490. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1491. Defendant published the statements quoted in Count Sixty-Five ¶ 1474 on April 29, 2026, during *Candace* Ep 330, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1492. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1493. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man—"the french dude"—and that she has lied to the public about her sex and identity.

1494. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1495. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man and that President

Macron is "his husband," and that the Macrons have lied to the public about Mrs. Macron's sex and the nature of their marriage.

1496. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or about their marriage; President Macron is married to a woman.

1497. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft and fraud) and hold them out as having perpetrated a sustained public deception, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1498. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity and about the nature of their marriage.

1499. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1500. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1501. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1502. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1503. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel

to clear their name in the court of public opinion.

1504. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1505. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT SIXTY-SEVEN – DEFAMATION BY IMPLICATION CANDACE EP 330 (APRIL 29, 2026)

1506. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1507. Defendant published the statements quoted in Count Sixty-Five ¶ 1474 on April 29, 2026, during *Candace* Ep 330, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1508. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is a man and that the Macrons' marriage is a public deception (the "Implications").

1509. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1510. The Implications are statements of (false) fact and are reasonably understood as

factual—specifically, as assertions that Mrs. Macron is a man—“the french dude”—and that she has lied to the public about her sex and identity.

1511. The Implications are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1512. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man and that President Macron is “his husband,” and that the Macrons have lied to the public about Mrs. Macron’s sex and the nature of their marriage.

1513. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron’s sex or about their marriage; President Macron is married to a woman.

1514. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron’s reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron’s sex and identity and about the nature of their marriage. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron’s identity and of committing crimes to conceal that deception.

1515. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their

plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud) and hold them out as having perpetrated a sustained public deception, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1516. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1517. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming*

*Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1518. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1519. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1520. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1521. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1522. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SIXTY-EIGHT – DEFAMATION**
**X POST (MAY 26, 2026)**

1523. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1524. Defendant published the following false and defamatory statements of fact on May

26, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) . . . Was this the real reason you began attacking Ron Desantis and then me, shortly after I exposed a Brigitte? . . . Did Brigitte ever call you back to inform you that although she is a dude, she's not low IQ like you? Did you know Brigitte and Emmanuel have many trusts too . . . ?

1525. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1526. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1527. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that she has lied to the public about her sex, and that Owens exposed that deception.

1528. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1529. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex.

1530. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex.

1531. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them,

including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex.

1532. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1533. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1534. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction

Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1535. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1536. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1537. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1538. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1539. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SIXTY-NINE – FALSE LIGHT**
**X POST (MAY 26, 2026)**

1540. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1541. Defendant published the statements quoted in Count Sixty-Eight ¶ 1524 on May 26, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1542. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1543. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that she has lied to the public about her sex, and that Owens exposed that deception.

1544. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1545. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex.

1546. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex.

1547. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1548. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex.

1549. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1550. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1551. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1552. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1553. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1554. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1555. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SEVENTY – DEFAMATION BY IMPLICATION**
**X POST (MAY 26, 2026)**

1556. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1557. Defendant published the statements quoted in Count Sixty-Eight ¶ 1524 on May 26, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1558. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is a man whose deception Owens exposed, and that the Macrons conceal what they are and what they have (the "Implications").

1559. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1560. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron is a man, that she has lied to the public about her sex, and that Owens exposed that deception.

1561. The Implications are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she has never lied about her sex or her identity.

1562. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex.

1563. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex.

1564. The Implications are defamatory, and people who heard them understood them to

be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex.

1565. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1566. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1567. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1568. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1569. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1570. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1571. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1572. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT SEVENTY-ONE – DEFAMATION CANDACE EP 356 (JUNE 25, 2026)

1573. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1574. Defendant published the following false and defamatory statements of fact on June 25, 2026, during *Candace* Ep 356, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) And it really has become a, a neat global governance protecting perverts. That's just the reality. The perverts are in charge. You have a president that wants me to be bankrupted by Brigitte Macron who harmed a child. That's crazy.

1575. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1576. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1577. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron harmed a child.

1578. The Statements are categorically and demonstrably false. Mrs. Macron has never harmed a child.

1579. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron belong to a "global governance protecting perverts."

1580. The Statements are categorically and demonstrably false. Neither President nor

Mrs. Macron belongs to any network of "perverts."

1581. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of harming a child and accusing President and Mrs. Macron of protecting "perverts" and perpetrating abuses of power.

1582. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse Mrs. Macron of a crime (harming a child), accuse President and Mrs. Macron of protecting "perverts," cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1583. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1584. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity,

perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1585. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1586. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1587. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1588. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to

President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1589. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT SEVENTY-TWO – FALSE LIGHT
## CANDACE EP 356 (JUNE 25, 2026)

1590. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1591. Defendant published the statements quoted in Count Seventy-One ¶ 1574 on June 25, 2026, during *Candace* Ep 356, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1592. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1593. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron harmed a child.

1594. The Statements are categorically and demonstrably false. Mrs. Macron has never harmed a child.

1595. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron belong to a "global governance protecting perverts."

1596. The Statements are categorically and demonstrably false. Neither President nor Mrs. Macron belongs to any network of "perverts."

1597. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse Mrs. Macron of a crime (harming a child), accuse President and Mrs. Macron of protecting "perverts," cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1598. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of harming a child and accusing President and Mrs. Macron of protecting "perverts" and perpetrating abuses of power.

1599. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1600. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity,

perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1601. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1602. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1603. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1604. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to

President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1605. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SEVENTY-THREE – DEFAMATION BY IMPLICATION**
**CANDACE EP 356 (JUNE 25, 2026)**

1606. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1607. Defendant published the statements quoted in Count Seventy-One ¶ 1574 on June 25, 2026, during *Candace* Ep 356, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1608. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron harmed a child and that the Macrons belong to a "global governance protecting perverts" (the "Implications").

1609. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1610. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron harmed a child.

1611. The Implications are categorically and demonstrably false. Mrs. Macron has never

harmed a child.

1612. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron belong to a "global governance protecting perverts."

1613. The Implications are categorically and demonstrably false. Neither President nor Mrs. Macron belongs to any network of "perverts."

1614. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing Mrs. Macron of harming a child and accusing President and Mrs. Macron of protecting "perverts" and perpetrating abuses of power.

1615. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse Mrs. Macron of a crime (harming a child), accuse President and Mrs. Macron of protecting "perverts," cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1616. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1617. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1618. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1619. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1620. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable

sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1621. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1622. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SEVENTY-FOUR – DEFAMATION**
**X POST (SEPTEMBER 3, 2026)**

1623. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1624. Defendant published the following false and defamatory statements of fact on September 3, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) The wig looks better but Brigitte really can't help the ingrained military strut from his Jean Michel Trogneux days.

1625. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1626. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1627. The Statements are statements of (false) fact and are reasonably understood as

statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that she is Jean-Michel Trogneux, that she served in the military under that name, and that she disguises herself to conceal it.

1628. The Statements are categorically and demonstrably false. Mrs. Macron is a woman, is not Jean-Michel Trogneux, has never served in any military, and disguises nothing; Jean-Michel Trogneux is her older brother and lives in Amiens, France.

1629. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity and that Jean-Michel Trogneux is living under his sister's identity as Mrs. Macron.

1630. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity, and Jean-Michel Trogneux is not living as Mrs. Macron.

1631. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, forgery, and fraud, and of lying to the public about Mrs. Macron's sex and identity.

1632. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the

likely effect of harming them.

1633. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1634. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1635. Defendant had no applicable privilege or legal authorization to publish the

Statements, or, if she did, she abused that privilege or authorization.

1636. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1637. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1638. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1639. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## <u>COUNT SEVENTY-FIVE – FALSE LIGHT</u><br><u>X POST (SEPTEMBER 3, 2026)</u>

1640. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1641. Defendant published the statements quoted in Count Seventy-Four ¶ 1624 on September 3, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and

permanent form that remains accessible to the public, and constitute libel.

1642. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1643. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that she is Jean-Michel Trogneux, that she served in the military under that name, and that she disguises herself to conceal it.

1644. The Statements are categorically and demonstrably false. Mrs. Macron is a woman, is not Jean-Michel Trogneux, has never served in any military, and disguises nothing; Jean-Michel Trogneux is her older brother and lives in Amiens, France.

1645. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity and that Jean-Michel Trogneux is living under his sister's identity as Mrs. Macron.

1646. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity, and Jean-Michel Trogneux is not living as Mrs. Macron.

1647. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1648. The false light created by Defendant would be highly offensive to a reasonable

person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, forgery, and fraud, and of lying to the public about Mrs. Macron's sex and identity.

1649. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1650. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1651. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1652. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1653. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1654. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1655. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT SEVENTY-SIX – DEFAMATION BY IMPLICATION X POST (SEPTEMBER 3, 2026)

1656. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1657. Defendant published the statements quoted in Count Seventy-Four ¶ 1624 on September 3, 2026, in a post on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1658. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is in fact Jean-Michel Trogneux, a former serviceman living in disguise under his sister's identity, and that the Macrons have concealed it (the "Implications").

1659. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1660. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron is a man, that she is Jean-Michel Trogneux, that she served in the military under that name, and that she disguises herself to conceal it.

1661. The Implications are categorically and demonstrably false. Mrs. Macron is a woman, is not Jean-Michel Trogneux, has never served in any military, and disguises nothing; Jean-Michel Trogneux is her older brother and lives in Amiens, France.

1662. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity and that Jean-Michel Trogneux is living under his sister's identity as Mrs. Macron.

1663. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity, and Jean-Michel Trogneux is not

living as Mrs. Macron.

1664. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft, forgery, and fraud, and of lying to the public about Mrs. Macron's sex and identity. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

1665. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1666. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1667. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1668. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1669. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1670. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court

of public opinion.

1671. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1672. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SEVENTY-SEVEN – DEFAMATION**
**THIS PAST WEEKEND W/ THEO VON (OCTOBER 5, 2026)**

1673. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1674. Defendant published the following false and defamatory statements of fact on October 5, 2026, during her appearance on Episode #688 of the podcast *This Past Weekend w/ Theo Von*, which was published on YouTube, Spotify, Apple Podcasts, and Amazon Music. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

(a) For him, they never sued him, but they came after his businesses. You know, it's a squeeze, like I was talking about. One of the mechanisms is they'll try to bankrupt you, kind of terrify you. They went after other journalists on the case and sued them for defamation. Never on the point that Brigitte was born Jean-Michel Trogneux. My lawsuit is not about whether or not Brigitte Macron is a man. And that's what they do, is they try to win these cases on a technicality. Like she's suing me, like I said, for mentioning MKUltra, for saying that she stole her brother's ide[ntity] because she didn't steal it or whatever. So accusing somebody of theft is accusing somebody of being a criminal. And that's basically what they did. And then they tell the press. And so the press runs, Candace Owens is being sued for defamation for calling Brigitte a man. Read the case. I'm not being sued for calling Brigitte a man.

(b) We just read the front. Nobody reads the case. And that's the problem with the press. And then what happens is you then go on to AI and it scrapes.

> And so it's Candace Owens is being sued for saying Brigitte's a man. I'm not being sued for saying Brigitte's a man. [] She's never sued anyone for saying that she was born a man.

(c) One of the most protected people ever, Brigitte.

(d) Is she really is the question. . . . Is really she? Or is really he? If these— To he or not to he, that is the question.

(e) The little crazy story, but Brigitte, I'm not taking back anything that I've said. That's for sure.

(f) Instead, they give you the AI model, which scrapes the mainstream media, which is controlled by the state apparatus. And they give you, this is a debunk. Brigitte, this is a debunk. Yeah, there ain't no wiener here. Everything's debunked. And so you're just getting the Department of War's narrative.

1675. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1676. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1677. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that she was born Jean-Michel Trogneux, and that she has lied about her sex and identity.

1678. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she is not Jean-Michel Trogneux; and she has never lied about her sex or her identity.

1679. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity, and that they have never disputed that Mrs. Macron was born a man.

1680. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity, and have repeatedly denied that Mrs. Macron was born a man.

1681. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity, and of perpetrating abuses of power.

1682. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud) and of abuse of process, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1683. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1684. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1685. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1686. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1687. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1688. Defendant published the Statements maliciously, willfully, wantonly, with

common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1689. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT SEVENTY-EIGHT – FALSE LIGHT THIS PAST WEEKEND W/ THEO VON (OCTOBER 5, 2026)

1690. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1691. Defendant published the statements quoted in Count Seventy-Seven ¶ 1674 on October 5, 2026, during her appearance on Episode #688 of the podcast *This Past Weekend w/ Theo Von*, which was published on YouTube, Spotify, Apple Podcasts, and Amazon Music. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1692. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1693. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man, that she was born Jean-Michel Trogneux, and that she has lied about her sex and identity.

1694. The Statements are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she is not Jean-Michel Trogneux; and she has never lied about her sex or her identity.

1695. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity, and that they have never disputed that Mrs. Macron was born a man.

1696. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity, and have repeatedly denied that Mrs. Macron was born a man.

1697. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud) and of abuse of process, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1698. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity, and of perpetrating abuses of power.

1699. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1700. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1701. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1702. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1703. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have

had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1704. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1705. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT SEVENTY-NINE – DEFAMATION BY IMPLICATION**
**THIS PAST WEEKEND W/ THEO VON (OCTOBER 5, 2026)**

1706. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1707. Defendant published statements (a), (c), (d), and (f) quoted in Count Seventy-Seven ¶ 1674 on October 5, 2026, during her appearance on Episode #688 of the podcast *This Past Weekend w/ Theo Von*, which was published on YouTube, Spotify, Apple Podcasts, and Amazon Music. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1708. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron was born a man named Jean-Michel Trogneux and is lying about it and that the Macrons know it and have lied about it (the "Implications").

1709. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1710. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron is a man, that she was born Jean-Michel Trogneux, and that she has lied about her sex and identity.

1711. The Implications are categorically and demonstrably false. Mrs. Macron is a woman and was born a woman named Brigitte Trogneux; she is not Jean-Michel Trogneux; and she has never lied about her sex or her identity.

1712. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity, and that they have never disputed that Mrs. Macron was born a man.

1713. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity, and have repeatedly denied that Mrs. Macron was born a man.

1714. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity, and of perpetrating abuses of power. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse

President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

1715. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud) and of abuse of process, cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1716. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1717. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1718. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1719. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1720. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1721. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1722. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT EIGHTY – DEFAMATION
## CANDACE EP 402 (OCTOBER 14, 2026)

1723. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1724. Defendant published the following false and defamatory statements of fact on October 14, 2026, during *Candace* Ep 402, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) I mean, that's what we were hitting at when I started looking into the Brigitte story. I was like, this person doesn't exist. This person doesn't exist. You can't just not exist for 30 years and then gaslight the public and be like, I have enough power and resources to gaslight you as to why I can't produce a single photo of me across 30 years of my life. Like this is the Brigitte Macron story. No one's asking for blood. Nope, no one needs to see private parts. It's not that extreme. You allegedly had three kids, some photos raising them, pregnant in the hospital, birthday parties, nothing, nothing. It's just a dark hole. And then they look at us and they go, you're crazy. How dare you think this?

1725. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1726. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1727. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron "doesn't exist," that her identity is fabricated, that she did not bear her three children, and that she is using her power and resources to "gaslight the public" about who she is.

1728. The Statements are categorically and demonstrably false. Mrs. Macron exists and was born Brigitte Trogneux in Amiens, France, on April 13, 1953; she gave birth to three children; and she has never fabricated her identity or deceived the public about it.

1729. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have fabricated Mrs. Macron's identity and are using their power and resources to deceive the public about it.

1730. The Statements are categorically and demonstrably false. President and Mrs. Macron have not fabricated Mrs. Macron's identity and have not used their power or resources to deceive the public.

1731. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity fraud, of lying to the public about Mrs. Macron's identity and the birth of her children, and of perpetrating abuses of power to conceal it.

1732. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1733. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1734. For the reasons set forth in detail above, Defendant made the defamatory

Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1735. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1736. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1737. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1738. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1739. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT EIGHTY-ONE – FALSE LIGHT
## CANDACE EP 402 (OCTOBER 14, 2026)

1740. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1741. Defendant published the statements quoted in Count Eighty ¶ 1724 on October 14, 2026, during *Candace* Ep 402, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1742. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1743. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron "doesn't exist," that her identity is fabricated, that she did not bear her three children, and that she is using her power and resources to "gaslight the public" about who she is.

1744. The Statements are categorically and demonstrably false. Mrs. Macron exists and was born Brigitte Trogneux in Amiens, France, on April 13, 1953; she gave birth to three children; and she has never fabricated her identity or deceived the public about it.

1745. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have fabricated Mrs. Macron's identity and are using their power and resources to deceive the public about it.

1746. The Statements are categorically and demonstrably false. President and Mrs. Macron have not fabricated Mrs. Macron's identity and have not used their power or resources to deceive the public.

1747. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1748. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity fraud, of lying to the public about

Mrs. Macron's identity and the birth of her children, and of perpetrating abuses of power to conceal it.

1749. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1750. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1751. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1752. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1753. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1754. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1755. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT EIGHTY-TWO – DEFAMATION BY IMPLICATION CANDACE EP 402 (OCTOBER 14, 2026)

1756. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1757. Defendant published the statements quoted in Count Eighty ¶ 1724 on October 14, 2026, during *Candace* Ep 402, which Defendant published on CandaceOwens.com, YouTube,

Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1758. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that the woman known as Brigitte Macron is a fabricated identity, that she did not bear her three children, and that the Macrons are using their power and resources to conceal those facts from the public (the "Implications").

1759. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1760. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron "doesn't exist," that her identity is fabricated, that she did not bear her three children, and that she is using her power and resources to "gaslight the public" about who she is.

1761. The Implications are categorically and demonstrably false. Mrs. Macron exists and was born Brigitte Trogneux in Amiens, France, on April 13, 1953; she gave birth to three children; and she has never fabricated her identity or deceived the public about it.

1762. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have fabricated Mrs. Macron's identity and are using their power and resources to deceive the public about it.

1763. The Implications are categorically and demonstrably false. President and

Mrs. Macron have not fabricated Mrs. Macron's identity and have not used their power or resources to deceive the public.

1764. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity fraud, of lying to the public about Mrs. Macron's identity and the birth of her children, and of perpetrating abuses of power to conceal it. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

1765. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1766. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1767. For the reasons set forth in detail above, Defendant made the defamatory Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1768. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1769. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1770. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable

sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1771. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1772. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT EIGHTY-THREE – DEFAMATION
## CANDACE EP 407 (OCTOBER 22, 2026)

1773. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1774. Defendant published the following false and defamatory statements of fact on October 22, 2026, during *Candace* Ep 407, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) PK Bloom writes when Baron Coleman had to cancel an episode due to an emergency. And then we heard Candace tell us that Brigitte got attacked. I thought it was Baron who was yanking and banking to get Candace's to get to Candace's to help save Brigitte. We know that Baron would do what he could for his fellow man, long live Jean-Michel.

1775. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1776. The Statements are of and concerning President and Mrs. Macron. Indeed,

Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1777. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man and is Jean-Michel Trogneux, and that she has lied to the public about her sex and identity.

1778. The Statements are categorically and demonstrably false. Mrs. Macron is a woman, was born Brigitte Trogneux, and is not Jean-Michel Trogneux; she has never lied about her sex or her identity.

1779. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity and that Mrs. Macron is Jean-Michel Trogneux.

1780. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity, and Mrs. Macron is not Jean-Michel Trogneux.

1781. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft and fraud and of lying to the public about Mrs. Macron's sex and identity.

1782. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft,

forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1783. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1784. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1785. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1786. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1787. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1788. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1789. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT EIGHTY-FOUR – FALSE LIGHT**
**CANDACE EP 407 (OCTOBER 22, 2026)**

1790. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1791. Defendant published the statements quoted in Count Eighty-Three ¶ 1774 on October 22, 2026, during *Candace* Ep 407, which Defendant published on CandaceOwens.com,

YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1792. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1793. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is a man and is Jean-Michel Trogneux, and that she has lied to the public about her sex and identity.

1794. The Statements are categorically and demonstrably false. Mrs. Macron is a woman, was born Brigitte Trogneux, and is not Jean-Michel Trogneux; she has never lied about her sex or her identity.

1795. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity and that Mrs. Macron is Jean-Michel Trogneux.

1796. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity, and Mrs. Macron is not Jean-Michel Trogneux.

1797. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1798. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft and fraud and of lying to the public about Mrs. Macron's sex and identity.

1799. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1800. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction

Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1801. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1802. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1803. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1804. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1805. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## COUNT EIGHTY-FIVE – DEFAMATION BY IMPLICATION CANDACE EP 407 (OCTOBER 22, 2026)

1806. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1807. Defendant published the statements quoted in Count Eighty-Three ¶ 1774 on October 22, 2026, during *Candace* Ep 407, which Defendant published on CandaceOwens.com, YouTube, Spotify, Audible, iHeartRadio, Apple Podcasts, and Amazon Music, and hyperlinked on X. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1808. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is a man named Jean-Michel Trogneux and that the Macrons have deceived the public about it (the "Implications").

1809. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1810. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron is a man and is Jean-Michel Trogneux, and that she has lied to the public about her sex and identity.

1811. The Implications are categorically and demonstrably false. Mrs. Macron is a woman, was born Brigitte Trogneux, and is not Jean-Michel Trogneux; she has never lied about her sex or her identity.

1812. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron

have lied to the public about Mrs. Macron's sex and identity and that Mrs. Macron is Jean-Michel Trogneux.

1813. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity, and Mrs. Macron is not Jean-Michel Trogneux.

1814. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of identity theft and fraud and of lying to the public about Mrs. Macron's sex and identity. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

1815. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft, forgery, and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1816. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1817. For the reasons set forth in detail above, Defendant made the defamatory

Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1818. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1819. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1820. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1821. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1822. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT EIGHTY-SIX – DEFAMATION**
**X POSTS (OCTOBER 27, 2026)**

1823. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1824. Defendant published the following false and defamatory statements of fact on October 27, 2026, in two posts on her X account, @RealCandaceO. Defendant made, endorsed, and adopted the following false statements (the "Statements"):

> (a) BREAKING NEWS: I was just personally dismissed from the Macron lawsuit filed against me in Delaware. This case represents one of the grossest, legal overreaches by a foreign government leader in human history—a sitting President's attempt to personally bankrupt a single podcaster from outside the nation in which he governs. And to formally reiterate since many reporters willfully lied about this most important detail: I was NEVER being sued for stating that Brigitte Macron was born a male. I was instead being sued for discussing MK Ultra and for allegedly accusing the 'First Lady' of theft from her sister.

(b) I am in the absolute best mood over this Macron dismissal. Feels like a year and a half of my family having to deal with psychotic lies regarding pending bankruptcies, secret accounts and plans to flee the country, has finally come to end. . . . We argued the Macron couple was intentionally forum shopping because being held to France's 3 months would have naturally expired their claims. . . . I believe it is worth again noting that the couple is NOT and has never sued anyone for matters pertaining to sex, sexual orientation, or gender (despite intentional media misrepresentations), but rather for defamation related to claims regarding MK Ultra and theft.

1825. The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1826. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1827. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is not in truth the First Lady of France, that she was born a male, and that she has never been willing to litigate that question because she knows Owens is right.

1828. The Statements are categorically and demonstrably false. Mrs. Macron is the First Lady of France, was born a woman named Brigitte Trogneux, and has consistently and publicly denied Owens' claims about her sex and identity.

1829. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity.

1830. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity.

1831. The Statements are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule,

or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity.

1832. The Statements are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1833. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Statements, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Statements.

1834. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1835. Defendant had no applicable privilege or legal authorization to publish the Statements, or, if she did, she abused that privilege or authorization.

1836. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1837. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1838. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1839. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT EIGHTY-SEVEN – FALSE LIGHT**
**X POSTS (OCTOBER 27, 2026)**

1840. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1841. Defendant published the statements quoted in Count Eighty-Six ¶ 1824 on October 27, 2026, in two posts on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1842. The Statements are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Statements.

1843. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that Mrs. Macron is not in truth the First Lady of France, that she was born a male, and that she has never been willing to litigate that question because she knows Owens is right.

1844. The Statements are categorically and demonstrably false. Mrs. Macron is the First Lady of France, was born a woman named Brigitte Trogneux, and has consistently and publicly denied Owens' claims about her sex and identity.

1845. The Statements are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity.

1846. The Statements are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity.

1847. By publishing the Statements, Defendant has portrayed President and Mrs. Macron in a false light because they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1848. The false light created by Defendant would be highly offensive to a reasonable person because the Statements hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity.

1849. Defendant knew the Statements would create a false impression about President and Mrs. Macron and intended to cause injury to President and Mrs. Macron by making the Statements.

1850. For the reasons set forth in detail above, Defendant made the defamatory Statements with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Statements despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Statements as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Statements for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Statements even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Statements and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1851. Defendant had no applicable privilege or legal authorization to publish the Statements and resulting false impression, or, if she did, she abused that privilege or authorization.

1852. As a direct and proximate result of Defendant's false Statements, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1853. As a direct and proximate result of Defendant's Statements and resulting false impression, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1854. Defendant published the Statements maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity

and President Macron's perceived sexual orientation. Accordingly, punitive damages are appropriate.

1855. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

**COUNT EIGHTY-EIGHT – DEFAMATION BY IMPLICATION**
**X POSTS (OCTOBER 27, 2026)**

1856. Plaintiffs repeat and allege paragraphs 1–374 as if set forth fully herein.

1857. Defendant published the statements quoted in Count Eighty-Six ¶ 1824 on October 27, 2026, in two posts on her X account, @RealCandaceO. Defendant made, endorsed, and adopted those statements (the "Statements"). The Statements were published in a fixed and permanent form that remains accessible to the public, and constitute libel.

1858. Defendant published and juxtaposed the Statements to imply a false and defamatory connection between them or otherwise create the false and defamatory implications that Mrs. Macron is not truly the First Lady, that she was born a male and the Macrons know it (the "Implications").

1859. The Implications are of and concerning President and Mrs. Macron. Indeed, Defendant repeatedly identified President and Mrs. Macron by name, including in and in connection with the Implications (and the Statements giving rise to them).

1860. The Implications are statements of (false) fact and are reasonably understood as factual—specifically, as assertions that Mrs. Macron is not in truth the First Lady of France, that she was born a male, and that she has never been willing to litigate that question because she knows Owens is right.

1861. The Implications are categorically and demonstrably false. Mrs. Macron is the First Lady of France, was born a woman named Brigitte Trogneux, and has consistently and publicly

denied Owens' claims about her sex and identity.

1862. Additionally, the Implications are statements of (false) fact and are reasonably understood as statements of (false) fact—specifically, as assertions that President and Mrs. Macron have lied to the public about Mrs. Macron's sex and identity.

1863. The Implications are categorically and demonstrably false. President and Mrs. Macron have not lied about Mrs. Macron's sex or identity.

1864. The Implications are defamatory, and people who heard them understood them to be defamatory, because they hold President and Mrs. Macron up to public hatred, contempt, ridicule, or disgrace and tend to harm President and Mrs. Macron's reputations as to lower them in the estimation of the community or to deter third persons from associating or dealing with them, including by accusing President and Mrs. Macron of lying to the public about Mrs. Macron's sex and identity. The Implications are defamatory not because there is anything shameful about being a man or being transgender, but because they accuse President and Mrs. Macron of deceiving the public about Mrs. Macron's identity and of committing crimes to conceal that deception.

1865. The Implications are defamatory per se, and people who heard them understood them to be defamatory per se, because, without reference to extrinsic evidence and viewed in their plain and obvious meaning, they accuse President and Mrs. Macron of crimes (including identity theft and fraud), cast aspersions on their integrity, undercut their reputations, and have the likely effect of harming them.

1866. Defendant knew the substantial danger of injury to President and Mrs. Macron and their reputations from the Implications, which is readily apparent, and, in fact, intended to cause injury to President and Mrs. Macron by making the Implications.

1867. For the reasons set forth in detail above, Defendant made the defamatory

Implications with actual malice, including with actual, subjective awareness of their falsity, as evidenced by the facts that Defendant:

(a) Made the Implications despite having actual knowledge that they were false, including based on evidence in her possession and available to her that she actually reviewed;

(b) Relied on sources who were obviously biased against President and Mrs. Macron and whom Defendant knew to be biased against President and Mrs. Macron;

(c) Made the Implications as part of a preconceived narrative that President and Mrs. Macron have lied to the public about Mrs. Macron's identity, perpetrated abuses of power, and weaponized the courts and the press to silence those who investigate them;

(d) Deliberately ignored voluminous evidence in her possession and available to her—as detailed above—that contradicted the preconceived narrative she wanted to tell about President and Mrs. Macron;

(e) Made the Implications for the purpose of generating and obtaining media attention for herself and her business, to enrich herself at the expense of the truth;

(f) Refused to retract the Implications even after being confronted with additional evidence of their falsity, including the December Retraction Demand, the February Retraction Demand, the July Retraction Demand, and the allegations and evidence set forth in the Delaware Action; and

(g) Continued to repeat the Implications and similar statements after the filing of the Delaware Action, including on the *Candace podcast*, *Becoming Brigitte Season Two*, *The Tucker Carlson Show*, *This Past Weekend w/ Theo Von*, and X.

1868. Defendant had no applicable privilege or legal authorization to publish the Implications, or, if she did, she abused that privilege or authorization.

1869. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial economic damages, including, among other things, loss of future business opportunities and such other compounding and growing losses as will be shown at trial.

1870. As a direct and proximate result of Defendant's false Implications, President and Mrs. Macron have suffered substantial reputational damage and have had to spend considerable sums of money to correct the public record about their actions and mitigate the reputational harm they have suffered, including costs incurred in hiring legal counsel to clear their name in the court of public opinion.

1871. Defendant published the Implications maliciously, willfully, wantonly, with common law malice, with actual malice, with a conscious, reckless, and willful indifference to President and Mrs. Macron's rights, and with a desire to cause injury to President and Mrs. Macron, including out of animus toward Mrs. Macron's perceived sex and gender identity and President Macron's perceived sexual orientation. Thus, punitive damages are appropriate.

1872. In view of the foregoing, President and Mrs. Macron are entitled to actual, presumed, and punitive damages in amounts to be specifically determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor, and against Defendant as follows:

(a) awarding the Macrons actual and presumed damages to be specifically determined at trial;

(b) awarding the Macrons punitive and/or exemplary damages;

(c) awarding the Macrons all costs, disbursements, fees, and interest as authorized by law;

(d) a limited, narrowly tailored injunction prohibiting the republication by Defendant of any statement adjudicated to be defamatory; and

(e) such other and additional remedies as the Court may deem just and proper.

Plaintiffs demand a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

Dated: November 4, 2026

Respectfully submitted,

*/s/ Joseph R. Oliveri*
Thomas A. Clare, P.C.*
Elizabeth M. Locke, P.C.*
Joseph R. Oliveri (TN Bar Member; TN BPR No. 040012)
Kathryn G. Humphrey*
Megan McGuiggan*
Guillermo P. Warnisher*
CLARE LOCKE LLP
10 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
Email: tom@clarelocke.com
Email: libby@clarelocke.com
Email: joe@clarelocke.com
Email: kathryn@clarelocke.com
Email: megan.mcguiggan@clarelocke.com
Email: will@clarelocke.com

*Attorneys for Plaintiffs Emmanuel and Brigitte Macron*

**Pro hac vice forthcoming*